# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | )) )) )) )) |
| Plaintiffs and Counter-Defendants, | ) )) ) |
| v. | ) |
| NEVRO CORP., | |
| Defendant and Counterclaimant. | |

C.A. No. 16-1163 (GMS)

**DEMAND FOR JURY TRIAL**

**NEVRO CORP.'S ANSWER AND DEFENSES TO
FIRST AMENDED COMPLAINT**

Defendant Nevro Corp. ("Nevro"), by and through its undersigned counsel,

hereby submits this Answer and Defenses to the First Amended Complaint of Plaintiffs Boston

Scientific Corp. ("BSC") and Boston Scientific Neuromodulation Corp. ("BSNC") (collectively,

"Boston Scientific") (D.I. 13).  Pursuant to Federal Rule of Civil Procedure 8(b)(3), Nevro

denies each and every allegation in Boston Scientific's First Amended Complaint except those

expressly admitted below.

**OVERVIEW OF THE ACTION**

1.      Nevro admits that this is a patent infringement action.  Nevro denies any

remaining allegations in this paragraph.

## THE PARTIES

2.      Admitted.

3.      Nevro admits that BSNC is a Delaware corporation with its principal

place of business at 25155 Rye Canyon Loop, Valencia, California 91355.  Nevro lacks

sufficient knowledge or information to admit or deny the remaining allegations in this paragraph,

and on that basis denies those allegations.

4.      Admitted.

## JURISDICTION AND VENUE

5.      Admitted.

6.      Nevro admits that this Court has subject matter jurisdiction over the patent

infringement claims asserted in Boston Scientific's First Amended Complaint under 28 U.S.C.

§§ 1331 and 1338(a).  Nevro denies any remaining allegations in this paragraph.

7.      Nevro admits that this Court has personal jurisdiction over Nevro for

purposes of this litigation.  Nevro denies any remaining allegations in this paragraph.

8.      Nevro admits that venue is proper in this District for purposes of this

litigation.

## BOSTON SCIENTIFIC'S BACKGROUND

9.      Nevro admits that Boston Scientific is a medical device manufacturer and

that Boston Scientific sells Spinal Cord Stimulation ("SCS") systems for the treatment of chronic

pain.  Nevro lacks sufficient knowledge or information to admit or deny the remaining

allegations in this paragraph, and on that basis denies those allegations.

10.     Nevro admits, on information and belief, that Boston Scientific sells SCS

systems that include the term "Precision" in the product name.  Nevro lacks sufficient knowledge

or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

11.     Nevro denies that Boston Scientific developed and patented core technologies that are essential to SCS systems, and that Boston Scientific's technologies form the foundation of every SCS system on the market, including Nevro's Senza® System.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

12.     Nevro admits that its Senza® system is as described in documents submitted by Nevro to the FDA and SEC, but denies this paragraph to the extent it is inconsistent or incomplete with respect to those documents.  Otherwise, admitted.

13.     Nevro denies that it launched the Senza® system in Europe and Australia in the same year.  Nevro admits that the Senza® system launched in Europe in 2010 and in Australia in 2011.  Otherwise, admitted.

14.     Nevro admits that C.C.C. Del Uruguay S.A. ("CCC") is a manufacturer of Nevro's implantable pulse generators ("IPG"), trial simulators, and programmer wands.  Nevro denies that CCC is currently Nevro's single-source manufacturer of its IPG.  Nevro denies that CCC currently manufactures Nevro's external chargers.  Nevro admits that CCC has a manufacturing facility in Montevideo, Uruguay.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

15.     Nevro admits that Stellar Technologies, Inc. is the single-source supplier of Nevro's percutaneous leads.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

16.      Nevro admits that EaglePicher Medical Power LLC is currently the single-source supplier of batteries for Nevro's IPG.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

17.      Nevro admits that Pro-Tech Design and Manufacturing, Inc. ("Pro-Tech") is the single-source supplier for conducting the inspection, labeling, packaging and sterilization of Nevro's Senza® system.  Nevro admits that Pro-Tech's tender of the Senza® system for delivery, FCA (Incoterms 2000) includes Pro-Tech's Santa Fe Springs, California facility. Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

## BOSTON SCIENTIFIC'S PRE-SUIT INVESTIGATION

18.      Nevro denies that the Senza® system infringes the technology claimed in the Asserted Patents.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

## NEVRO'S KNOWLEDGE OF THE ASSERTED PATENTS

19.      Nevro admits that it received copies of the Asserted Patents at least upon service of the original Complaint.  Nevro denies any remaining allegations in this paragraph.

20.      Nevro admits that it participated in an FDA-monitored randomized controlled trial in a head-to-head comparison against Boston Scientific's Precision™ SCS system in which Nevro's Senza® system and paresthesia-free HF10™ therapy was determined by the FDA to be clinically superior to Boston Scientific's Precision SCS system.  Nevro admits that its February 29, 2016 Form 10-K filing contains the statement quoted in this paragraph. Nevro denies any remaining allegations in this paragraph.

4

21.     Nevro admits that Boston Scientific filed two Petitions for *Inter Partes* Review of Nevro's U.S. Patent No. 8,359,102 in May 2015, which were subsequently denied institution by the Patent Trial and Appeal Board in November 2015.  Nevro admits that it filed a Complaint for Patent Infringement and Declaratory Judgment against Boston Scientific in the United States District Court for the Northern District of California in November 2016, for Boston Scientific's willful infringement of Nevro's patents directed to Nevro's FDA-approved superior HF10™ therapy.  Nevro admits that it conducted a pre-suit investigation into Boston Scientific's infringing activities with respect to Nevro's patents asserted in that action prior to initiating the lawsuit against Boston Scientific.  Nevro lacks sufficient knowledge or information regarding other companies' practices with respect to competitive intelligence and pre-suit investigations, and on that basis denies the allegation.  Nevro denies any remaining allegations in this paragraph.

22.     Nevro admits that Kerry Bradley is currently the Senior Director of Clinical Science & Research at Nevro.  Nevro admits that Mr. Bradley previously worked for Boston Scientific.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations concerning Mr. Bradley's prior employment before Nevro, and on that basis denies those allegations.  Nevro denies any remaining allegations in this paragraph.

23.     Nevro admits that Jim Thacker is currently the Senior Director of Clinical Engineering at Nevro.  Nevro admits that Mr. Thacker previously worked for Boston Scientific. Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations concerning Mr. Thacker's prior employment before Nevro, and on that basis denies those allegations.  Nevro denies any remaining allegations in this paragraph.

24.     Nevro admits that Dongchul Lee is currently the Director of Theoretical Research at Nevro.  Nevro admits that Mr. Lee previously worked for Boston Scientific.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations concerning Mr. Lee's prior employment before Nevro, and on that basis denies those allegations.  Nevro denies any remaining allegations in this paragraph.

