IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORP. and )
BOSTON SCIENTIFIC NEUROMODULATION )
CORP., )
)
    Plaintiffs, )
)   C.A. No. 16-1163 (GMS)
  v. )
)   REDACTED - PUBLIC VERSION
NEVRO CORP., )
)
    Defendant. )

## DEFENDANT NEVRO CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER TO ASSERT AN AFFIRMATIVE DEFENSE AND COUNTERCLAIM OF UNENFORCEABLITY DUE TO INEQUITABLE CONDUCT

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Todd M. Simpson
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Sharon Lee
Thomas A. Broughan III
Benjamin H. Huh
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7107

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

Original Filing Date: February 20, 2018
Redacted Filing Date: February 28, 2018

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................3

        A.      District Court Case.................................................................................3

        B.      IPR Proceedings.....................................................................................3

III.    SUMMARY OF THE ARGUMENT ................................................................4

IV.     STATEMENT OF FACTS .................................................................................5

        A.      The Asserted '280 Patent Emphasizes a Rechargeable Battery as an Allegedly
                Novel Feature .........................................................................................5

        B.      BSC Misled the Patent Office to Issue the Parent '227 Patent by Misrepresenting
                that Use of an IPG with a Rechargeable Battery Was "Novel" ...............................6

        C.      At Least Prosecuting Attorney Bryant R. Gold Knew of Prior Art IPGs that Used
                Rechargeable Batteries, Yet Concealed Them from the Patent Office During
                Prosecution of the '227 and '280 Patents ...............................................7

        D.      Prosecuting Attorney Gold's Deposition Testimony Confirmed His Responsibility
                and Provides Strong Circumstantial Evidence of Intent to Deceive the Patent
                Office ......................................................................................................9

        E.      At Least Named Inventors Paul Meadows and Joey Chen Also Failed to Disclose
                Known Prior Art IPGs that Used Rechargeable Batteries ....................................10

        F.      BSC Maintained the Validity of the '280 Patent During IPR Proceedings by
                Falsely Claiming that Use of Detachable Leads Was Novel ...............................11

V.      ARGUMENT ....................................................................................................14

        A.      Nevro Has Acted Expeditiously and in Good Faith to Confirm the Factual
                Allegations In the Proposed Amendments Before Seeking Leave to Amend .......14

        B.      BSC Will Not Be Unduly Prejudiced ..................................................16

        C.      Nevro's Amendment Will Not Be Futile .............................................17

VI.     CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys., Inc. v SciMed Life Sys., Inc.*,
   989 F. Supp. 1237 (N.D. Cal. 1997) ......................................................................15

*Agfa Corp. v. Creo Prods. Inc.*,
   451 F.3d 1366 (Fed. Cir. 2006)...............................................................................18

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
   768 F.3d 1185 (Fed. Cir. 2014)...............................................................................19

*Apotex Inc. v. UCB, Inc.*,
   763 F.3d 1354 (Fed. Cir. 2014)...............................................................................19

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989)....................................................................................16

*Biovail Labs. Int'l SRL v. Andrx Pharms., LLC*,
   C.A. No. 05-586-GMS, D.I. 177 (D. Del. May 4, 2007).........................................14

*Depomed, Inc. v. Purdue Pharma L.P.*,
   2017 WL 2804953, No. 13-571 (MLC) (D.N.J. June 28, 2017) ..............................20

*Dole v. Arco Chem. Co.*,
   921 F.2d 484 (3d Cir. 1990)....................................................................................14

*EMC Corp. v. Zerto, Inc.*,
   C.A. No. 12-956-GMS, 2014 WL 3809365 (D. Del. July 31, 2014) .......................20

*Enzo Life Scis., Inc. v. Digene Corp.*,
   270 F. Supp. 2d 484 (D. Del. 2003)........................................................................15

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
   417 F. Supp. 2d 580 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007)............18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)..........................................................................14, 17

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................................................................14

*Free Speech Coal., Inc. v. Attorney Gen. of U.S.*,
   677 F.3d 519 (3d Cir. 2012)....................................................................................17

*Kiser v. Gen. Elec. Corp.*,
    831 F.2d 423 (3d Cir. 1987)................................................................16

*L'Oreal S.A. v. MSC Consumer Care, Inc.*,
    C.A. No. 12-99-GMS, D.I. 168 (D. Del. Sept. 18, 2014) ...........................4

*Nevro Corp. v. Boston Scientific Corp.*,
    Case No. 3:16-cv-6830, D.I. 294 (N.D. Cal. Feb. 15, 2018) ...................14

*Regeneron Pharms., Inc. v. Merus N.V.*,
    864 F.3d 1343 (Fed. Cir. 2017).............................................................19

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*,
    73 F. Supp. 2d 537 (M.D.N.C. 1999) ...................................................17

