# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., <br><br> Plaintiffs, <br><br> v. <br><br> NEVRO CORP., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. No. 16-1163-CFC

**REDACTED - PUBLIC VERSION**

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION TO LIFT STAY OR, IN THE ALTERNATIVE, TO BIFURCATE AND PARTIALLY LIFT STAY

OF COUNSEL:

Matthew M. Wolf
Edward Han
Marc A. Cohn
Amy DeWitt
William Z. Louden
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
matthew.wolf@arnoldporter.com
ed.han@ arnoldporter.com
marc.cohn@arnoldporter.com
amy.dewitt@arnoldporter.com
william.louden@arnoldporter.com

Krista M. Carter
Edmond K. Ahadome
ARNOLD & PORTER LLP
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
krista.carter@arnoldporter.com
edmond.ahadome@arnoldporter.com

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs Boston Scientific Corporation and Boston Scientific Neuromodulation Corp.*

February 22, 2019
Redacted Version: March 1, 2019

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  NATURE AND STATE OF THE PROCEEDINGS..........................................................2

III. SUMMARY OF ARGUMENT ...................................................................................3

IV.  STATEMENT OF FACTS .........................................................................................4

    A.   BSC's Development and Nevro's Infringement of the Asserted Patents ...............4

        1.   The Lead Patents......................................................................................... 4

        2.   The IPG Patents .......................................................................................... 5

    B.   Nevro's Motion to Stay and the PTAB's Rejection of Nevro's IPRs on Six of
the Eight Asserted Patents ...........................................................................6

    C.   The Lack of Overlap Between the Lead Patents and IPG Patents..........................7

    D.   Nevro's Continued Infliction of Competitive Harm on BSC ................................8

    E.   Nevro's Repeated Attempts to Delay Resolution of BSC's Claims ......................9

V.   ARGUMENT.......................................................................................................10

    A.   The Court Should Lift the Stay in Full. ...............................................................11

        1.   BSC Is Suffering Irreparable Prejudice from Delay in Resolving
Infringement Claims Against a Direct Competitor. ................................... 11

        2.   Lifting the Stay in Full Results in a Single Streamlined Trial. ................. 13

        3.   The Advanced Status of the Case Favors Lifting the Stay. ...................... 14

    B.   In the Alternative, the Court Should Lift the Stay on the Lead Patents and
Sever the IPG Patents....................................................................................16

        1.   Lifting the Stay on the Lead Patents Achieves all the Simplification
Benefits that Nevro Argued Would Result from a Stay. .......................... 16

        2.   The Status of the Litigation Favors Lifting the Stay................................. 18

        3.   The Competitive Prejudice from Further Delay Warrants Lifting the Stay.
................................................................................................................... 19

VI.  CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Boston Scientific Corp. v. Edwards Lifesciences Corp.*,
    C.A. No. 16-275-JFB-SRF, 2018 WL 1891403 (D. Del. April 20, 2018) ........................ 13, 14

*Boston Scientific Corp. v. Edwards Lifesciences Corp.,*
    8:16-cv-0730-CJC-GHS, D.I. 116 (C.D. Cal. Oct. 23, 2018)..................................................... 18

*Cellectricon AB v. Fluxion Biosciences, Inc.*,
    No. C-09-3150 RMW, (N.D. Cal. April 25, 2011).................................................................. 18

*Ciena Corp. v. Corvis Corp.*,
    210 F.R.D. 519 (D. Del. 2002) ................................................................................................ 18

*EMED Techs. Corp. v. EMED Techs. Corp. [sic]*,
    No. 2:15-CV-01167-JRG-RSP, 2018 WL 6436102 (E.D. Tex. Dec. 7, 2018) ....................... 15

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*
    No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893, at *2 (E.D. Tex. Nov. 16, 2018) ........... 15

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
    757 F. Supp. 2d 431 (D. Del. 2010)..................................................................................... 3, 11

*LG Electronics, Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
    C.A. No. 12-1063-LPS-CJB, 2015 WL 8674901 (D. Del. Dec. 11, 2015) .................. 12, 14-15

*Life Techs. Corp. v. Illumina, Inc.*,
    C.A. No. 09-706-RK, 2010 WL 2348737 (D. Del. June 7, 2010)........................................... 15

*Nevro Corp. v. Boston Scientific Corp., et al.*,
    C.A. No. 3:16-cv-06830-VC (N.D. Cal. June 29, 2017) ........................................................ 12

*Ohio Will Wood Co. v. Apls S. Corp.*,
    No. 2:04-CV-1223, 2008 WL 4683222 (S.D. Ohio Oct. 21, 2008) ........................................ 15

*Pragamtus Mobile, LLC v. Amazon.com, Inc.*,
    C.A. No. 14-436-LPS, 2015 WL 3799433 (D. Del. June 17, 2015)........................................ 15

*Rovi Guides, Inc. v. Comcast Corp.*,
    No. 15-CV-9278, 2018 WL 1726250 (S.D.N.Y. April 6, 2018) ................................. 10, 11, 17

*SAS Inst. Inc. v. Iancu*,
    138 S.Ct. 1348 (2018)............................................................................................................... 6

**Statutes**

35 U.S.C. § 311(b) ..................................................................................................................... 15