25.     Nevro lacks sufficient knowledge or information to admit or deny the allegations concerning Messrs. Bradley, Thacker, and Lee's prior employment or their extensive knowledge, and on that basis denies those allegations.  Nevro denies any remaining allegations in this paragraph.

26.     Nevro denies that Anthony Puglisi, Brian Warriner, and Danielle Pronesti are current employees of Nevro.  Nevro admits that Lisa Earnhardt is a member of Nevro's Board of Directors.  Nevro admits that the following are current employees at Nevro:  Doug Alleavitch, Vice President, Quality; Reynaldo Nossa, Director of Technical Services & Support; Andreas Koenig, Sr. Clinical Affairs Manager; David Marco, Principal Field Clinical Engineer; Tamara Baynham, Sr. Field Clinical Engineer; Dan Hestera, Regional Sales Director; Jeff Orr, Regional Sales Director; Jim Sackleh, Regional Sales Director; Richard James, Regional Sales Director; Angela Holley, District Sales Manager; Laurie Cigan, District Sales Manager; Heather Moss-Gad, District Sales Manager; Cable Hawkins, District Sales Manager; Matt Goldstone, District Sales Manager; Philip Almeida, District Sales Manager; Ryan Livingston, District Sales Manager; Christopher White, District Sales Manager; Lindsay Molden, District Sales Manager; Christine Biello, District Sales Manager; Chad Sellers, District Sales Manager; Randall Scott Shoultz, District Sales Manager; Croix Paquin, District Sales Manager; Ashley Bailey, Therapy Consultant; Mandy Cash, Therapy Consultant; Gretchen Thomas, Therapy Consultant; Will

Windauer, Therapy Consultant; Kate Ginter, Therapy Optimization Specialist; and Kelly Engle, Therapy Support Specialist.  Nevro lacks sufficient knowledge or information to admit or deny the allegations concerning these individuals' employment before Nevro, and on that basis denies those allegations.  Nevro denies any remaining allegations in this paragraph.

27.     Nevro admits that the '280 patent is listed on the faces of U.S. Patent Nos. 9,403,013; 8,849,410; 8,255,057; 8,509,906; 9,399,137; 9,409,019; 9,295,840; and 9,517,344, which are assigned to Nevro.  Nevro admits that Mr. Thacker is an inventor of U.S. Patent No. 9,295,840.  Nevro admits that Mr. Thacker was previously an employee of Boston Scientific. Nevro admits that Mr. Bradley is an inventor of U.S. Patent No. 9,517,344.  Nevro admits that Mr. Bradley was previously an employee of Boston Scientific.  Nevro denies any remaining allegations in this paragraph.

28.     Nevro admits that the '193 patent is listed on the faces of U.S. Patent Nos. 9,227,076; 9,409,020; and 9,517,344, which are assigned to Nevro.  Nevro admits that Mr. Bradley is an inventor of U.S. Patent No. 9,517,344.  Nevro admits that Mr. Bradley was previously an employee of Boston Scientific.  Nevro admits that according to the face of the '241 patent, the '193 patent is a parent of the '241 patent.  Nevro denies any remaining allegations in this paragraph.

29.     Nevro admits that the '439 patent is listed on the faces of U.S. Patent Nos. 9,403,020; 8,805,519; 9,358,388; 9,345,891; 8,965,482; and 9,308,022.  Nevro admits that Mr. Thacker is an inventor of U.S. Patent Nos. 8,805,519; 9,358,088; 9,345,891; and 8,965,482. Nevro admits that Mr. Thacker was previously an employee of Boston Scientific.  Nevro admits that according to its face, the '439 patent is the child of the '085 patent.  Nevro denies any remaining allegations in this paragraph.

30.     Nevro admits that certain of the Asserted Patents are listed on the face of certain of Nevro's patents.  Nevro denies any remaining allegations in this paragraph.

31.     Nevro admits that certain of the Asserted Patents are listed on the face of certain of Nevro's patents.  Nevro denies any remaining allegations in this paragraph.

32.     Denied.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,895,280

33.     Nevro incorporates by reference each of its answers to Paragraphs 1-32 above as if fully set forth herein.

34.     Nevro admits that the '280 patent is titled "Rechargeable Spinal Cord Stimulator System," and identifies May 17, 2005, as the patent issue date on its face.  Nevro admits that Exhibit A appears to be a copy of the '280 patent.  Nevro denies that the '280 patent is valid and enforceable and denies any remaining allegations in this paragraph.

35.     Nevro lacks sufficient knowledge or information to admit or deny the allegations in this paragraph, and on that basis denies those allegations.

36.     Nevro admits that the claims of the '280 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

37.     Denied.

38.     Denied.

39.     Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

40.     Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

41.     Denied.

42.     Nevro admits that it sells the Senza® system to health care providers. Nevro denies any remaining allegations in this paragraph.

43.     Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

44.     Nevro admits that it was aware of the '280 patent prior to the filing of the original Complaint.  Nevro denies any remaining allegations in this paragraph.

45.     Denied.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,428,438

46.     Nevro incorporates by reference each of its answers to Paragraphs 1-45 above as if fully set forth herein.

47.     Nevro admits that the '438 patent is titled "Systems And Methods For Providing Power To A Battery In An Implantable Stimulator," and identifies September 23, 2008 as the patent issue date on its face.  Nevro admits that Exhibit B appears to be a copy of the '438 patent.  Nevro denies that the '438 patent is valid and enforceable and denies any remaining allegations in this paragraph.

48.     Nevro admits that the '438 patent identifies BSNC as the patent assignee on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

49.     Nevro admits that the claims of the '438 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

50.     Denied.

51.     Denied.

52.     Nevro admits that it provides physician and patient manuals on the Senza®
system and that Nevro field representatives are present in the operating room when a Senza®
system is implanted.  Nevro denies any remaining allegations in this paragraph.

53.     Nevro admits that the Senza® system is exported from the United States
to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

54.     Denied.

55.     Nevro admits that it sells the Senza® system to health care providers.
Nevro denies any remaining allegations in this paragraph.

56.     Nevro admits that the Senza® system is exported from the United States
to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

57.     Denied.

58.     Denied.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,437,193

59.     Nevro incorporates by reference each of its answers to Paragraphs 1-58
above as if fully set forth herein.

60.     Nevro admits that the '193 patent is titled "Microstimulator Employing
Improved Recharging Reporting And Telemetry Techniques," and identifies October 14, 2008,
as the patent issue date on its face.  Nevro admits that Exhibit C appears to be a copy of the '193
patent.  Nevro denies that the '193 patent is valid and enforceable and denies any remaining
allegations in this paragraph.

61.     Nevro admits that the '193 patent identifies BSNC as the patent assignee
on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining
allegations in this paragraph, and on that basis denies those allegations.

62.     Nevro admits that the claims of the '193 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

63.     Denied.

64.     Denied.

65.     Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

66.     Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

67.     Denied.

68.     Nevro admits that it sells the Senza® system to health care providers. Nevro denies any remaining allegations in this paragraph.