*Richardson v. United States*,
    841 F.2d 993 (9th Cir. 1988) ...............................................................16

*Roquette Freres v. SPI Pharma Inc.*,
    C.A. No. 06-540-GMS-MPT, 2009 WL 1444835 (D. Del. May 21, 2009) ...........................16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ...............................17, 18, 19

**Rules and Statutes**

Fed. R. Civ. P. 15(a) ...........................................................................1, 4, 14

Fed. R. Civ. P. 9(b) ............................................................................... *passim*

## I.       INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(a), Defendant Nevro Corp. ("Nevro") respectfully requests leave to amend its Answer to add an affirmative defense and declaratory judgment counterclaim of patent unenforceability based on inequitable conduct by Plaintiffs Boston Scientific Corp. and Boston Scientific Neuromodulation Corp., including its attorneys and named inventors (collectively, "BSC").

BSC both secured issuance of and defended the patentability of one of its asserted patents in this case, U.S. Patent No. 6,895,280 ("the '280 patent"), by concealing material information from the Patent Office.  The '280 patent is entitled "Rechargeable Spinal Cord Stimulator System."  According to BSC, a key feature of the patent is the use of a rechargeable battery with an implantable pulse generator ("IPG").  The '280 patent is a continuation of a parent patent—U.S. Patent 6,516,227 ("the '227 patent")—which is also entitled "Rechargeable Spinal Cord Stimulator System," and which also claims an IPG with a rechargeable battery as one of its features.  During prosecution of the '280 patent and its parent, at least in-house BSC prosecuting attorney Bryant R. Gold and named inventors Paul Meadows and Joey Chen knew of prior art IPGs with rechargeable batteries, but did not disclose that material prior art to the Patent Office.  They instead deceived the Patent Office by falsely representing that use of an IPG with a rechargeable battery was "novel" compared to prior art systems.  These knowing, false representations and material omissions induced the Patent Office to grant the asserted '280 patent and its parent '227 patent.

Depositions recently taken in this case have confirmed these facts.  For example, Mr. Gold testified that █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

  In response to a petition for *Inter Partes* Review ("IPR") filed by Nevro, BSC also perpetuated the fraud on the Patent Office. It falsely told the Patent Trial and Appeal Board ("PTAB") that the "novel" aspect of the '280 patent was a spinal cord stimulation ("SCS") system using detachable leads and an external trial stimulator ("ETS"). Not only are these statements inconsistent with BSC's prior representations to the Patent Office about the patent's novel feature, they are directly contrary to the testimony in this case of first named inventor Paul Meadows, who admitted that use of detachable leads in SCS systems "preexisted before the '280 invention," and use of ETSs also were known. Despite being fully aware of Mr. Meadows' testimony, BSC did not present it to the PTAB or correct its false statements. Worse, BSC has attempted to block Nevro from presenting that testimony to the PTAB by improperly designating it as "Highly Confidential" under the Protective Order in this matter. Testimony about the state of prior art cannot possibly be "Highly Confidential" information, and BSC has no plausible motive for its tactics other than to mislead the PTAB into believing that use of detachable leads and an ETS with an SCS system originated with the '280 patent. BSC's material misrepresentations and omissions caused the PTAB to deny institution of the IPR proceeding.

  Pursuant to Federal Rule of Civil Procedure 9(b), inequitable conduct must be pled with particularity. As a result, it was not until Nevro had the opportunity to take the depositions of the relevant inventors and attorneys that Nevro could plead this defense with requisite detail. Moreover, the PTAB's non-institution decision resulting from BSC's false representations issued only recently—on February 5, 2018. The amendment will not prejudice

BSC because many of the relevant individuals are within BSC's control, and were prepared by and represented by BSC's counsel at their depositions.  The amendment would add a discrete defense and counterclaim concerning only one of BSC's eight asserted patents.  The amendment would not have any impact on the case schedule if the parties cooperate to promptly complete a small number of additional depositions related to the recent IPR proceedings.  Accordingly, Nevro's motion should be granted.

## II.      NATURE AND STAGE OF PROCEEDINGS

### A.      District Court Case

On December 9, 2016, just 11 days after Nevro sued BSC for patent infringement in the Northern District of California, BSC filed this action, asserting 10 patents against Nevro's Senza® system (D.I. 1).  BSC then filed a First Amended Complaint (D.I. 13), and Nevro answered on February 27, 2017 (D.I. 18).  BSC has since withdrawn two of its patents (D.I. 179).

Fact discovery is ongoing and currently scheduled to close on March 2, 2018 (D.I. 186).  On October 31, 2017, Nevro noticed depositions for the named inventors of the '227, '263 and '280 patents—Paul Meadows, Joey Chen and Carla Mann Woods.  D.I. 96 and 98.  In December 2017, Nevro also noticed depositions for BSC's former patent counsel Bryant R. Gold and Philip Lee.  D.I. 137 and 138.  BSC provided these witnesses and/or their corresponding documents in January and February 2018.