35 U.S.C. § 315(e)(2)................................................................................................................. 15

## I.     INTRODUCTION

This case has been pending for over two years while Defendant Nevro Corp. ("Nevro") continues to compete directly with Plaintiffs Boston Scientific Corporation and Boston Scientific Neuromodulation ("BSC") in the highly-competitive market for spinal cord stimulation ("SCS") systems using BSC's own patented technology.  With Nevro having ***lost*** all challenges to the validity of six patents-in-suit before the Patent Trial and Appeal Board ("PTAB") and having partially lost its challenge to a seventh patent, further delay is unwarranted and highly prejudicial to BSC.  Nevro should not continue to enjoy the benefits of its willful infringement—including continued competition with BSC and increasing sales—pending the lengthy Federal Circuit appeals of the PTAB decisions finding claims from just two of the eight asserted patents invalid.

BSC proposes two alternatives for proceeding on all or some of its claims.  First, BSC requests that the Court lift the stay on all claims, except for the claims related to the one patent the PTAB invalidated in full, which BSC would dismiss without prejudice.  This would allow the Court to efficiently resolve all claims on seven patents in a single trial.  As to these seven patents, the PTAB has already rejected all of Nevro's challenges to six of them, and the prejudice from further delay greatly outweighs any advantage from waiting for the Federal Circuit to resolve BSC's appeal on the one remaining patent.

 Alternatively, BSC requests that the Court bifurcate the case based on the technologies at issue—*i.e.*, proceed on the Leads Patents and maintain the stay as to the other patents.  Four of the patents-in-suit concern the SCS systems' implantable pulse generator ("IPG"), and the other four pertain to the leads that extend from the IPG to the patient's spinal cord.  Nevro agrees that there is little overlap in the technologies or relevant witnesses between the two.  As the PTAB denied Nevro's validity challenges to each of the Lead Patents, and discovery concerning them is substantially complete, BSC proposes to move forward on the Lead Patents.

Nevro's continued efforts to delay resolution of any of BSC's infringement claims should be rejected. BSC respectfully requests the Court to lift the stay, in part, or in its entirety.

## II.    NATURE AND STATE OF THE PROCEEDINGS

BSC filed the Complaint on December 9, 2016. D.I. 1. The parties vigorously litigated the case until June 15, 2018, when the Court granted Nevro's renewed motion to stay pending the *inter partes* review ("IPR") proceedings on two of BSC's eight asserted patents. D.I. 244. Nevro did not file its first IPR petition until seven months after the filing of the Complaint. Nevro did not file its first motion to stay until eleven months after the filing of the Complaint or its renewed motion to stay until a year-and-a-half after the filing of the Complaint. By that point, the parties had produced over 548,000 documents, taken 32 fact witness depositions, served 19 expert reports totaling almost 4,000 pages, and commenced expert depositions. A *Markman* hearing had already been held on November 28, 2017, and the Court issued a partial claim construction order on December 28, 2017. D.I. 142. Expert discovery was set to close on July 20, 2018. D.I. 129. Trial was set for October 22, 2018, just four months away. D.I. 129. The Court, however, granted the stay because "as a practical matter, this case may be stayed in any event by the press of events here in Delaware and the uncertainty of the arrival of the next judge who is going to hear this case." D.I. 250, Ex. A at 8:16-21.

On November 13, 2018, the Court denied BSC's motion for reargument on Nevro's stay motion, reasoning that "staying the case until shortly after the PTAB issues its decision in February 2019 is not manifestly unjust." D.I. 257 at 2. The PTAB has refused to institute IPRs on six of eight asserted patents, the PTAB has denied Nevro's requests for rehearing on three of the patents, and the time to request hearing on the remaining three non-instituted patents has expired. The PTAB issued final written decisions on the '280 Patent on February 1, 2019, and the '241 Patent on February 4, 2019, cancelling the claims currently asserted in those two patents

while confirming the validity of certain other of the '280 Patent claims.  BSC intends to appeal the two final written decisions.

## III.    SUMMARY OF ARGUMENT

1.      A court has the power to lift a stay when the court's reasons for imposing a stay no longer exist or are inappropriate.  *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016).  The court looks to the factors for originally imposing the stay:  prejudice, simplification of issues for trial, and the status of litigation.  *Id.*  When deciding whether to partially lift a stay, the court analyzes the similar factors for bifurcation under Federal Rule of Civil Procedure 42(b):  avoiding prejudice, conserving judicial resources, and enhancing juror comprehension of the issues.  *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 441 (D. Del. 2010).  An analysis of these factors warrants lifting the stay in full or in part.

2.      BSC requests that the Court lift the stay in its entirety and allow all claims to move forward to trial, except for claims related to the '241 Patent, which BSC will voluntarily dismiss without prejudice.  Since BSC has strong grounds to overturn the PTAB's decisions as to the '280 Patent, the incremental work and complexity would not be wasted effort, but would instead alleviate the need for a second trial on this patents if BSC is successful on appeal, while stopping the prejudice caused by further delay.