69.     Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

70.     Denied.

71.     Denied.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,587,241

72.     Nevro incorporates by reference each of its answers to Paragraphs 1-71 above as if fully set forth herein.

73.     Nevro admits that the '241 patent is titled "Method For Controlling Telemetry In An Implantable Medical Device Based On Power Source Capacity," and identifies September 8, 2009, as the patent issue date on its face.  Nevro admits that Exhibit D appears to

be a copy of the '241 patent.  Nevro denies that the '241 patent is valid and enforceable and denies any remaining allegations in this paragraph.

74.     Nevro admits that the '241 patent identifies BSNC as the patent assignee on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

75.     Nevro admits that the claims of the '241 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph

76.     Denied.

77.     Denied.

78.     Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

79.     Denied.

80.     Nevro admits that it sells the Senza® system to health care providers. Nevro denies any remaining allegations in this paragraph.

81.     Denied.

82.     Denied.

## **COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,891,085**

83.     Nevro incorporates by reference each of its answers to Paragraphs 1-82 above as if fully set forth herein.

84.     Nevro admits that the '085 patent is titled "Electrode Array Assembly And Method Of Making Same," and identifies February 22, 2011, as the patent issue date on its face.

Nevro admits that Exhibit E appears to be a copy of the '085 patent. Nevro denies that the '085 patent is valid and enforceable and denies any remaining allegations in this paragraph.

85.    Nevro admits that the '085 patent identifies BSNC as the patent assignee on its face. Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

86.    Nevro admits that the claims of the '085 patent include the elements recited in each respective claim. Nevro denies any remaining allegations in this paragraph.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Nevro admits that it was aware of the '085 patent prior to the filing of the original Complaint. Nevro denies any remaining allegations in this paragraph.

91.    Denied.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,019,439**

92.    Nevro incorporates by reference each of its answers to Paragraphs 1-91 above as if fully set forth herein.

93.    Nevro admits that the '439 patent is titled "Lead Assembly And Method of Making Same," and identifies September 13, 2011, as the patent issue date on its face. Nevro admits that Exhibit F appears to be a copy of the '439 patent. Nevro denies that the '439 patent is valid and enforceable and denies any remaining allegations in this paragraph.

94.    Nevro admits that the '439 patent identifies BSNC as the patent assignee on its face. Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

13

95.     Nevro admits that the claims of the '439 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

102.    Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

103.    Nevro admits that it was aware of the '439 patent prior to the filing of the original Complaint.  Nevro denies any remaining allegations in this paragraph.

104.    Denied.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 8,644,933

105.    Nevro incorporates by reference each of its answers to Paragraphs 1-104 above as if fully set forth herein.

106.    Nevro admits that the '933 patent is titled "Techniques For Controlling Charging Of Batteries In An External Charger And An Implantable Medical Device," and identifies February 4, 2014, as the patent issue date on its face.  Nevro admits that Exhibit G appears to be a copy of the '933 patent.  Nevro denies that the '933 patent is valid and enforceable and denies any remaining allegations in this paragraph.

14

107.    Nevro admits that the '933 patent identifies BSNC as the patent assignee on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

108.    Nevro admits that the claims of the '933 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

109.    Denied.

110.    Denied.

111.    Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

112.    Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

113.    Denied.

114.    Nevro admits that it sells the Senza® system to health care providers. Nevro denies any remaining allegations in this paragraph.

115.    Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

116.    Denied.

117.    Denied.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 8,646,172

118.    Nevro incorporates by reference each of its answers to Paragraphs 1-117 above as if fully set forth herein.

119.    Nevro admits that the '172 patent is titled "Electrode Array Assembly And Method Of Making Same," and identifies February 11, 2014, as the patent issue date on its face. Nevro admits that Exhibit H appears to be a copy of the '172 patent. Nevro denies that the '172 patent is valid and enforceable and denies any remaining allegations in this paragraph.

120.    Nevro admits that the '172 patent identifies BSNC as the patent assignee on its face. Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

121.    Nevro admits that the claims of the '172 patent include the elements recited in each respective claim. Nevro denies any remaining allegations in this paragraph.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Nevro admits that it was aware of the '172 patent prior to the filing of the original Complaint. Nevro denies any remaining allegations in this paragraph.

126.    Denied.

**COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 8,650,747**

127.    Nevro incorporates by reference each of its answers to Paragraphs 1-126 above as if fully set forth herein.

128.    Nevro admits that the '747 patent is titled "Electrode Array Assembly And Method Of Making Same," and identifies February18, 2014, as the patent issue date on its face. Nevro admits that Exhibit I appears to be a copy of the '747 patent. Nevro denies that the '747 patent is valid and enforceable and denies any remaining allegations in this paragraph.

129.    Nevro admits that the '747 patent identifies BSNC as the patent assignee on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

130.    Nevro admits that the claims of the '747 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

131.    Denied.

132.    Denied.

133.    Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

134.    Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

135.    Nevro admits that it was aware of the '747 patent prior to the filing of the original Complaint.  Nevro denies any remaining allegations in this paragraph.

136.    Denied.

### COUNT X: INFRINGEMENT OF U.S. PATENT NO. 9,370,664

137.    Nevro incorporates by reference each of its answers to Paragraphs 1-136 above as if fully set forth herein.

138.    Nevro admits that the '664 patent is titled "Signaling Error Conditions In An Implantable Medical Device System Using Simple Charging Coil Telemetry," and identifies June 21, 2016, as the patent issue date on its face.  Nevro admits that Exhibit J appears to be a copy of the '664 patent.  Nevro denies that the '664 patent is valid and enforceable and denies any remaining allegations in this paragraph.

17

139.   Nevro admits that the '664 patent identifies BSNC as the patent assignee on its face.  Nevro lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph, and on that basis denies those allegations.

140.   Nevro admits that the claims of the '664 patent include the elements recited in each respective claim.  Nevro denies any remaining allegations in this paragraph.

141.   Denied.

142.   Denied.

143.   Nevro admits that it provides physician and patient manuals on the Senza® system and that Nevro field representatives are present in the operating room when a Senza® system is implanted.  Nevro denies any remaining allegations in this paragraph.

144.   Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

145.   Denied.

146.   Nevro admits that it sells the Senza® system to health care providers. Nevro denies any remaining allegations in this paragraph.

147.   Nevro admits that the Senza® system is exported from the United States to Europe and Australia.  Nevro denies any remaining allegations in this paragraph.

148.   Denied.

149.   Denied.

## ANSWER TO PLAINTIFFS' PRAYER FOR RELIEF

Nevro denies that Boston Scientific is entitled to any of the relief requested.

## JURY DEMAND

Nevro acknowledges that the Complaint sets forth a demand for a jury trial.

## NEVRO'S AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof, Nevro asserts the following defenses.

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim)

1.      Boston Scientific's First Amended Complaint fails to state a claim upon which relief can be granted, for any of the Asserted Patents.