### B.      IPR Proceedings

Nevro recently summarized the status of related IPR proceedings in a notice filed with the Court.  *See* D.I. 184.  One of the IPR proceedings is particularly relevant to this motion: IPR No. 2017-01811.  In that proceeding, Nevro filed an IPR petition challenging the validity of certain claims of the '280 patent on July 21, 2017.  *See* Ex. A.  BSC filed a Patent Owner Preliminary Response on November 7, 2017.  *See* Ex. B.  On February 5, 2018, the PTAB denied

institution of *Inter Partes* Review.  *See* Ex. C.

## III.    SUMMARY OF THE ARGUMENT

Under Fed. R. Civ. P. 15(a) and the Third Circuit's liberal standard for amending

pleadings, Nevro's request to amend its Answer should be granted.

1.    Although the deadline "to file any motion to join other parties or

amendment of pleadings" was November 7, 2017, given the seriousness of the defense and

heightened pleading requirements, Nevro's motion is timely and made in good faith.  As this

Court has recognized in the past, "parties will often not possess the necessary information to

substantiate [claims of inequitable conduct] until discovery is taken."  *L'Oreal S.A. v. MSC

Consumer Care, Inc*., C.A. No. 12-99-GMS, D.I. 168 at 1 (D. Del. Sept. 18, 2014).  Nevro

promptly made its request to amend its Answer upon confirmation of the relevant factual

allegations and after receipt of the PTAB's Institution Decision.  Any delay in the confirmation

of these allegations was due, in part, to BSC's delay in producing the witnesses for deposition.

2.    BSC will not be unduly prejudiced by Nevro's amendment because

Nevro's amendment is timely and discovery is ongoing.  Further, there is sufficient time to allow

Nevro to take a small number of additional depositions without changing the case schedule.

Because the witnesses at issue are within BSC's control, it cannot argue that it needs additional

discovery.

3.    Nevro's proposed Amended Answer would not be futile because it

contains the particularity required by Federal Rule 9(b), as well as allegations of underlying facts

from which the factfinder may reasonably infer that BSC (a) knew of the material, non-

cumulative, withheld information and the falsity of BSC's material misrepresentations to the

Patent Office, and (b) withheld and misrepresented this information with a specific intent to

deceive the Patent Office.

## IV.  STATEMENT OF FACTS

### A.  The Asserted '280 Patent Emphasizes a Rechargeable Battery as an Allegedly Novel Feature

BSC is currently asserting eight patents directed to components of traditional Spinal Cord Stimulation ("SCS") systems, such as IPGs with rechargeable batteries, stimulation controls, telemetry, and stimulation leads.  Among those patents is U.S. Patent No. 6,895,280 ("the '280 patent"), entitled "Rechargeable Spinal Cord Stimulator System."  The '280 patent "emphasizes" and claims "a recharging system" or "replenishable power source" as a feature. *See* '280 patent at 1:17-22, 2:54-57, claim 8.

The asserted '280 patent issued from a continuation application.  Its parent application issued as U.S. Patent 6,516,227 ("the '227 patent").  *See id.* ("Related U.S. Application Data").  The parent '227 patent is likewise entitled "Rechargeable Spinal Cord Stimulator System," and likewise emphasizes as an allegedly novel feature the use of an IPG with a "replenishable power source, e.g., a rechargeable battery."  *See* '227 patent at Abstract, 2:53-57, claim 1.

Because the asserted '280 patent issued from a continuation application, it has the same specification as its parent '227 patent.  The specifications contain a section called "Background of the Invention" that describes alleged deficiencies in prior art SCS systems.  *See id.* at 1:8-2:41.  In discussing the prior art, the specifications do not identify or describe any prior art IPGs that used rechargeable batteries.  *See id.*  Instead, the specifications state that power storage capabilities were a key problem with prior art SCS systems.  *See id.*  The specifications further state that the "present invention" solved that problem by introducing an IPG with "a rechargeable power source, e.g., a rechargeable battery, that allows the patient to go about his or her daily business unfettered by an external power source and controller."  *Id.* at 2:53-57.

5

**B.    BSC Misled the Patent Office to Issue the Parent '227 Patent by Misrepresenting that Use of an IPG with a Rechargeable Battery Was "Novel"**

In-house prosecuting attorney Bryant R. Gold represented BSC's predecessor-in-interest during prosecution of the asserted '280 patent and its parent '227 patent.  Mr. Gold filed the parent '227 patent application on July 26, 2000.  *See* Ex. D at NEVRO_DE0288993 - NEVRO_DE0288994.  The Patent Office rejected the patent application twice before allowing it. In the second rejection, the Patent Office rejected several claims as anticipated by the prior art reference "Hess."  *Id.* at NEVRO_DE0289244 - NEVRO_DE0289245.  The Examiner determined that Hess "describes an implantable spinal cord stimulator . . . which appear to read upon applicant's claimed features."  *Id*. at NEVRO_DE0289244.  The Examiner found that "[i]t would be obvious, if not inherent, for the IPG to utilize a rechargeable internal battery given its energy recharging circuits and the fact that it may utilize an internal battery."  *Id*.