3.      Alternatively, BSC requests that the Court bifurcate the four Lead Patents—for which the PTAB denied all of Nevro's validity challenges—and lift the stay only as to these patents.  By moving forward on just the Lead Patents, the Court and the jury will be presented with a simplified set of issues that have little overlap with the issues relating to the remaining four patents directed to other SCS technologies.  Moreover, the case was very advanced, just four months from trial, at the time of the stay, with almost all of the litigation work for the Lead Patents completed.  Finally, BSC suffers ever-increasing harm by Nevro's continued willful

infringement of the Lead Patents even though the PTAB rejected Nevro's invalidity challenges. Lifting the stay as to these patents would provide a simple and expeditious way to curtail the continuing harm to BSC by quickly reaching resolution as to at least some of BSC's claims.

## IV.    STATEMENT OF FACTS

### A.    BSC's Development and Nevro's Infringement of the Asserted Patents

BSC sued Nevro for infringement of its patents directed to pioneering SCS technology on December 9, 2016 (D.I. 1), and filed an Amended Complaint on February 13, 2017 (D.I. 13). SCS systems are used to treat chronic back and leg pain. An IPG is one part of an SCS system. The IPG is surgically implanted under the skin and is capable of emitting electrical signals. An IPG contains a battery (rechargeable or nonrechargeable), unless powered by an external transmitter, and the circuitry that governs the functioning of the device. Electrical signals from the IPG are transmitted to electrical leads (wires that connect two locations electrically) that are implanted near the spinal cord. The transmission of electrical signals from the IPG to the leads to the neural tissue near the spinal cord can alleviate a patient's chronic pain.

#### 1.    The Lead Patents

Four of BSC's asserted patents—U.S. Patents Nos. 7,891,085 (the "'085 Patent"), 8,019,439 (the "'439 Patent"), 8,646,172 (the "'172 Patent) and 8,650,747 (the "'747 Patent") (collectively, the "Lead Patents")—are directed to improvements in the design and manufacturing process for leads used in BSC's SCS systems. ████████████████████

████████████████████████████████████████████████████████████

████████████████████. Declaration of Karen L. Pascale in Support of Plaintiffs' Motion to Partially Lift Stay ("Pascale Decl."), Ex. A. ¶ 109. BSC's leads use a multi-lumen design, which, compared to prior art leads, are less costly to manufacture, yet still provide more flexibility and reliability with lower fracture and migration rates when implanted in the patient.

*Id.* at ¶ 100.  BSC originally contracted with Stellar Technologies, Inc. ("Stellar") as its sole manufacturer for its leads until mid-2008, when BSC moved manufacturing in-house.

When manufacturing its leads, Nevro took a shortcut around the long development process BSC undertook by simply contracting with Stellar in 2009 to manufacture Nevro's leads using the methods taught in the Lead Patents.  Nevro and Stellar's manufacturing process infringed the '085 Patent through November 2014 and continues to infringe the other three Lead Patents to this day.

### 2.    The IPG Patents

The other four asserted patents in this case—U.S. Patent Nos. 6,895,280 (the "'280 Patent"), 7,437,193 (the "'193 Patent"), 7,587,241 (the "'241 Patent), and 8,644,933 (the "'933 Patent) (collectively, the "IPG Patents")—are directed to the overall architecture of the SCS system with a focus on the IPG and IPG-specific technologies.  The '280 Patent teaches an SCS system with a rechargeable battery housed inside an IPG capable of providing independently programmable stimulation on multiple channels.  The other three IPG Patents relate to maintaining the IPG's rechargeable battery in a manner that avoids overheating and explosion inside the human body and which reduces the frequency of need for surgeries to replace the batteries.

The technology behind these patents led to a revolution in the SCS industry.  From 2004 to 2007, BSC went from zero to one-third of the U.S. SCS market.  D.N. 209, Ex. B.  Within three years of BSC's market entrance, 75% of all U.S. SCS sales were of SCS systems with rechargeable batteries.  *Id.*

Just as it did with the leads, Nevro took a shortcut in developing its Senza system by willfully infringing BSC's patents.  Nevro hired at least 48 past employees of BSC, many of whom are intimately familiar with BSC's SCS systems and core technologies.  For example,

once such former BSC employee, Jim Thacker, who is now Nevro's Director of Field Engineering, took thousands of BSC documents with him to Nevro, including five of his own laboratory notebooks detailing his work on BSC's SCS system and 34,000 computer files concerning BSC's development plans, manufacturing plans and methods, and product specifications and diagrams. Documents that Nevro produced revealed that Mr. Thacker repeatedly shared BSC confidential documents to help Nevro speed the development of its system at the expense of BSC's intellectual property rights.

### B. Nevro's Motion to Stay and the PTAB's Rejection of Nevro's IPRs on Six of the Eight Asserted Patents

Nevro sought to institute IPRs on all eight of BSC's asserted patents. Nevro initially moved to stay the case pending its IPR petitions on November 3, 2017, before the PTAB had made any institution decisions. D.I. 110. The Court denied the motion on November 28, 2017. D.I. 127. Nevro renewed its motion on June 12, 2018 (D.I. 238), after the PTAB instituted review on two IPG Patents, the '280 Patent[1] and the '241 Patent. The Court granted the renewed motion on June 15, 2018. D.I. 244.