### SECOND AFFIRMATIVE DEFENSE
#### (Noninfringement)

2.      Nevro has not directly infringed, and is not directly infringing, any valid and enforceable claims of the Asserted Patents either literally or under the doctrine of equivalents.  Nevro has not induced or contributed to, and is not inducing or contributing to, infringement of any valid and enforceable claims of the Asserted Patents either literally or under the doctrine of equivalents.  Nevro has not engaged in, and is not engaging in, export infringement under either 35 U.S.C. §§ 271(f)(1) or (2) of any valid and enforceable claims of the Asserted Patents either literally or under the doctrine of equivalents.

### THIRD AFFIRMATIVE DEFENSE
#### (Invalidity)

3.      The claims of the Asserted Patents are invalid under the provisions of 35 U.S.C. §§ 100 *et seq.*, including but not limited to §§ 101, 102, 103, and 112.

### FOURTH AFFIRMATIVE DEFENSE
#### (Obviousness-Type Double Patenting)

4.      One or more claims of the Asserted Patents is invalid under the judicially-created doctrine of obviousness-type double patenting, including but not limited to claims of the '085, '439, '172, and '747 patents.

## FIFTH AFFIRMATIVE DEFENSE
**(Waiver and Estoppel)**

5.      Boston Scientific's First Amended Complaint is barred by the doctrines of waiver and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE
**(Incorrect Inventorship/Derivation)**

6.      The '085, '439, '172, and '747 patents are invalid under at least the provisions of pre-AIA § 102(f).

## SEVENTH AFFIRMATIVE DEFENSE
**(Lack of Standing)**

7.      BSC lacks standing to assert the '085, '439, '172, and '747 patents due to incorrect inventorship and lack of proper license.

## EIGHTH AFFIRMATIVE DEFENSE
**(License)**

8.      Boston Scientific's allegations of infringement of the '085, '439, '172, and '747 patents are barred in whole or in part by the defense of license (either express or implied).

## NINTH AFFIRMATIVE DEFENSE
**(Exhaustion)**

9.      Boston Scientific's allegations of infringement of the '085, '439, '172, and '747 patents are barred in whole or in part by the defense of patent exhaustion.

## TENTH AFFIRMATIVE DEFENSE
**(Laches)**

10.      Boston Scientific's First Amended Complaint is barred by the doctrine of laches.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Prosecution Laches)**

11.     One or more of the Asserted Patents is unenforceable under the doctrine of

prosecution laches.

**TWELFTH AFFIRMATIVE DEFENSE**
**(No Willful Infringement)**

12.     Nevro has not willfully infringed, and is not willfully infringing, any valid

and enforceable claims of the Asserted Patents.  Boston Scientific is not entitled to seek

enhanced damages or attorneys' fees for willful infringement.

**THIRTEENTH AFFIRMATIVE DEFENSE**
(Limitation on Damages)

13.     Boston Scientific's claims for damages, if any, are statutorily limited by

35 U.S.C. § 286 and/or § 287.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Limitation on Costs)**

14.     To the extent any claim of any asserted patent is invalid, Boston Scientific

is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

**PRAYER FOR RELIEF**

WHEREFORE, Nevro respectfully requests the following relief:

A.     The entry of judgment that Nevro has not infringed, induced infringement,

contributed to infringement, and/or engaged in export infringement of any valid claim of the

Asserted Patents;

B.     The entry of judgment finding that each of the Asserted Patents is invalid

and unenforceable under applicable law;

C.     The entry of judgment that Boston Scientific recovers nothing on the First

Amended Complaint;

21

D.      The entry of judgment that this is an exceptional case under 35 U.S.C. § 285, and awarding Nevro its attorneys' fees in this case;

E.      The entry of judgment in favor of Nevro and against Boston Scientific that interest, costs, and expenses be awarded to Nevro; and

F.      Any other relief that the Court may deem just and proper.

### NEVRO'S COUNTERCLAIMS

1.      Defendant Nevro Corp. ("Nevro") hereby asserts the following counterclaims against Plaintiffs Boston Scientific Corp. ("BSC") and Boston Scientific Neuromodulation Corp. ("BSNC") (collectively, "Boston Scientific").

### NATURE OF THE ACTION

2.      Through no fault of Nevro's, Boston Scientific has come into possession of Nevro's highly confidential and valuable trade secrets concerning battery specifications for Nevro's proprietary rechargeable battery used to power Nevro's patented HF10™ therapy, and its high frequency spinal cord stimulation system, marketed as the Senza® system.  Nevro's battery specifications are designed specifically to accommodate the power demands of a high frequency SCS systems such as Nevro's, and is significantly beyond what Boston Scientific is able to achieve with its own, dated technology.  Despite diligent and repeated requests, Boston Scientific has refused to cooperate with Nevro in providing Nevro with satisfactory assurances that Nevro's trade secret information has been safeguarded, and that Boston Scientific will not use it to develop its own battery to compete with Nevro.  Boston Scientific has left Nevro with no choice but to bring suit to safeguard its trade secrets.

## THE PARTIES

3.      Counterclaimant Nevro is a Delaware corporation with its principal place of business at 1800 Bridge Pkwy, Redwood City, CA 94065.

4.      Counter-defendant BSC is a Delaware corporation with its principal place of business at 300 Boston Scientific Way, Marlborough, MA 01752, and counter-defendant BSNC is a Delaware corporation with its principal place of business at 25155 Rye Canyon Loop, Valencia, California 91355.  On information and belief, BSNC operates as a wholly-owned subsidiary of BSC.  Collectively, BSC and BSNC are referred to herein as "BSC" or "Boston Scientific."

5.      On information and belief, each counter-defendant acted in all respects pertinent to this action as the agent of the other, and the acts of each counter-defendant is legally attributable to the other.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 18 U.S.C. §§ 1836-39 et seq. and 28 U.S.C. § 1331 and 1343.  The Court has supplemental jurisdiction over Nevro's state law counterclaims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over BSC and BSNC because they are Delaware corporations and because they initiated litigation in this judicial District in connection with this dispute.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9.      Nevro was founded in 2006 to develop novel spinal cord stimulation ("SCS") technology for the treatment of chronic pain.  True to its purpose, Nevro developed and

23

now markets the Senza® system, a groundbreaking SCS system that utilizes Nevro's unique and patented HF10TM therapy to deliver paresthesia-free pain treatment to patients.

10.     Unlike the traditional "low frequency" SCS systems marketed by Boston Scientific, and contrary to conventional wisdom, Nevro's HF10TM therapy employs a much higher frequency (10,000 Hz or 10 kHz) compared to traditional low frequency therapies (operating between 50 Hz and 60 Hz).  The significant difference in operating frequency of Nevro's Senza® system calls for sophisticated battery technology to support the system's commercial practicability despite its higher energy requirements.  In other words, because Nevro's HF10™ therapy operates at nearly 200 times the frequency of traditional low frequency therapy, Nevro has had to develop unique battery specifications that support the therapy in a manner that is commercially viable (e.g., recharge times that are reasonable for patients, battery life that is long enough to be commercially acceptable, etc.).  The commercial viability of a battery that supports high frequency therapy is important in the highly competitive SCS market.