Mr. Gold responded to the rejection by representing that "[t]he present application is titled 'Rechargeable Spinal Cord Stimulator System' because one of the features of the [claimed] system is ***the novel ability to recharge the battery contained in the IPG***."  *Id*. at NEVRO_DE0289252 (emphasis added).  Mr. Gold then emphasized language from the specification describing use of an IPG with a "***rechargeable internal battery***" or "***rechargeable power source***" as a novel feature.  *Id*. at NEVRO_DE0289253 (emphases in original).

Two months later, the Patent Office accepted Mr. Gold's arguments that use of IPGs with rechargeable batteries was novel and allowed the claims for that reason, stating:

> [T]he applicant's claimed SCS comprises ***an implantable pulse generator (IPG) having the unique feature of a rechargeable or replenishable power source.*** Heretofore, power sources for such systems were restricted to either implanted batteries or to completely externally based RF induced energy sources as described by Hess…***To have utilized an implantable power source, which is rechargeable from an external programmer/power source, appears to be new in the art.***

6

*Id*. at NEVRO_DE0289263 - NEVRO_DE0289264 (emphases added).  Neither Mr. Gold nor

anyone from BSC disagreed with or corrected this statement.

> **C.**      **At Least Prosecuting Attorney Bryant R. Gold Knew of Prior Art IPGs that
> Used Rechargeable Batteries, Yet Concealed Them from the Patent Office
> During Prosecution of the '227 and '280 Patents**

Just two days after filing the '227 patent application, Mr. Gold filed a separate

patent application on behalf of BSC that later issued as U.S. Patent No. 6,553,263 ("the '263

patent").  Ex. E at 1.  The '263 patent is entitled "Implantable Pulse Generators Using

Rechargeable Zero-Volt Technology Lithium-Ion Batteries."  It claims implantable medical

systems that use a "rechargeable battery compris[ing] a lithium-ion battery configured to permit

discharge to zero volts without damage to the battery."  The co-pending '263 and '227 patent

applications were assigned to different patent examiners.  *See id*; D.I. 1, Ex. A at 1.  The '263

patent is closely related to the '227/'280 patents:  it "borrow[ed]" virtually all of its figures and

adopted large portions of the "Background of the Invention" from them.  Ex. F (Gold Dep. Tr.)

at 104:5-107:16, 172:21-173:6; *compare* Ex. E at col. 1:41-2:60 and D.I. 1, Ex. A at 1:23-2:36.

The '263 patent, however, added the following text absent from the '227/'280

patents:

> ***It is known in the art to use a rechargeable battery within an
> implant device***. See, e.g., U.S. Pat. No. 4,082,097, entitled
> "Multimode Recharging System for Living Tissue Stimulators",
> and applicant Mann's U.S. patent application Ser. No. 09/048,826,
> filed Mar. 25, 1998, entitled "System of Implantable Devices for
> Monitoring and/or Affecting Body Parameters", which patent and
> patent application are likewise incorporated herein by reference.

Ex. E at col. 3:40-47 (emphasis added).

The '263 patent application also added multiple paragraphs disclosing that

rechargeable lithium-based batteries were used in prior art implantable medical devices,

including IPGs of U.S. Patent No. 5,411,537 ("Munshi") and U.S. Patent No. 5,560,693

7

("Wang"):

> Rechargeable lithium-based batteries were first developed in the
> 1970s using lithium metal as the active electrode material. Lithium
> has great promise as a battery material because it is the lightest of
> all metals, with high cell voltage (>3 V) and high energy density
> . . . *It is known in the art to use a Lithium-ion battery in an
> implantable medical device, see, e.g., U.S. Pat. Nos. 5,411,537
> and 5,560,693*.

Ex. E at col. 4:27-64 (emphasis added).  None of those paragraphs were included in the co-

pending '227 patent application filed just two days earlier.  In addition to Munshi and Wang, the

'263 patent also cited U.S. Patent Nos. 6,067,474 ("Schulman") and 5,733,313 ("Barreras").  *See*

*Id.* at 2.  All four references conspicuously disclose IPGs with rechargeable batteries, and none

of them were disclosed to the Patent Office during the prosecution of the '227 and '280 patents.

In addition to specifically identifying such prior art in the '263 patent

specification, Mr. Gold described it in detail in communications with the '263 patent examiner.