The PTAB's review of the eight asserted patents is now complete. The PTAB denied institution on all four Lead Patents in May 2018 and, in November 2018, rejected all rehearing petitions that Nevro filed. D.I. 258. Thus, no additional rehearings are available on the Lead Patents. The PTAB also refused to institute review on two of the IPG Patents—the '193 Patent and the '933 Patent—and the time to petition for rehearing of those decisions has expired.

The PTAB, however, issued final written decisions cancelling all currently asserted claims of the other two IPG Patents—the '280 Patent and the '241 Patent—on February 1, 2019

---

[1] Although the PTAB initially instituted IPRs with respect to claim 27 only, the PTAB modified its institution to include all challenged claims and grounds following the Supreme Court's opinion in *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359–60 (2018).

and February 4, 2019, respectively. D.I. 258. BSC intends to appeal the rulings on both the '280 Patent and the '241 Patent.

The PTAB also ruled that Claims 26 and 28-30 of the '280 Patent are patentable. D.I. 258. BSC asserted Claim 26 in it is initial infringement contentions on June 12, 2017, and in its amended infringement contentions on July 10, 2017. Nevro served invalidity contention on Claim 26 on July 17, 2017. On August 1, 2017, BSC and Nevro agreed via email that BSC would reduce the number of its asserted claims to 40 in exchange for Nevro limiting its prior art grounds for invalidity to no more than 80 grounds and no more than 40 unique references. Claim 26 was one of the 66 claims dropped under this agreement.

### C.      The Lack of Overlap Between the Lead Patents and IPG Patents

As Nevro acknowledged in its renewed stay motion, "[t]he large majority of fact and expert witnesses for both parties do not overlap between the IPG Patents and the Lead Patents." D.I. 239 at 2. At the time the Court granted the stay, Nevro had a pending motion to amend its Answer to add an inequitable conduct affirmative defense and counterclaim (D.I. 193) and the parties were engaging in limited supplemental discovery (*see* D.I. 229). As Nevro acknowledged, the "motion to amend, as well as the supplemental fact discovery and expert reports, relate[] to the '280 patent," and not to any of the Lead Patents or the other IPG Patents. D.I. 239 at 5.

The limited supplemental discovery arose from a stipulation between the parties regarding BSC's assertion of an earlier priority date for the '280 Patent. D.I. 229. Under the stipulation, which the Court approved, BSC addressed Nevro's concerns regarding the earlier priority dates by agreeing to drop the assertion of one claim (Claim 27) of the '280 Patent, allowing supplemental fact discovery solely on the issue of the earlier priority date, and agreeing

to supplemental expert reports and discovery based on the earlier priority date.  *Id.* at 1.  The

stipulation did not result in any change to the pretrial conference date or the trial date.  *Id.* at 3.

The Court has already construed five claim terms, and the parties have also resolved their

disputes on two terms.  D.I. 232 at 2.  Only eleven groups of terms remain to be construed, just

three of which concern the Lead Patents.  *Id.*  Other than taking seven expert depositions, no

further discovery is needed before the Lead Patents are ready for trial.

**D.    Nevro's Continued Infliction of Competitive Harm on BSC**

In 2015, the year before this lawsuit was filed, Nevro's U.S. market share was just ██ .

Taking advantage of its infringement, Nevro's market share has now grown to approximately

██ , at the expense of BSC, which was the market leader when Nevro entered the market.

Pascale Decl., Ex. A. ¶ 72.  ████████████████████████

████████████████████████  D.I. 119. ¶ 4.  ████████████████

████████████████████████████████████

██   *Id.*

Throughout the pendency of the stay pending *inter partes* review, Nevro has continued to

infringe BSC's asserted patents, including five of the six patents on which the PTAB refused to

institute review.  Indeed, in 2018, the year the stay was imposed, Nevro's U.S. revenue increased

to $322 million compared to $264 million over the prior year.[2]  Pascale Decl., Ex. B (Nevro

Press Release).

---

[2] The accused product in this action is Nevro's original SCS offering, known as the Senza
system.  Nevro received approval for its next product, Senza II, in January 2018.  Senza II also
infringes numerous BSC patents.  On April 27, 2018, BSC filed a separate lawsuit in this Court
related to the Senza and Senza II systems.  *Boston Scientific Corp., et al. v. Nevro Corp.*, No. 18-
644-CFC.  As detailed in the joint status report filed in the second action (D.I. 17), the parties are
awaiting the calendaring of a Rule 16 Scheduling Conference and a ruling on Nevro's motion to
dismiss filed on September 10, 2018.

Should Nevro continue to gain market share during the pendency of the stay, the harm may be more difficult to reverse than it would be in other industries. In the SCS market, customers are "stickier" than customers in most other medical device markets. D.I. 119 ¶ 5. Physicians and patients have repeated, ongoing interactions with their SCS supplier's customer representative, who supports physicians with trialing, using, optimizing and monitoring SCS systems. *Id*. Once physicians become familiar with the intricacies of a particular SCS system, as well as the supplier's customer representatives, the incumbent supplier becomes more difficult to replace. *See id*.; *see also* Nevro 10-K at 25 (citing "established competitors with strong relationships with customers, including physicians, hospitals and third-party suppliers" as a risk to Nevro's business); *id.* at 26 ("physicians and hospitals may be slow to change their practices because of perceived risks arising from the use of new products").