11.     This is especially true because Nevro has shown that its novel HF10™ therapy is clinically superior to Boston Scientific's traditional low frequency therapy.  In fact, in order to obtain approval to begin marketing its HF10™ therapy, the FDA required Nevro to test its Senza® system in an FDA-monitored randomized controlled trial in a head-to-head comparison against a commercially available low frequency SCS system.  Boston Scientific's Precision® SCS system was chosen as the commercially available comparator for the trial.  The trial resulted in a landmark finding:  Nevro's Senza® system and HF10™ therapy was nearly twice as effective in providing pain relief as Boston Scientific's low frequency SCS system.

12.     Since 2009, Nevro engineers have invested hundreds, if not thousands, of hours conducting research and working on the design and development—including the charging

24

and discharging profile—of its high frequency battery for the Senza® system.  Based on its years of experience developing high frequency SCS technologies, Nevro has learned that batteries designed for traditional low frequency SCS system cannot be effectively used in a high frequency system such as the Senza® system.  Nevro's engineers believe low frequency SCS batteries, such as the ones used in Boston Scientific's Precision® SCS system and other low frequency SCS systems, cannot effectively supply the power needed to provide continuous high frequency treatment for 24 hours a day, 7 days a week.  Therefore, Nevro developed and engineered the battery for its high frequency Senza® system afresh, because the battery needed to be customized for features specific to high frequency use.

13.     Nevro considers its battery and the particular specifications and technologies that go into manufacturing the battery to be highly confidential, proprietary, and trade secret information and maintains it as such.  In particular, Nevro treats the charging and discharging profile of its battery as highly confidential information because it is specific to high frequency use and is the key to the battery's power usage.  Once a competitor has that proprietary, trade secret information, it can readily reverse-engineer the power consumption and circuitry specifications and schematics of Nevro's battery.  Indeed, even within Nevro, this information is maintained on a need-to-know basis.  When Nevro needs to disclose this highly confidential, trade secret information to a third party manufacturer, Nevro does so only under the terms of a strict non-disclosure agreement.

14.     The SCS market is small, with three major companies dominating the traditional, low frequency product offerings: Boston Scientific, Abbott (via acquisition of St. Jude Medical), and Medtronic.  Nevro's revolutionary high frequency treatment, which includes

custom components to support the novel treatment, is the result of years of painstaking research and experimentation, and sets Nevro apart from the rest of the industry.

15.    On information and belief, Boston Scientific has failed to develop a battery to effectively power a high frequency system, which Nevro has learned that Boston Scientific has in development.  There is therefore a high likelihood that Boston Scientific would look to Nevro's trade secret information as a shortcut to bridge the gap.

**A.    The Parties' Litigation**

16.    Prior to Nevro's emergence as a competitor in the SCS market, Boston Scientific was a market leader.  Not surprisingly, given the FDA-labelled superiority of Nevro's HF10™ therapy, Boston Scientific has since copied Nevro's technology and, on information and belief, plans to launch a competing high frequency SCS system.  In March 2014, Boston Scientific launched a clinical trial called "ACCELERATE" to evaluate the safety and effectiveness of a Boston Scientific SCS system operating at the exact same 10,000 Hz frequency as Nevro's Senza® system.

17.    To protect its groundbreaking technology and intellectual property, Nevro sued Boston Scientific on November 28, 2016 for infringing six Nevro patents.  *Nevro Corp. v. Boston Scientific Corp. et al.*, Case No. 3:16-cv-06830-VC (N.D. Cal.).  That suit is presently pending in the Northern District of California.

18.    Less than two weeks after Nevro commenced that suit, Boston Scientific retaliated by filing this action, alleging in a hastily prepared complaint that Nevro infringed ten Boston Scientific patents primarily directed toward standard components such as batteries and leads designed for low frequency SCS systems.  *See* D.I. 1.  In contrast to the state-of-the-art technology in the Nevro patents asserted against Boston Scientific, the patents asserted in this

26

case by Boston Scientific relate to technology that is now 15-18 years old.  Since instituting this action, Boston Scientific has already dropped two of its ten asserted patents.

19.     Under these circumstances, Boston Scientific's recent conduct has been particularly troubling.

**B.     Boston Scientific Receives Nevro Trade Secret Information and Fails to Immediately Safeguard It**

20.     On Friday, July 28, 2017, Nevro discovered that its confidential, proprietary, and trade secret information had been disclosed to a Boston Scientific employee working on "neuromodulation," which includes SCS systems.  The disclosure occurred during a series of back and forth emails between Nevro employees and a company called Quallion LLC (now part of Enersys), a new battery supplier with whom Nevro is working to manufacture batteries that meet Nevro's specifications for the Senza® system.

21.     Quallion is one of only a few experienced vendors in the market that can manufacture batteries for SCS systems.  On information and belief, Quallion also has a business relationship with Boston Scientific.

22.     Nevro began working with Quallion in 2016, after Nevro made a business decision to consider another battery manufacturer that could supply batteries for the Senza® system in addition to its existing manufacturer.  Before Quallion, Nevro had worked exclusively with third party battery manufacturer EaglePicher Medical Power LLC ("EaglePicher") to produce batteries for the Senza® system.  Consistent with Nevro's practice in protecting its trade secret battery information, Nevro provides the specifications for the Senza® system battery to EaglePicher under the terms of a strict non-disclosure agreement.  Similarly, in November 2016, Nevro and Quallion entered into a Mutual Non-Disclosure Agreement for the purpose of

discussing the terms under which Quallion would manufacture batteries for Nevro's Senza®
system.

       23.    In January 2017, Nevro and Quallion began discussing terms under which
Quallion would manufacture batteries for the Senza® system according to Nevro's
specifications.  As part of the discussions, Nevro and Quallion exchanged drafts of a Master
Research and Development Agreement and an accompanying Statement of Work ("SOW") that
incorporated, among other things, Nevro's highly confidential trade secret information regarding
the Senza® system battery that had been disclosed under the terms of the NDA.  From July 6,
2017 to July 28, 2017, Kevin Schrantz, Quallion's Sales Director, exchanged a series of emails
with Nevro employees regarding the Master Research and Development Agreement between
Quallion and Nevro.  Initially, Mr. Schrantz only communicated with Nevro employee
Yougandh (Yogi) Chitre.  On July 21, 2017, Mr. Chitre added Nevro corporate counsel Elizabeth
Nicholson to the email exchange.  On July 28, 2017, Mr. Schrantz appears to have added two
Quallion employees—Kurt Helm and Grant Farrell—to the email exchange as well.