Namely, the '263 patent examiner rejected several claims as obvious, based on Munshi's use of a

rechargeable lithium-ion battery.  Ex. G ('263 File History) at NEVRO_DE0289430 -

NEVRO_DE0289431.  Mr. Gold responded by admitting that Munshi disclosed IPGs with

"*conventional rechargeable lithium-ion batteries*" but distinguished it on other bases in a 10-

page response to the Office Action.  *Id*. at NEVRO_DE0289455.  Mr. Gold made this admission

on October 4, 2002, before either the asserted '280 patent or its parent '227 patent issued.

Thus, Mr. Gold was acutely aware of prior art IPGs with "conventional

rechargeable lithium batteries" during prosecution of the '227 and '280 patents.  Despite that,

Mr. Gold withheld that highly material prior art from the Patent Office, omitted a description of

it from the patent specifications, falsely claimed that use of a rechargeable battery was "novel,"

and failed to correct the examiner's false understanding of the prior art that he had fostered.

**D.      Prosecuting Attorney Gold's Deposition Testimony Confirmed His Responsibility and Provides Strong Circumstantial Evidence of Intent to Deceive the Patent Office**

At his deposition held on January 31, 2018, Mr. Gold confirmed that ███████

████████████████████████████████████████████████████████. *See*

Ex. F (Jan. 31, 2018 Gold Dep. Tr.) at 30:18-24.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  *See id.* at 30:25-32:4, 179:7-12.

                    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  *See id.* at

78:25-80:11.  ████████████████████████████████████████████

████████████████████████████████████████████████  *See*

*id.* at 151:13-152:3, 152:17-24.  ████████████████████████████████

████████████████████████████████████████████████

*See also id.* at 166:17-21.  Thus, at his deposition Mr. Gold effectively confirmed his

responsibility for the misleading disclosures to the Patent Office described above.

            ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  *See id.* at 169:22-170:21.  ████████████

9

██████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 174:23-175:22.

In fact, the other prosecuting attorney for the '280 patent—Philip Lee—testified

that in Mr. Gold's position, ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ Ex. H (Lee Dep. Tr. (Rough)) at 72:22-73:9.

**E.   At Least Named Inventors Paul Meadows and Joey Chen Also Failed to Disclose Known Prior Art IPGs that Used Rechargeable Batteries**

During the prosecution of the '227 parent patent, the inventors declared that they

reviewed and understood the contents of the '227 patent specification and claims and

acknowledged their "duty to disclose all information which is material to [the] patentability" of

the claimed invention.  Ex. D ('227 patent prosecution history) at NEVRO_DE0289175 -

NEVRO_DE0289180.  The inventors of the '280 patent submitted similar declarations.  Ex. I

('280 patent prosecution history) at BSC-NVRO-DE 00004006 - BSC—NVRO—DE 00004010.

Inventor Joey Chen was ████████████████████████████████████

██████████████████████████████████████████ *See* Ex. J

(Meadows Dep. Tr.) at 95:17-19. ████████████████████████████

██████████████████████████████████████████████████████

Ex. K, Jan. 26, 2018 Chen Dep. Tr.at 58:10-16, 128:19-129:13.  Mr. Chen, a named inventor of

the '263 patent, reviewed the '263 specification and agreed with those disclosures, which include

specific discussions of the Munshi and Wang references. ████████████ █████████████

██████████████████████████████████████████████████████

████████ *Id*. at 68:23-70:8. ██████████████████████████

██████████████████████████████████████████ *Id.* ██████████

10



Xintao Wang, the inventor of another prior art reference cited in the '263 specification that uses implantable rechargeable batteries.

First named inventor Paul Meadows testified that,

Ex. J, Jan. 12, 2018 Meadows Dep. Tr. at 60:2-61:14; *see also id.* at 153:9-154:11.

*See id.* at 151:25-152:7.

*Id.* at 153:17-21.

### F.  BSC Maintained the Validity of the '280 Patent During IPR Proceedings by Falsely Claiming that Use of Detachable Leads Was Novel

In response to BSC's assertion of the '280 patent in this action, Nevro filed an IPR petition challenging the patentability of the patent on July 21, 2017. *See* Ex. A. Nevro's Petition addressed each limitation of the challenged claims, including the allegedly novel use of a rechargeable battery. *See, e.g.*, *id.* at 30-31.

BSC filed a Patent Owner Preliminary Response on November 7, 2017.[1]  *See*

Ex. B.  Tellingly, BSC's response did not assert that the use of a rechargeable battery is a

patentable feature.  Instead, BSC's response focused almost entirely on a different limitation in

the '280 patent's claims:  "an implantable electrode array detachably connected to the IPG."  *See*

*id.* at 22.  The basis of BSC's argument was that the '280 patent should be maintained as valid

because its use of such detachable leads in combination with an ETS was "novel" compared to

the prior art.  As BSC stated in its Introduction:

> The Challenged Claims recite *a spinal cord stimulation system (SCS)* used to
> treat chronic pain by providing electrical stimulation pulses from an electrode
> array, placed epidurally near a patient's spine, *which is detachably connected to*
> *an implantable pulse generator (IPG)*, as well as *use of an external trial*
> *stimulator (ETS)* connected to the electrode array for a trial period before
> implantation of the IPG. The Petition challenges the claims with one primary
> reference, Holsheimer.  But Holsheimer—alone or in combination with other
> cited references—fails to teach a SCS with this *novel combination of features*.