E.    **Nevro's Repeated Attempts to Delay Resolution of BSC's Claims**

As soon as Nevro launched in the United States and began to increase its market share, BSC began its investigation into whether Nevro's Senza system infringes BSC's patents. Because of the nature of BSC's patent claims, BSC had to acquire physical specimens of the Senza system and hire a specialized vendor to conduct months of analysis on its internal circuitry. After obtaining a Rule 11 basis for bringing litigation, BSC promptly filed this suit and since that time has resisted all attempts to delay resolution of the case.

However, consistent with the unfair competitive advantage it gains with a delay, Nevro has repeatedly attempted to slow the schedule in the case. For instance, although the Complaint in this case was filed in December 2016, Nevro did not file its first IPR petition until seven months after the Complaint was filed and did not complete filing its IPR petitions until nearly a year after the start of the case. D.I. 115 at 11. Thus, Nevro's initial motion to stay was not filed until almost a year into the case (D.I. 110), while its renewed motion was not filed until a year-

and-a-half after the Complaint was filed (D.I. 238). BSC did not seek a preliminary injunction based on the Court's imposition of a prompt October 2018 trial date. Nevro's sluggish pace in filing its IPR petitions has resulted in Nevro gaining an additional four months after the original trial date and counting to impose further irreparable competitive harm on BSC.

Nevro also repeatedly tried to impede BSC's prosecution of this case by filing: (1) a motion to amend to add trade secret counterclaims (D.I. 65), which this Court properly denied (D.I. 73); (2) a motion to complicate this case with unrelated patent infringement counterclaims (D.I. 92), which the Court properly denied (D.I. 126); and (3) a motion to amend its Answer and add inequitable conduct counterclaims related to the '280 Patent (D.I. 193), which the Court should deny, after lifting the stay. A speedy trial is needed now to prevent further irreparable competitive harm to BSC.

## V.      ARGUMENT

"When a court has imposed a stay, but 'circumstances have changed such that the court's reasons for imposing [that] stay no longer exist or are inappropriate,' the court … has the inherent power and discretion to lift the stay." *Dermafocus LLC v. Ulthera, Inc.*, C.A. No. 15-654, 2018 WL 5113960, at *2 (D. Del. Oct. 19, 2018) (internal quotation omitted). When determining whether to lift a stay, courts typically consider the factors for granting a stay in the first instance: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (internal quotation omitted); *see also Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2018 WL 1726250, at *1 (S.D.N.Y. April 6, 2018).

When deciding whether to *partially* lift a stay, the Court also considers whether bifurcation is appropriate under Federal Rule of Civil Procedure 42(b). *Rovi Guides*, 2018 WL 1726250, at *1. A district court has "broad discretion" to bifurcate and "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Lab. Skin Care,* 757 F. Supp. 2d at 441 (internal quotation omitted). "There is considerable overlap between the factors used to evaluate whether the stay should be lifted and whether Rule 42(b) bifurcation is justified." *Rovi Guides*, 2018 WL 1726250, at *2.

Here, the Court stayed the case pending resolution of Nevro's IPRs petitions to the PTAB and assignment of the case to a new judge. Now that the case has been reassigned and the PTAB has rejected challenges in full to six asserted patents and in part to a seventh asserted patent, the Court should lift the stay as to those seven patents. Alternatively, the Court should lift the stay in part as to the Lead Patents pending BSC's appeals related to two IPG Patents.

## A. The Court Should Lift the Stay in Full.

After an eight month stay, the PTAB found seven of eight of BSC's asserted patents to be valid. Indeed, the PTAB upheld every single challenged claim on six of the eight asserted patents. Nevro nevertheless continues to take advantage of the delay in the case to sell tens-of-millions of dollars' worth of infringing products in direct competition with BSC. After BSC dismisses without prejudice claims related to the one invalidated patent (the '241 Patent), each of three stay factors favors lifting the stay in full.

### 1. BSC Is Suffering Irreparable Prejudice from Delay in Resolving Infringement Claims Against a Direct Competitor.

Courts "hesitate[] to grant stays where the parties are direct competitors" because "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized

consequences to the party asserting that infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *LG Electronics, Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, C.A. No. 12-1063-LPS-CJB, 2015 WL 8674901, at *6 (D. Del. Dec. 11, 2015) (internal quotation omitted). That is exactly what is happening here. Aided by its infringement, Nevro has grown its market share from just ▮ in 2015 to approximately ▮ today, at the expense of BSC's share. Pascale Decl., Ex. A. ¶ 72.

Loss of market share is especially harmful in the market in which Nevro and BSC compete because it contains a small number of competitors in a "sticky" market, where it is difficult to get physicians to switch back to a brand after they have started using another one. D.I. 119 ¶ 5. Nevro itself has argued that competitors in this market are irreparably harmed by ongoing patent infringement. Nevro's First Amended Complaint, *Nevro Corp. v. Boston Scientific Corp., et al.*, No. 16-cv-06830-VC (D.I. 158 ¶ 54) (N.D. Cal. June 29, 2017).