       24.    During the time of this email exchange, Quallion also provided a revised
SOW for the Nevro agreement.  The SOW sets forth Nevro's confidential, proprietary, and trade
secret requirements for the battery that Quallion was to manufacture for Nevro's high frequency
Senza® system, including the highly confidential charging and discharging profile for the
battery.

       25.    At 10:41 a.m. Pacific Time on July 28, 2017, Mr. Schrantz sent an email
(the "Schrantz email") titled "Quallion Nevro Master Services Agreement – Redline (7.6.17)."
The email attached the revised SOW containing Nevro's confidential, proprietary, and trade
secret information and pasted a table from the SOW in the body of the email that also disclosed

Nevro's confidential, proprietary, and trade secret information.  The attached SOW was titled "Quallion SOW Nevro v.3.0 072617.docx."  The email was addressed to four recipients:  Mr. Chitre (Nevro), Mr. Helm (Quallion), Mr. Farrell (Quallion), and, inexplicably, a fourth named Elizabeth Eskildsen, whose email address ended in "@bsci.com."  It is unclear at this time why Nevro's Ms. Nicholson had been removed from the email exchange and replaced with Elizabeth Eskildsen.

26.     On information and belief, @bsci.com is an email domain owned and used by Boston Scientific employees.

27.     On information and belief, Ms. Eskildsen is an engineer by education and training and has worked at Boston Scientific as a neuromodulation engineer.  On information and belief, Ms. Eskildsen is presently an associate project manager working in neuromodulation at Boston Scientific, which includes Boston Scientific's SCS systems.

28.     Despite clear indicators that the Schrantz email was intended for Nevro and was not intended for Boston Scientific, neither Ms. Eskildsen nor anyone else employed by Boston Scientific notified Nevro about the Schrantz email received in error.

29.     At 11:15 a.m. on the same day, Mr. Chitre of Nevro realized that a Boston Scientific employee had been copied on the Schrantz email and immediately asked Mr. Schrantz to request that Boston Scientific delete the email.  Mr. Schrantz then sent an email to Ms. Eskildsen at 11:47 a.m. requesting that the document be returned, that she destroy any copies, and that she not forward any of the information in the email and attachment.  On information and belief, Mr. Schrantz also attempted to recall the email.

30.     On information and belief, neither Ms. Eskildsen nor anyone else employed by Boston Scientific has responded to Mr. Schrantz's email requesting that the Schrantz email be returned and any copies destroyed.

**C.     Boston Scientific Refuses to Provide Information that Nevro Requested to Ensure its Trade Secrets are Protected**

31.     After nearly four days of silence from Boston Scientific following the request that Ms. Eskildsen destroy the email containing Nevro's trade secret information, Nevro's trial counsel contacted Boston Scientific's trial counsel on August 1, 2017, and requested confirmation that the Schrantz email and attachment had been deleted, and that Boston Scientific had taken steps to ensure that Nevro's confidential, proprietary, and trade secret battery design had not been and would not be put to improper use.

32.     Given the highly sensitive, trade secret nature of the information now in Boston Scientific's possession, Nevro requested that Boston Scientific perform certain actions and provide certain information so that Nevro could assure itself that its trade secrets were protected and would not be used improperly.  Specifically, Nevro requested that Boston Scientific immediately preserve and quarantine from Boston Scientific personnel one archival copy of all communications and documents to date relating to the Schrantz email, including any steps taken regarding the Schrantz email or attachment; produce a copy of all such communications and documents to Nevro's outside counsel; confirm immediately that, other than the one quarantined archival copy, all other copies of the Schrantz email or attachment, and related communications or other documents had been permanently destroyed; provide as part of its confirmation a certificate of destruction; detail, as part of its confirmation, what steps were taken, and when, to locate and ensure the destruction of all such communications or documents within Boston Scientific; detail, as part of its confirmation, whether, when, and to whom such

communications or documents were sent within and outside of Boston Scientific; provide, as part of its confirmation, preserved forensic information that would demonstrate what was done within Boston Scientific or by Boston Scientific personnel with the Schrantz email and/or attached Statement of Work; and make Ms. Eskildsen available for deposition.

33.     In response to Nevro's letter, Boston Scientific retained the law firm Faegre Baker Daniels LLP ("Faegre"), which had no previous involvement in this case.

34.     On August 4, 2017, Timothy E. Grimsrud at Faegre responded to Nevro's August 1 letter in a short letter.  The letter began by resting "sole responsibility for having sent the unsolicited Schrantz email to Ms. Eskildsen" on Quallion.  As for Nevro's requested proof, Mr. Grimsrud provided only a single paragraph of vague assurances in response:

> That said, BSC respects the intellectual property rights of its competitors and has undertaken appropriate measures to ensure that neither the Schrantz email nor its contents have been or ever will be used by BSC for any purposes.  In particular, BSC has confirmed that Ms. Eskildsen did not make any copies of the Schrantz email or forward the Schrantz email to anyone else.  In addition, per Nevro's request in your August 1 letter, BSC's IT professionals in its legal department have quarantined one copy of the Schrantz email and destroyed the copy in Ms. Eskildsen's email account.  Accordingly, other than the quarantined copy of the Schrantz email by BSC's IT professionals, neither Ms. Eskildsen nor anyone else at BSC has access to a copy of the Schrantz email.

35.     Even taken as accurate, notably absent from the Grimsrud letter was any statement that Ms. Eskildsen did not read the Schrantz email or its attached SOW, or any proof that she did not discuss, disclose, or disseminate Nevro's trade secret information by means other than email forwarding.  More acutely, there was also no description of *when* the Schrantz email was archived and deleted—except to tacitly acknowledge that Ms. Eskildsen had *not* deleted the email when requested by Mr. Schrantz on July 28—nor any statement that Ms. Eskildsen did not

copy, print, or otherwise disseminate the SOW attached to the Schrantz email.  Indeed, the Grimsrud letter did not mention the SOW at all.

36.     Boston Scientific also failed to provide the other information requested by Nevro, including:  production of all communications and documents relating to the Schrantz email; a certificate of destruction; preserved forensic information that would demonstrate what was done within Boston Scientific or by Boston Scientific with the Schrantz email and/or attached Statement of Work; and a deposition of Ms. Eskildsen.

37.     In an effort to resolve the matter without court intervention, Nevro sent a second letter to Boston Scientific on August 10, 2017, identifying the deficiencies in the Grimsrud letter.  Nevro again noted the importance of its trade secret information and the significant risk that its disclosure posed to Nevro's core business, absent proof from Boston Scientific that the trade secret information had been appropriately quarantined, destroyed, and not disseminated or communicated to anyone.