*Id.* at 1 (emphasis added).  BSC emphasized that point elsewhere in its response, stating for

example a portion of the patent's specification describing a "novel toolless connector that …

allows the electrode array 110 or extension 120 to be detachably secured" to an IPG.  *See id.* at 5.

On February 5, 2018, the PTAB denied institution of Nevro's IPR petition based on BSC's

argument about the novelty of detachable leads.  *See* Ex. C at 9.

However, BSC's statements were false.  BSC's own named inventor, Paul

Meadows, testified in this case that detachable leads with an IPG "preexisted" the '280 alleged

invention:

> Q.  Okay.  Did Mr. Payne invent the use of detachable leads with an IPG.

> The Witness*:  No, they preexisted*.

---

[1]      BSC's IPR counsel at Arnold & Porter LLP, David A. Caine and Wallace Wu authored
the response.  *Id.* at 35.  Mr. Caine is also trial counsel for BSC in this action.

Q.  Okay.  Preexisted before the '280 invention?

A.  There are detachable leads in pacemakers.  ***There are detachable leads in*** deep brain stimulators and ***spinal cord stimulators, all of which preexisted prior to our entering the field.***

Ex. J (Jan. 12, 2018 Meadows Dep. Tr.) at 112:5-14 (emphasis added); *see also id.* at 123:21-24 ("Q.  And we talked about this before.  Implantable electrode arrays that are detachably connected to the IPG was also known.  A.  Yes."); *id.* at 127:11-12 ("Q.  Were external trial stimulators known.  A.  Yes.").  Despite knowing facts that directly contradicted its submission to the PTAB no later than the date of Mr. Meadows' testimony which preceded the non-institution decision, BSC failed to submit Mr. Meadows statements and correct its false statements to the PTAB.

Worse, perpetuating its fraud on the Patent Office, BSC has actively prevented Nevro from submitting Mr. Meadows' testimony to the PTAB to alert the PTAB to the falsity of BSC's submission.  On January 17, 2018, BSC marked the entire Meadows deposition transcript as Highly Confidential – Attorneys' Eyes Only under the protective order in this case.  *See* Ex. L (Jan. 17, 2018 Email from K. Carter to Sidley Nevro Team).  Nevro responded by requesting BSC to withdraw confidentiality designations for substantial portions—including Mr. Meadows' admissions regarding the state of the prior art.  *See id.* (Jan. 26, 2018 Email from C. Szczepanik to K. Carter).  BSC refused.  *See id.* (Jan. 26, 2018 Email from K. Carter to C. Szczepanik).  BSC maintained, without any apparent basis, that Mr. Meadows' admissions regarding the state of the prior art were Highly Confidential.  *See id.* (Feb. 5, 2018 Email from K. Carter to T. Simpson); Ex. M (attachments to Feb. 5, 2018 Email from K. Carter to T. Simpson).  These actions by BSC were taken with the apparent intent to prevent Nevro from submitting

Mr. Meadows' testimony to the PTAB.[2]

## V.      ARGUMENT

The Third Circuit, consistent with the Federal Rules of Civil Procedure, has

adopted a liberal approach to the amendment of pleadings.  *See Dole v. Arco Chem. Co.*, 921

F.2d 484, 486-87 (3d Cir. 1990).  When a party seeks leave of court to amend its pleadings,

"[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Dole*,

921 F.2d at 486.  Accordingly, leave to amend should be "freely given" absent a showing of

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182

(1962).  This liberal allowance to amend "ensures that a particular claim will be decided on the

merits rather than on technicalities."  *Dole*, 921 F.2d at 487.

### A.      Nevro Has Acted Expeditiously and in Good Faith to Confirm the Factual Allegations In the Proposed Amendments Before Seeking Leave to Amend

Although Nevro's motion to amend comes after the date set in the case schedule

for amending pleadings, Nevro's motion to amend is made in good faith.  Because inequitable

conduct is related to fraud, the Federal Rules require that it be pled with particularity.  Fed. R.

Civ. P. 9(b); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

Due to this heightened pleading standard, this Court and others have afforded

defendants substantial leeway to add defenses alleging inequitable conduct.  *See Biovail Labs.*

*Int'l SRL v. Andrx Pharms., LLC*, Case No. 05-586-GMS, D.I.  177 at 3 (D. Del. May 4, 2007)

---

[2]      This is consistent with BSC's litigation misconduct in the California action between
Nevro and BSC, in which the Northern District of California found that BSC and its counsel
(which overlap with BSC's counsel in this case) engaged in "misuse of the sealing process" to
conceal non-confidential, potentially damaging information to BSC.  *See* Ex. N (*Nevro Corp. v.
Boston Scientific Corp.*, Case No. 3:16-cv-6830, D.I. 294 (N.D. Cal. Feb. 15, 2018)) at 2.