Indeed, BSC's expert has explained that, taking into account all asserted claims, BSC will suffer irreparable harm because the available monetary remedy of ▮ per infringing unit "would under-compensate BSC by over ▮ per unit. Pascale Decl., Ex. A. ¶¶ 327, 329. As Nevro sells more than ▮ units per year, each year of delay results in approximately ▮ ▮ per year of harm that cannot be repaired through damages. *Id.*

Ironically, the IPR proceedings used to justify the stay have resulted in the PTAB finding the overwhelming majority of BSC's claims to be valid and patentable. Even though BSC largely prevailed in defending the validity of its patents, Nevro has been allowed to reap a windfall from delaying final resolution of BSC's infringement claims. Because continued infliction of irreparable competitive harm through infringement of numerous patent claims found valid by the PTAB is intolerable, this factor strongly favors lifting a stay.

## 2. Lifting the Stay in Full Results in a Single Streamlined Trial.

Although BSC believes that the PTAB's decision cancelling the '241 Patent is incorrect, in order to secure a speedy path to ending Nevro's infringement of the other seven patents the PTAB upheld, BSC is willing to dismiss claims relating to the '241 Patent without prejudice. Thus, this option results in a streamlined trial because it reduces the number of patents the Court and the jury must consider and removes seven separate patent claims from the case.

To maintain the benefits of requiring only a single trial on all claims, BSC asks the Court to lift the stay on the claims of the '280 Patent that the PTAB invalidated, which BSC is now appealing to the Federal Circuit.[3] Indeed, where the PTAB has invalidated only part of the claims asserted in the case and the patent owner is appealing the PTAB's decision, a court may proceed to trial on all asserted claims, including those invalidated by the PTAB, to avoid "the likelihood that at least two trials would be necessary to bring the litigation to its conclusion." *Boston Scientific Corp. v. Edwards Lifesciences Corp.*, C.A. No. 16-275-JFB-SRF, 2018 WL 1891403, at *2 (D. Del. April 20, 2018). This approach recognizes that where a litigation is at a "late stage," a stay awaiting a decision from the Federal Circuit, "which may or may not alter the trajectory of the case, would not promote the interests of justice." *Id.*

All of these considerations favoring a trial on invalidated claims pending appeal are applicable here. Although Nevro sought to invalidate all eight patents and claims at issue, the vast majority of patents and claims were upheld by the PTAB. Thus, regardless of the outcome of BSC's appeal, the Court will need to hold a trial on at least six of eight of BSC's asserted

---

[3] The PTAB's construction of certain claim terms is inconsistent with the intrinsic record, and the PTAB relies on these erroneous constructions to justify its decision. Furthermore, the PTAB's Final Written Decision is not supported by substantial evidence, nor does the disclosure of the prior art references support the PTAB's determination. Moreover, the PTAB failed to articulate motivation to combine the references.

patents and the vast majority of asserted claims. *Cf. Boston Scientific Corp.*, 2018 WL 1891403, at *2 ("Edwards' counterclaims based on the Spenser patents are not the subject of IPR proceedings, and will ultimately proceed to trial regardless of the outcome of Boston Scientific's anticipated appeal.").

Moreover, when the Court issued the stay on June 15, 2018, the progress of the case was at an extremely late stage. An arduous discovery process was nearly complete, and the parties were prepared to go to trial in just four months (on October 22, 2018). Nevro's meager results in the nine IPR petitions it filed—a partial invalidation of one patent and invalidation of one other—do not justify more delay or continuing to inflict the prejudice that BSC is suffering as a result of Nevro's ongoing and continuous infringement of fully validated patents.

Furthermore, when Nevro moved to stay the case, it argued the case would be simplified by a stay because BSC's statements made in its Preliminary Responses or Patent Owners Responses to Nevro's IPR Petitions and any amendments to the challenged claims would become part of the intrinsic record of the patents. D.I. 110 at 5. All such statements have now been submitted, and the possibility of amendments to claims in the context of Nevro's IPRs has passed. Because there is no further possibility of simplifying the case on this basis, continuance of the stay is unwarranted, and this factor militates in favor of lifting the stay.

### 3. The Advanced Status of the Case Favors Lifting the Stay.

The advanced status of this litigation also strongly favors lifting the stay. BSC filed this case in 2016. In the meantime, the PTAB has refused to invalidate any claims of six of eight asserted patents and partially upheld one other patent. Yet, Nevro continues to infringe BSC's patents. The years' long delay in BSC's ability to obtain a final determination of its infringement claims against a direct competitor strongly militates in favor of lifting the stay. *LG Electronics, Inc.* 2015 WL 8674901, at *4 (case filed "over three years ago" was "not in its early

stages at all"); *Ohio Willow Wood Co. v. Alps S. Corp.*, No. 04-CV-1223, 2008 WL 4683222, at *3 (S.D. Ohio Oct. 21, 2008) (four-year stay would unduly prejudice the patentee).