38.     On August 14, 2017, Boston Scientific's outside counsel at Faegre responded in a letter repeating the general assertions from the August 4 Grimsrud letter and refusing to provide any more information or any proof of the kind that Nevro had requested to assure itself that its trade secret information had been adequately protected.  Ex. A.  Nevro has continued to meet and confer with Boston Scientific in a good faith effort to resolve the issue without court intervention.  Nevertheless, Boston Scientific has refused to provide basic information regarding what happened to the Schrantz email between July 28, 2017 and August 4, 2017, such as refusing to provide evidence showing:  that Ms. Eskildsen had not read the Schrantz email and attached SOW; that Ms. Eskildsen did not communicate the content of the email or SOW to anyone; that the Schrantz email and SOW were not otherwise provided to, or

reviewed by, anyone employed by, working with, or representing Boston Scientific other than Ms. Eskildsen; that no one else employed by Boston Scientific created any duplicate version of the Schrantz email and SOW, nor created any copies or summaries or any portion of any content thereof; that Boston Scientific deleted the Schrantz email and SOW and is no longer in possession of either, except for a quarantined copy; and that Boston Scientific would not possess, use, disclose, publish, transfer, copy, upload, or in any way reveal or communicate any part of the Schrantz email and SOW.

39.     Given the highly sensitive nature of the information in and attached to the Schrantz email, Boston Scientific's vague, deficient, and belated responses do not adequately protect Nevro's trade secret information, which is now in the hands of a competitor who is actively seeking to copy Nevro's high frequency SCS technology, and against whom Nevro has been forced to assert its high frequency SCS patents.

40.     As such, Ms. Eskildsen's failure to respond to Mr. Schrantz's email requesting that she delete the Schrantz email and the stonewalling behavior of Boston Scientific's outside counsel at Faegre in response to Nevro's requests for evidence that adequate measures had been taken to protect Nevro's trade secrets, strongly suggest that Ms. Eskildsen had read and studied the Schrantz email and attached SOW knowing it was Nevro's confidential information and likely disseminated it as well.

41.     Absent court intervention, Nevro has no ability to prevent Boston Scientific from using its trade secret information in Boston Scientific's battery design.  Should Boston Scientific release a product incorporating Nevro's confidential, proprietary, and trade secret battery design information, Nevro will experience immense and irreversible competitive harm in the form of lost sales and market share, loss of intellectual property, and loss of its years

of investment in research and development.  Information once learned cannot be neatly carved out and unlearned, and, on information and belief, Nevro's trade secret information is now known by at least one member of Boston Scientific's neuromodulation team, if not more.  Awarding monetary compensation after the fact will not sufficiently address the harm that Boston Scientific's conduct will cause to Nevro, both directly and indirectly.

42.    On information and belief, there is also the threat that Boston Scientific will disclose Nevro's confidential and proprietary information, which will destroy the trade secret value of the technology.  This may occur either voluntarily by Boston Scientific for its own publicity or intellectual property reasons or because the FDA requires disclosure for pre-market approval of any Boston Scientific product incorporating Nevro's confidential, proprietary, and trade secret battery design information.

43.    When Nevro sought to resolve this issue without litigation, the response from Boston Scientific on August 14, 2017, was that "BSC has no legal obligation to provide additional discovery or produce Ms. Eskildsen for deposition."  *See* Ex. A.  Despite continued efforts to try to resolve the dispute without court intervention, Boston Scientific has refused to provide Nevro with the evidence it requested to assure Nevro that Nevro's trade secret information was handled appropriately by its competitor.  Instead, Boston Scientific has relied on the absence of a lawsuit regarding this specific issue to refuse discovery to Nevro.  Thus, Nevro has been left with no recourse to ensure the protection of its trade secrets, and safeguard its competitive situation.  With this action, Nevro seeks to vindicate its rights and preclude any further misuse of its confidential, proprietary, and trade secret information.

**FIRST CLAIM FOR RELIEF**

**Violation of Defense of Trade Secrets Act
(Against All Counterdefendants)**

44.    Nevro incorporates all of the above paragraphs as though fully set forth herein.

45.    Nevro owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.  One example of the trade secret information is reflected in the SOW attached to the Schrantz email and received by Elizabeth Eskildsen at Boston Scientific.  The SOW sets forth the trade secret charging and discharging profile of the battery for Nevro's Senza® system.  Once a competitor has this proprietary, trade secret information, it can readily reverse-engineer the power consumption and circuitry specifications and schematics of Nevro's battery.  These trade secrets are not publicly disclosed.

46.    Nevro's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

47.    Nevro has taken reasonable measures to keep its trade secret information secret and confidential.  The schematics for Nevro's battery are accessible to only a few need-to-know employees within the company and are not shared with outside vendors.  The battery specifications, including charging and discharging profile information set forth in the SOW attached to the Schrantz email, are maintained on a need-to-know basis.  When Nevro needs to disclose this highly confidential information to a third party manufacturer, Nevro does so only under the terms of a strict non-disclosure agreement.  Nevro and Quallion entered into such a non-disclosure agreement in November 2016.

48.     Nevro's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

49.     On information and belief, Boston Scientific misappropriated Nevro's confidential, proprietary, and trade secret information in the improper and unlawful manner alleged herein, in violation of Nevro's rights.

50.     Boston Scientific has wrongfully refused to provide proof that Nevro's trade secret information has not been improperly disclosed by Ms. Eskildsen.  In particular, the Schrantz email and attached SOW, by virtue of their respective subject line and document title should clearly have indicated to Ms. Eskildsen that the information belonged to Nevro. Furthermore, Mr. Schrantz informed Ms. Eskildsen that she had received the Schrantz email in error at 11:47 a.m. on the same day it was sent (July 28, 2017).

51.     On information and belief, Boston Scientific knew or should have known that Nevro's trade secret information in the Schrantz email and attached SOW had been acquired by mistake and from someone with a duty to maintain the secrecy of the trade secret.  Any disclosure or use of Nevro's trade secret information by Boston Scientific was without Nevro's knowledge or consent.

52.     On information and belief, if Boston Scientific is not enjoined, Boston Scientific will misappropriate and use Nevro's trade secret information for its own benefit and to Nevro's detriment.

53.     As the direct and proximate result of Boston Scientific's conduct, if it is not enjoined, Nevro will suffer severe competitive harm, irreparable injury, and significant

damages, in an amount to be proven at trial.  Because Nevro's remedy at law is inadequate,

Nevro seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to

recover and protect its confidential, proprietary, and trade secret information and to protect other

legitimate business interests.  Nevro's business operates in a competitive market and will

continue suffering irreparable harm absent injunctive relief.

54.     Nevro has been damaged by all of the foregoing and is entitled to an

award of exemplary damages and attorney's fees.

**SECOND CLAIM FOR RELIEF**

**Violation of Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001 *et seq.***

55.     Nevro incorporates all of the above paragraphs as though fully set forth

herein.

56.     Nevro owns and possesses certain confidential, proprietary, and trade

secret information, as alleged above.

57.     Nevro has taken reasonable measures to keep its trade secret information

secret and confidential, as alleged above.