(allowing amendment after the deadline to amend pleadings because "a contrary ruling would tend to encourage knee jerk, thoughtless, and poorly grounded assertions of inequitable conduct by defendants in patent infringement actions."); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 488-89 (D. Del. 2003) (granting leave to add inequitable conduct defenses despite plaintiff's contention that underlying facts were available in the public prosecution history because "the Rule 9(b) 'pleading with particularity' requirement is implicated with regard to an inequitable conduct claim and [defendant] was prudent and possibly required to confirm the factual allegations through discovery"); *Advanced Cardiovascular Sys., Inc. v SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1997) (finding that "because the legal theory implicates Federal Rule of Civil Procedure 9(b) … [defendant] was entitled to confirm factual allegations before amending to include the inequitable conduct defense").

Here, Nevro has promptly moved to amend its Answer after discovering and confirming its allegations through deposition testimony of the relevant actors.  For example, as explained above, prosecuting attorney Bryant Gold confirmed at his deposition ██████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████. *See supra*, Section IV.D. ██████████████

████████████████████████████████████████████

Nevro only recently had the opportunity to confirm these facts through depositions of the witnesses, due in part to BSC's delays.  Nevro took the deposition of Paul Meadows on January 12, 2018 (requested on Oct. 31, 2017), Joey Chen on January 26, 2018 (requested on Oct. 31, 2017), Bryant Gold on January 31, 2018 (requested on Dec. 21, 2017) and Phillip Lee on February 2, 2018 (requested on Dec. 21, 2017).  These depositions allowed Nevro

to confirm the allegations in its proposed Amended Answer and to plead those allegations with the requisite particularity.  *See infra*, Section V.C.  Further, the factual basis for Nevro's inequitable conduct pleading based on misconduct during the IPR proceeding only came to fruition on February 5, 2018, when the PTAB issued its decision denying institution.  On February 16, 2018, Nevro provided BSC with a copy of its proposed amendments and asked for consent to file an Amended Answer.  BSC refused to agree and Nevro filed this motion shortly thereafter.

### B.    BSC Will Not Be Unduly Prejudiced

A motion to amend should not be denied unless the non-moving party makes an affirmative showing of prejudice.  *Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 428 (3d Cir. 1987) (finding that where prejudice is asserted as a ground for opposing amendment of a pleading, "it is the opposing party's burden to prove that such prejudice will occur"); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith").  In demonstrating prejudice, BSC "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal citation omitted); *see also Roquette Freres v. SPI Pharma Inc.*, C.A. No. 06-540-GMS-MPT, 2009 WL 1444835, at *3 (D. Del. May 21, 2009).  In the meet and confer process, BSC failed to identify any prejudice to BSC.

Granting Nevro's motion to amend here will not unduly prejudice BSC because the information in connection with BSC's inequitable conduct is within BSC's possession, custody and control.  At least two inventors are currently employed by BSC and BSC's counsel has represented each of the relevant witnesses at deposition.  Because the inequitable conduct

defense is based entirely upon the acts and omissions of BSC's agents and employees during the prosecution of the '227 and '280 patents, "very little—if any—new discovery is required" to rebut Nevro's assertions.  *See Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 537, 539 (M.D.N.C. 1999) (finding that plaintiff would not be prejudiced by addition of inequitable conduct defense, because the defense was based on information within the plaintiff's control).  If additional discovery is required, there remains sufficient time within the case schedule.  Trial is not scheduled until October 22, 2018, and BSC's expert report on issues where it does not bear the burden of proof are not due until May 11, 2018.

### C.    Nevro's Amendment Will Not Be Futile

Nevro's proposed amended pleading is not futile because it satisfies the *Exergen* standard for pleading inequitable conduct.  *See Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) (A "proposed amendment is not futile [where it] would withstand a motion to dismiss.").  The proposed amended pleading identifies the specific "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" and includes "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *See Exergen,* 575 F.3d at 1327-1329; *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (*en banc*) (a reference is material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

The following list, for example, briefly summarizes how the first basis of Nevro's pleading—misconduct during  prosecution of the '280 patent—meets the *Exergen* standard.

- *Who:*  At least prosecuting attorney Bryant R. Gold, and inventors Joey Chen and Paul

17

M. Meadows.

- *What:*  Misrepresentation about novelty of using an IPG with a rechargeable battery; failure to disclose material prior art references disclosing IPGs using rechargeable batteries including the Munshi, Wang, Barreras, and Schulman references.