Furthermore, tremendous resources have already been spent on the case. This case was just four months away from trial when it was stayed. The Court has already resolved numerous substantive motions, and the parties have already produced hundreds of thousands of documents, taken 32 fact witness depositions, served 19 expert reports, and taken depositions of 7 experts. After so much effort by the Court and the parties, this case is too far advanced to maintain a stay on patents for which the PTAB has definitively rejected Nevro's validity challenges while Nevro continues to willfully infringe them. *Cf. Pragamtus Mobile, LLC v. Amazon.com, Inc.*, C.A. No. 14-436-LPS, 2015 WL 3799433, *1 (D. Del. June 17, 2015) (stay refused where parties had commenced claim construction briefing); *Life Techs. Corp. v. Illumina, Inc.*, C.A. No. 09-706-RK, 2010 WL 2348737, at *3–4 (D. Del. June 7, 2010) (holding this factor did not favor a stay where close of fact and expert discovery were five and nine months away, respectively, and no depositions had been noticed).

As part of this alternative, BSC seeks the Court's permission to reassert Claim 26 of the '280 Patent, which is one of 66 claims that BSC dropped from its infringement contentions in exchange for Nevro agreeing to lower the number of prior art references relied upon for invalidity. *See EMED Techs. Corp. v. Repro-Med Sys., Inc.* No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893, at *2 (E.D. Tex. Nov. 16, 2018), report and recommendation adopted *sub nom. EMED Techs. Corp. v. EMED Techs. Corp. [sic]*, No. 2:15-CV-01167-JRG-RSP, 2018 WL 6436102 (E.D. Tex. Dec. 7, 2018) (allowing amendment of infringement contentions to add claim that survived *inter partes* review). In light of the PTAB's ruling that Claim 26 is patentable, Nevro is now estopped from arguing that Claim 26 is invalid based on any prior art in the form of printed publications or patents. 35 U.S.C. §§ 311(b), 315(e)(2). Thus, Nevro will

suffer no meaningful prejudice as a result of its agreement to reduce the number of prior art references relied upon. And, as a result of the estoppel bar's foreclosure of Nevro's prior art defense, reintroducing just one of the 66 dropped claims will have no material impact on the complexity of the case, especially in light of the parties' agreement to further limit the number of asserted claims before trial from the current 39 to 20.

Although moving forward on all claims would require completing limited supplemental discovery on the '280 Patent, a ruling on Nevro's motion to amend its Answer, and construction of eleven claim term groups, the remaining work is dwarfed by the effort the Court and parties expended before the stay. In light of the enormous competitive prejudice caused by delay and the advanced stage of the case, BSC requests that the Court lift the stay in full.

**B.      In the Alternative, the Court Should Lift the Stay on the Lead Patents and Sever the IPG Patents.**

In the alternative, in light of the PTAB's refusal to institute review of any of the four Lead Patents, all three of the stay factors and related bifurcation factors now strongly favor lifting the stay on the Lead Patents while maintaining a stay on the IPG Patents.

**1.      Lifting the Stay on the Lead Patents Achieves all the Simplification Benefits that Nevro Argued Would Result from a Stay.**

When Nevro moved to stay the case, it argued the benefits of stay were that it would "Eliminate the Need to Litigate over Half the Asserted Claims" (*i.e.* those that relate to the IPG Patents and which represent the majority of damages) (D.I. 238 at 9), "Eliminate the Need to Construe Eight of the Remaining Eleven Groups of Claim Terms" (*id.* at 11), moot Nevro's motion to amend its Answer and add inequitable conduct counterclaims (*id.*), and moot supplemental fact and expert discovery related to the '280 Patent (*id.* at 12). By maintaining the stay on the IPG Patents, while lifting the stay on the Lead Patents, the Court achieves every single one of the benefits that Nevro advocated. Now that the IPRs have been completed without

a single Lead Patent claim being invalidated, there is no further reason to delay resolution of the Lead Patent claims.

Moreover, this factor favors lifting the stay on the Lead Patents claims, regardless of the outcome of BSC's appeals of the decisions invalidating certain IPG Patent claims. Because the PTAB invalidated claims of only two of the four IPG Patents, the Court and the jury will still need to resolve claims related to both the Lead Patents and the distinct technologies underlying the IPG Patents, no matter the outcome of BSC's appeals. By bifurcating the first phase of the case to cover only the Lead Patents, the Court and the jury will be left with a simplified set of issues to decide. For example, the Court will only need to construe three more claim groups in this phase, instead of eleven, and the jury will only need to consider one category of technology instead of multiple categories.

Although BSC prefers lifting the stay on all claims because it is the fastest way to eliminate the competitive prejudice to BSC from delay, bifurcation will not cause significant duplication in the two separate trials. To the contrary, as Nevro has conceded, "there is no overlap for the large majority of fact or expert witnesses between the IPG Patents and the Lead Patents. As a result, in the event of a partial stay as to the IPG Patents, trial issues and trial time will be significantly streamlined to focus on the Lead Patents." D.I. 238 at 5.

*Rovi Guides* is instructive on the benefits of simultaneously bifurcating and partially lifting a stay pending IPR. There, the Court lifted a stay pending IPR on one of five patents at issue that "involve[d] different technology with different inventors from those involved with the other patents-at-issue." 2018 WL 1726250 at *3. The Court reasoned that bifurcation will not only "reduce prejudice (in the form of delay) to [plaintiff], but it may also reduce the risk of jury confusion by reducing the number of patents that jurors must consider simultaneously … [,] a particularly compelling justification for Rule 42(b) bifurcation in patent cases." *Id.* at *3 (citing

*Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002)); *Cellectricon AB v. Fluxion Biosciences, Inc.*, No. 09-CV-03150 RMW, (N.D. Cal. April 25, 2011) (partially lifting stay on patent whose reexamination was not subject to appeal and substantially different from other patents in suit).