58.     On information and belief, Boston Scientific knew or should have known

under the circumstances that the information in and attached to the Schrantz email were Nevro's

trade secrets and were not intended for Boston Scientific.  Boston Scientific nevertheless

improperly delayed and failed to safeguard Nevro's trade secret information despite notice from

both Quallion and Nevro that the Schrantz email and attachment contained Nevro's trade secret

information.

59.     Under the circumstances, Ms. Eskildsen's failure to respond to Mr.

Schrantz's email requesting that she delete the Schrantz email and the stonewalling behavior of

Boston Scientific's outside counsel in response to Nevro's requests for evidence that adequate measures had been taken to protect Nevro's trade secrets strongly suggest that the Schrantz email and attachment were read, and Nevro's trade secret information understood, by at least one Boston Scientific employee working in neuromodulation, if not more.  Such information, once learned, cannot be unlearned.

60.     On information and belief, Boston Scientific misappropriated and threatens to further misappropriate Nevro's trade secrets at least by using the trade secrets in the Schrantz email and attachment, where such use or disclosure is without Nevro's knowledge or consent.

61.     As a direct and proximate result of Boston Scientific's conduct, Nevro is threatened with injury and has been injured in an amount that will be proven at trial.  Nevro has also incurred, and will continue to incur, additional damages, costs and expenses, including attorney's fees, as a result of Boston Scientific's misappropriation.

62.     The aforementioned acts of Boston Scientific were willful.  Nevro is therefore entitled to exemplary damages under 6 Del. C. § 2003(b).

63.     Boston Scientific's conduct constitutes transgressions of a continuing nature for which Nevro has no adequate remedy at law.  Pursuant to 6 Del. C. § 2002(a), Nevro is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Boston Scientific from using trade secret information misappropriated from Nevro and to return all trade secret information to Nevro.

64.     Pursuant to 6 Del. C. § 2004 and related law, Nevro is entitled to an award of attorneys' fees for Boston Scientific's misappropriation of trade secret.

**THIRD CLAIM FOR RELIEF**

**Violation of California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.***

65.     Nevro incorporates all of the above paragraphs as though fully set forth herein.

66.     Nevro owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

67.     Nevro has taken reasonable measures to keep its trade secret information secret and confidential, as alleged above.

68.     On information and belief, Boston Scientific knew or should have known under the circumstances that the information in and attached to the Schrantz email were Nevro's trade secrets and were not intended for Boston Scientific.  Boston Scientific nevertheless improperly delayed and failed to safeguard Nevro's trade secret information despite notice from both Quallion and Nevro that the Schrantz email and attachment contained Nevro's trade secret information.

69.     Under the circumstances, Ms. Eskildsen's failure to respond to Mr. Schrantz's email requesting that she delete the Schrantz email and the stonewalling behavior of Boston Scientific's outside counsel in response to Nevro's requests for evidence that adequate measures had been taken to protect Nevro's trade secrets strongly suggest that the Schrantz email and attachment were read, and Nevro's trade secret information understood, by at least one Boston Scientific employee working in neuromodulation, if not more.  Such information, once learned, cannot be unlearned or abandoned.

70.     On information and belief, Boston Scientific misappropriated and threatens to further misappropriate Nevro's trade secrets at least by using the trade secrets in the

Schrantz email and attachment, where such use or disclosure is without Nevro's knowledge or consent.

71.      As a direct and proximate result of Boston Scientific's conduct, Nevro is threatened with injury and has been injured in an amount that will be proven at trial.  Nevro has also incurred, and will continue to incur, additional damages, costs and expenses, including attorney's fees, as a result of Boston Scientific's misappropriation.

72.      The aforementioned acts of Boston Scientific were willful.  Nevro is therefore entitled to exemplary damages under Cal. Civ. Code § 3426.3(c).

73.      Boston Scientific's conduct constitutes transgressions of a continuing nature for which Nevro has no adequate remedy at law.  Pursuant to Cal. Civ. Code § 3426.2, Nevro is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Boston Scientific from using trade secret information misappropriated from Nevro and to return all trade secret information to Nevro.

74.      Pursuant to Cal. Civ. Code § 3426.4 and related law, Nevro is entitled to an award of attorneys' fees for Boston Scientific's misappropriation of trade secret.

### FOURTH CLAIM FOR RELIEF

### Conversion

75.      Nevro incorporates all of the above paragraphs as though fully set forth herein.

76.      Nevro has a property interest in its trade secrets and other confidential information as set forth in the Schrantz email and attached SOW.

77. Boston Scientific is in possession of Nevro's trade secrets and other confidential information and has improperly exerted dominion over them by refusing to provide proof that Nevro's trade secrets and confidential information were properly safeguarded.

78. Boston Scientific's actions are inconsistent with Nevro's ownership of its trade secrets and other confidential information and with Nevro's exercise of ownership to protect the confidentiality of those trade secrets and confidential information.

79. Nevro has been damaged as a result of Boston Scientific's interference with Nevro's property interest in its trade secrets and other confidential information and is entitled to an award of damages to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Nevro respectfully requests judgment from this Court as follows:

80. Judgment in Nevro's favor and against Boston Scientific on all causes of action alleged herein;

81. For an award of damages in an amount to be further proven at trial;

82. For preliminary and permanent injunctive relief restraining and enjoining any use or disclosure of Nevro's trade secret and other confidential information;

83. For an award of exemplary damages;

84. For restitution;

85. For costs of suit incurred herein;

86. For attorneys' fees and costs; and

87. For such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Nevro hereby demands trial by jury for all causes of action, claims, or issues that are triable as a matter of right to a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Sue Wang
Todd M. Simpson
SIDLEY AUSTIN  LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Irene Yang
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
(415) 772 1200

~~February 27,~~ August 24, 2017

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on ~~February 27,~~August 24, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on ~~February 27,~~August 24, 2017, upon the following in the manner indicated:

Karen L. Pascale                                                    *VIA ELECTRONIC MAIL*
Pilar G. Kraman
YOUNG CONAWAY STARGATT &TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
   *Attorneys for Plaintiffs*

Edward Han                                                         *VIA ELECTRONIC MAIL*
Matthew M. Wolf
Marc A. Cohn
William Z. Louden
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
   *Attorneys for Plaintiffs*

Krista Carter                                                      *VIA ELECTRONIC MAIL*
Edmond Ahadome
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-2112
   *Attorneys for Plaintiffs*

Soumitra Deka                                                      *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
   *Attorneys for Plaintiffs*

/s/ Rodger D. Smith II

_____
Rodger D. Smith II (#3778)

Document comparison by Workshare 9 on Friday, September 1, 2017 4:06:26 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WIL-DMS/WILM/10853420/1 |
| Description | #10853420v1<WILM> - Nevro / Boston Scientific - Nevro's Answer to Amended Complaint |
| Document 2 ID | interwovenSite://WIL-DMS/WILM/11256560/1 |
| Description | #11256560v1<WILM> - Nevro / Boston Scientific - Exhibit 2 (Nevro Amended Answer and Counterclaims) |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 216 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 219 |