- *When, Where, and How:*  During prosecution of the asserted '280 patent and its parent '227 patent, including material misrepresentations in an office action response on May 20, 2002 and material omissions in filing '280 patent application on Nov. 27, 2002.

- *Materiality:*  The Patent Office expressly stated that it granted the '280 patent's parent due to BSC's representation that use of IPGs with rechargeable batteries was novel. Nevro has also provided BSC with invalidity contentions that map the withheld prior art to the claims of the '280 patent, showing that the references are "but for" material. BSC's inequitable conduct committed during prosecution of the parent '227 patent also renders the '280 patent unenforceable via the doctrine of infectious unenforceability.[3]

- *Deceptive Intent:* 

Accordingly, the first basis of Nevro's proposed pleading satisfies Rule 9(b).

Notably, at the pleading stage, factual allegations identifying indirect and circumstantial

evidence from which a reasonable factfinder could infer deceptive intent suffice.  *See*

*Therasense*, 639 F.3d at 1290 ("Because direct evidence of deceptive intent is rare, a district

court may infer intent from indirect and circumstantial evidence.").  Numerous case-specific

facts can support a finding of intent to deceive, including poor credibility, the patentee

---

[3]      *See Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (affirming judgment that child patent was unenforceable due to inequitable conduct committed during prosecution of the parent patent, stating that "that inequitable conduct early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.") (citation omitted); *eSpeed, Inc. v. Brokertec USA, L.L.C.,* 417 F. Supp. 2d 580, 596 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007) (similar).

acknowledging the importance of the undisclosed information, the patentee having "ample time and opportunity" for disclosure, and evidence that excludes inadvertence as a likely explanation. *See Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014); *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1191 (Fed. Cir. 2014).  Each of those facts is present here.

The second basis of Nevro's proposed pleading—misconduct during recent IPR proceedings and in litigation—also satisfies Rule 9(b).  The pleading identifies specific individuals who made specific statements misrepresenting the novelty of the '280 patent to the PTAB, in specific submissions.  Nevro's pleading further alleges how BSC's misrepresentations and related conduct constitute affirmative egregious misconduct, and were material to the PTAB's decision to deny institution of Nevro's IPR petition.  *See Therasense*, 649 F.3d at 1292 ("Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct."); *id.* ("there is no room to argue that submission of false affidavits is not material") (citation omitted).  Namely, BSC's primary argument against institution was based on the alleged novelty of detachable leads, and the PTAB accepted that argument.  Nevro's pleading also alleges sufficient facts from which a reasonable factfinder could infer deceptive intent.  Those facts include (a) Mr. Caine's dual role as trial and IPR counsel, which strongly supports an inference that he knew of the falsity of his submission to the PTAB in light of named inventor Meadows' contrary and highly material testimony, and (b) BSC's misuse of the Protective Order in this case, done with the apparent purpose of preventing even Nevro from submitting Mr. Meadows' testimony for consideration by the PTAB.  *See Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1364 (Fed. Cir. 2017) (litigation misconduct can support a finding of inequitable conduct).

In similar circumstances, this Court allowed an amended answer alleging inequitable conduct.  In *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2014 WL 3809365 at *4 (D. Del. July 31, 2014), this Court permitted the defendant to amend its answer to allege inequitable conduct based on "misrepresentations to the PTO concerning the prior art status of a reference [the defendant] submitted in connection with its petition for IPR of the [asserted] patent" (emphasis omitted).  The Court found the allegations, viewed in the light most favorable to the defendant, "set forth sufficient facts from which the court may reasonably infer" deceptive intent.  The Court concluded that "a further developed record is necessary to resolve the inequitable conduct issue," and declined to dismiss the defense on the pleadings.

The District of New Jersey reached a similar conclusion in *Depomed, Inc. v. Purdue Pharma L.P.*, 2017 WL 2804953 at *5-7, No. 13-571 (MLC) (D.N.J. June 28, 2017).  There, the court allowed an allegation of inequitable conduct based on misrepresentations and omissions by an inventor and the plaintiff's counsel during IPR proceedings to proceed past the pleading stage.  The court determined that the pleading raised plausible allegations that statements the inventor and counsel made to the PTAB contradicted information in their possession that had been produced in the litigation, and were "intended to paint an incomplete or misleading picture for the PTAB."  *See id.* at *6.  The same reasoning applies here, and accordingly the court should reach the same result.

## VI.    CONCLUSION

Based on the foregoing, Nevro respectfully requests that the Court grant Nevro leave to amend its Answer to assert the affirmative defense of unenforceability due to inequitable conduct and a declaratory judgment counterclaim for unenforceability due to inequitable conduct.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Rodger D. Smith II

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Todd M. Simpson
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

Sharon Lee
Thomas A. Broughan III
Benjamin H. Huh
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

*Attorneys for Defendant*

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7107

February 20, 2018