Here, the Lead Patents likewise involve different technology with different inventors such that severing and partially lifting the stay beneficially reduces prejudice from delay and simplifies the issues for trial. Maintaining the stay, conversely, will not result in simplification of the case. To the contrary, if BSC prevails in its appeals of the PTAB's final written decisions, the Court and the jury will have to adjudicate both the IPG Patents and Lead Patents in a single, more complex trial. If BSC does not prevail in its appeals, the issues will still not be any simpler than they are now, but the prejudice from Nevro's continued infringement will end only after "the indefinite timeline of the appeals process" is complete. *Boston Scientific Corp. v. Edwards Lifesciences Corp.* No. 16-CV-0730-CJC-GHS, D.I. 116 at 6 (C.D. Cal. Oct. 23, 2018).

Because lifting the stay ensures the issues for trial are simplified, conserves judicial resources, enhances juror comprehension, and avoids the prejudice of further delay, this factor strongly favors lifting the stay on the Lead Patents.

### 2. The Status of the Litigation Favors Lifting the Stay.

As explained in Section V.A.3, above, this case was stayed at an advanced stage just four months away from trial. Thus, this factor strongly favors lifting the stay as to any and all claims.

This factor is even more compelling with respect to the claims related to the Lead Patents. None of the supplemental fact or expert discovery the parties were finishing up before the stay relate to the Lead Patents. Nevro's motion to add inequitable conduct counterclaims does not relate to any of the Lead Patents. And only three of the eleven claim term groups that

remain to be construed relate to the Lead Patents.  The minimal level of work remaining before the Lead Patents are ready for trial militates decisively in favor of lifting the stay.

### 3. The Competitive Prejudice from Further Delay Warrants Lifting the Stay.

The PTAB has refused to institute every single one of the petitions Nevro filed against the Lead Patents.  The time to petition for rehearing of those decisions has expired, and thus the PTAB will not review the validity any of the asserted claims of the Lead Patents.  Nevertheless, Nevro is taking advantage of the delay to continue its unabated infringement and unfair competition with BSC.  The competitive prejudice caused by a direct competitor's continued infringement of patents that survived *inter partes* review completely unscathed demands that the Court lift the stay on the Lead Patents.

## VI. CONCLUSION

For the foregoing reasons, BSC respectfully requests the Court lift the stay.  Subject to the Court's availability, BSC requests the Court, consistent with the schedule before the case was stayed, set a trial date within four months (if the stay is lifted in part) or five months (if the stay is lifted in full) of the order lifting the stay.[4]

---

[4] Should the Court decide the present motion and set a trial date, BSC requests the Court order the parties to meet and confer and submit, within one week of the order lifting the stay, a proposed schedule of pre-trial deadlines.

DATED: February 22, 2019

*Of Counsel:*

Matthew M. Wolf
Edward Han
Marc A. Cohn
Amy DeWitt
William Z. Louden
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
matthew.wolf@arnoldporter.com
ed.han@ arnoldporter.com
marc.cohn@arnoldporter.com
amy.dewitt@arnoldporter.com
william.louden@arnoldporter.com

Krista M. Carter
Edmond K. Ahadome
ARNOLD & PORTER LLP
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
krista.carter@arnoldporter.com
edmond.ahadome@arnoldporter.com

01:24200148.1

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs,*
*Boston Scientific Corp. and*
*Boston Scientific Neuromodulation Corp.*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 1, 2019, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF (which will send notification that such filing is available for viewing and

downloading to all registered counsel), and in addition caused true and correct copies of the

foregoing document to be served upon the following counsel of record by electronic mail:

---

*Attorneys for Defendant Nevro Corp.:*

Rodger D. Smith II                                          *rsmith@mnat.com*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Bradford J. Badke                                          *jbadke@sidley.com*
Ching-Lee Fukuda                                          *clfukuda@sidley.com*
Sona De                                                      *sde@sidley.com*
Todd M. Simpson                                          *tsimpson@sidley.com*
Ketan V. Patel                                          *ketan.patel@sidley.com*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

Irene Yang                                                *irene.yang@sidley.com*
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104

Nathan A. Greenblatt                                      *ngreenblatt@sidley.com*
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA 94304

Sharon Lee                                                *sharon.lee@sidley.com*
Thomas A. Broughan III                                  *tbroughan@sidley.com*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005

*(Continued . . . .)*

---

Michael A. Jacobs                                    *mjacobs@mofo.com*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482

Kenneth A. Kuwayti                                   *kkuwayti@mofo.com*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018

Bita Rahebi                                          *brahebi@mofo.com*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Pilar G. Kraman (#5199) *[pkraman@ycst.com]*
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600

*Attorneys for Plaintiffs,*
*Boston Scientific Corporation*
*and Boston Scientific Neuromodulation Corp.*

March 1, 2019