IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | ) ) ) ) | |
| Plaintiffs and Counter-Defendants, | ) ) ) | C.A. No. 16-1163 (CFC) |
| v. | ) ) | CONSOLIDATED |
| NEVRO CORP., | ) ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

### NEVRO CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' '280 AND '241 PATENTS

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Todd M. Simpson
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
Sharon Lee
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

July 29, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendant*

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7107

## **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS.................................................2

III.  SUMMARY OF ARGUMENT ....................................................................2

IV.  STATEMENT OF FACTS .........................................................................4

    A.  The Federal Circuit Has Affirmed that All Asserted Claims of the
        '280 and '241 Patents Are Invalid .................................................4

    B.  BSC Had Many Opportunities to Assert Claims 21 and 26 of the '280
        Patent in this Case, But Chose Not to Do So .......................................5

    C.  In Seeking Consolidation, BSC Failed to Disclose Its Plan to Reassert
        Claims It Withdrew Three Years Ago .................................................6

V.  ARGUMENT...........................................................................................8

    A.  BSC's Infringement Claims for the '280 and '241 Patents Should Be
        Dismissed, Because All Asserted Claims Are Invalid.........................8

    B.  BSC Is Judicially Estopped from Asserting Claims It Dropped Three
        Years Ago......................................................................................8

    C.  BSC Cannot Establish Good Cause to Reassert Claims It Deliberately
        Dropped Three Years Ago .............................................................10

        1.  BSC Has Not Been Diligent ...................................................11

        2.  Nevro Would Be Prejudiced ..................................................15

        3.  The Reintroduction of the '280 Patent Will Only Exacerbate,
            Rather Than Help Resolve, the Parties' Overall Dispute .........18

VI.  CONCLUSION......................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. Dell Inc.*,
  Case No. 5:14-cv-01259-PSG, 2015 WL 13747892 (N.D. Cal.
  Feb. 24, 2015) ......................................................................................................18

*Berger v. Rossignol Ski Co.*,
  No. 05-cv-02523, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ......................12

*Boston Scientific Neuromodulation Corp. v. Nevro Corp.*,
  Nos. 2019-1582, 2019-1635, 2020 WL 2787715 (Fed. Cir.
  May 29, 2020) ......................................................................................................18

*British Telecomm. PLC v. IAC/InterActiveCorp*,
  C.A. No. 18-366, 2020 WL 3047989 (D. Del. June 8, 2020) ....................*passim*

*Commil USA, LLC v. Cisco Sys., Inc.*,
  720 F.3d 1361 (Fed. Cir. 2013), *vacated in part on other grounds*,
  575 U.S. 632 (2015) ...............................................................................................8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) .........................................................................2, 8

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*,
  553 F. App'x 246 (3d Cir. 2014) ........................................................................3, 9

*Murata Mach. USA v. Daifuku Co., Ltd.*,
  830 F.3d 1357 (Fed. Cir. 2016) ...........................................................................15

*Nevro Corp. v. Boston Scientific Neuromodulation Corp.*,
  IPR2017-01812, Paper 79 ....................................................................................19

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................3, 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ...........................................................................10

*RetailMeNot, Inc. v. Honey Sci. Corp.*,
    C.A. No. 18-937-CFC-MPT, 2019 WL 2537565 (D. Del. June 6,
    2019) ................................................................................................17

*SAS Inst. Inc. v. Iancu*,
    138 S. Ct. 1348 (2018)......................................................................4

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
    Civ. No. 15-13488-FDS (D. Mass. Apr. 27, 2018) (Ex. I)..............12, 14, 17, 20

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec.*
    *Indus. Co.*, C.A. No. 04-1436, 2012 WL 1015993 (D. Del.
    Mar. 26, 2012).................................................................................12

*Univ. of VA Patent Found. v. Gen. Elec. Co.*,
    C.A. No. 3:14cv00051, 2019 WL 1993552 (W.D. Va. May 6,
    2019) ................................................................................................13, 14, 17

## I.   INTRODUCTION

After three years of litigation—including in this Court, in the Patent Office, and two appeals to the Federal Circuit—all asserted claims of BSC's U.S. Patent Nos. 6,895,280 (the "'280 patent") and 7,587,241 (the "'241 patent") were invalidated.  Because invalid claims cannot be infringed, the '280 and '241 patents should be dismissed.

BSC, however, refuses to agree to dismissal of the '280 patent.  On the contrary, BSC seeks to resurrect claims of the '280 patent that it initially asserted and then deliberately dropped from the Nevro I case three years ago, and in doing so, to force a redo of fact discovery and expert reports for the '280 patent. It does so despite explicitly representing to the Court (in seeking consolidation) that "*the parties have already completed fact discovery and expert reports* on the [Nevro I] IPR-Free and ['280 and '241 patents]—they can take discovery *on the trade secret claim* in the meantime." D.I. 290 at 3-4 (emphasis added).

In fact, as soon as the Court ordered consolidation of the remaining patents in Nevro I with C.A. No. 18-644 ("Nevro II"), BSC immediately disavowed its representations to the Court, informing Nevro that the '280 patent was now part of the consolidated litigation, that BSC wished to add previously dropped claims of the '280 patent back into the consolidated case, and that the parties needed to redo fact discovery and expert reports.

BSC should be held to its representations to the Court—and should not be allowed to treat consolidation as a license to redo years of completed litigation.

## II.    NATURE AND STAGE OF PROCEEDINGS

The Court recently consolidated C.A. No. 16-1163 ("Nevro I") and C.A. No. 18-644 ("Nevro II") (June 22, 2020 Order).   The consolidated case includes six BSC patents, five Nevro patents, and a BSC trade secret claim.[1]   As BSC has attested to this Court, "the parties have already completed fact discovery and expert reports" for BSC's patents, because the parties litigated those patents for several years as part of Nevro I.  D.I. 290 at 3-4.  Fact discovery is ongoing for Nevro's five patents and BSC's trade secret claim, which were part of Nevro II. The Court set a claim construction hearing for January 6, 2021, and trial for October 18, 2021.  D.I. 51 (Nevro II).

## III.    SUMMARY OF ARGUMENT

1.    <u>Mootness.</u>  The '280 and '241 patents should be dismissed from the case, because all asserted claims have been found invalid.   Invalid claims cannot be infringed and must be dismissed.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).

---

[1]     BSC asserts the '193, '933, '085, '439, '172, and '747 patents.  D.I. 13. Nevro asserts the '020, '978, '665, '460, and '461 patents.  D.I. 27 (Nevro II) at 34.

2. <u>Judicial Estoppel.</u>  BSC told the Court that fact discovery and expert reports for the '280 patent were completed to achieve consolidation.  BSC should not be permitted to disavow those representations now, in order to assert previously dropped claims and redo fact discovery and expert reports for the '280 patent, simply because its asserted claims have been invalidated.  *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 251 (3d Cir. 2014).

3. <u>No Amendment.</u>  BSC chose the claims it wished to assert from the '280 patent three years ago.  Fact discovery, expert reports, and claim construction briefing for that patent has long been completed.  A strategic miscalculation by BSC three years ago does not provide good cause to amend infringement contentions.  *See British Telecomm. PLC v. IAC/InterActiveCorp*, C.A. No. 18-366, 2020 WL 3047989, at *2 (D. Del. June 8, 2020).

4. <u>No Good Cause.</u>  The reintroduction of previously dropped claims will only exacerbate, rather than help resolve, the parties' global dispute (which currently includes litigations involving more than 50 patents and patent applications globally).  *See British Telecomm.*, 2020 WL 3047989, at *2.

3

## IV.   STATEMENT OF FACTS

### A.   The Federal Circuit Has Affirmed that All Asserted Claims of the '280 and '241 Patents Are Invalid

After three years of litigation—including motion practice, fact discovery, expert reports, claim construction, IPR proceedings, and two Federal Circuit appeals—all asserted claims of the '280 and '241 patents have been found invalid and cancelled by the Patent Office, with no further appeal pending.

Specifically, Nevro filed IPRs against the '280 and '241 patents in July and August 2017. In February 2018, the PTAB instituted IPRs on both the '280[2] and '241 patents. In June 2018, the Court stayed Nevro I pending the outcome of those IPRs. D.I. 244. In February 2019, the PTAB found all asserted claims of the '280 and '241 patents invalid (*i.e.*, claims 8, 18, and 22-24 of the '280 patent and claims 2, 8, 9, 11, 12, 15, and 17 of the '241 patent).[3] The Federal Circuit affirmed in May 2020. *See* D.I. 296, Exs. A-B.

---

[2]     The PTAB initially instituted review only of claim 27 of the '280 patent, but later included other claims in April 2018 after *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348 (2018) issued. In total, the PTAB instituted review of claims 8, 18, 22-24, and 26-30 of the '280 patent, but never instituted review of claim 21.

[3]     The PTAB concluded claims 8, 18, 22-24, and 27 of the '280 patent are unpatentable; claims 26 and 28-30 are not unpatenable. IPR2017-01812, Paper No. 79 (February 1, 2019). The PTAB concluded all claims of the '241 patent are unpatentable. IPR2017-01899, Paper No. 35 (February 4, 2019).

**B.    BSC Had Many Opportunities to Assert Claims 21 and 26 of the '280 Patent in this Case, But Chose Not to Do So**

BSC originally asserted ten patents in Nevro I, which collectively contained 231 claims.  In June 2017, BSC served initial infringement contentions asserting 180 of those 231 claims against Nevro.  *See* Ex. A (2017-06-12 BSC Claim Charts); Ex. B (2017-07-10 BSC Am. Claim Charts).  In response, Nevro identified 98 invalidity references and served 1,858 pages of invalidity contentions.

Both parties recognized that litigating 180 claims would be unmanageable.  The parties therefore agreed on a case narrowing process.  Specifically, BSC agreed to narrow its number of asserted claims to 40 on August 1, 2017 and to 20 after a claim construction order issued.  *See* Ex. C, at 6-7 (email chain); D.I. 229.  In return, Nevro agreed to narrow its asserted prior art references to 40 by August 8, 2017, and later to 28.  *Id.*

The parties followed their agreement.  On August 1, 2017, BSC voluntarily dropped claims 1, 19, 21, and 26 of the '280 patent.  *Id.*, at 6 (2017-08-01 Email).  Since then, BSC has served four additional rounds of infringement contentions, none of which included any indication that BSC would seek to reassert claims 21 or 26 of the '280 patent.  *See* Exs. D-G (BSC Second, Third, Fourth, and Fifth Amended Infringement Contentions dated 2017-09-29 to 2018-03-02).

The Court stayed the Nevro I litigation on June 15, 2018.  D.I. 244.
By that time, Nevro had served three additional rounds of invalidity contentions
based on BSC's selection of asserted claims.  The parties had also completed fact
discovery, including deposing 39 witnesses, serving 21 expert reports, filing claim
construction briefs, and arguing at a *Markman* hearing—all based on BSC's
selection of asserted claims.  At no point during any of these stages of litigation did
BSC ever raise the possibility of reasserting claims 21 and 26 of the '280 patent.

### C.     In Seeking Consolidation, BSC Failed to Disclose Its Plan to Reassert Claims It Withdrew Three Years Ago

The Court recently consolidated the Nevro I and Nevro II cases
(June 22, 2020 Order).  BSC argued in favor of consolidation by telling the Court
that fact discovery and expert reports were complete in Nevro I, and therefore a
consolidated case could accommodate the addition of BSC's trade secret claim and
five Nevro patent infringement claims.

BSC argued that consolidation of Nevro I and II was appropriate
because "*conveniently, the parties have already completed fact discovery and
expert reports on the [Nevro I] IPR-Free and Appealed ['280 and '241] Patents—
they can take discovery on the trade secret claim* in the meantime."  D.I. 290 at 3-4
(emphasis added); *see also* D.I. 260 at 7-8, 18-19 (BSC explaining that the parties
stipulated to "limited supplemental discovery" for now-invalidated claims of the
'280 patent, "solely on the issue of the earlier priority date" that BSC belatedly

changed); D.I. 280 at 4 (BSC explaining Nevro moved for a stay "just before the end of expert discovery").  The Court relied on these representations in granting BSC's motion.  *See* June 22, 2020 Hrg. Tr. at 23:12-17.  In ordering consolidation, the Court stated that there were only "six remaining" BSC patents.  *Id.* at 24:11-13.

BSC had the May 29, 2020 Federal Circuit decision invalidating the asserted claims of the '280 patent for ***a month*** at the time of the June 22, 2020 consolidation hearing.  D.I. 296 at Ex. B.  Despite that, BSC did not tell the Court that it planned to reopen fact discovery, expert reports, claim construction briefing, and other "already completed" litigation for the '280 patent.[4]  BSC revealed its intentions for the first time only after the Court's consolidation order.  On July 9, 2020, BSC sent Nevro a letter stating that the parties would need to redo "claim construction," "fact discovery," and "expert reports/discovery" for the '280 patent and unspecified other patents.  *See* Ex. H at 1-2.  Having failed to disclose its plan for the '280 patent when advocating for consolidation, BSC now seeks to do exactly the opposite of what BSC previously told the Court, *i.e.*, re-litigate "already completed" proceedings on the Nevro I patents.

---

[4]    BSC may argue that, in its original motion to lift the stay in February 2019, BSC sought to reassert claim 26 (but not claim 21).  *See* D.I. 260 at 15-16.  BSC, however, did not make this request in seeking consolidation.  BSC instead sought a trial on its "2016 No IPR Patents and trade secret" claim, while only vaguely suggesting in a footnote that it "may seek leave" to include the '280 patent if the Federal Circuit upheld the patent's validity.  *See* D.I. 279 at 2; D.I. 280 at 8 n.4.

## V.   ARGUMENT

### A.   BSC's Infringement Claims for the '280 and '241 Patents Should Be Dismissed, Because All Asserted Claims Are Invalid

"It is axiomatic that one cannot infringe an invalid patent." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013) (citation omitted), *vacated in part on other grounds*, 575 U.S. 632 (2015). Consequently, "when a [patent] claim is cancelled, the patentee loses any cause of action based on that claim and any pending litigation in which the claims are asserted becomes moot." *Fresenius*, 721 F.3d at 1340.

Here, the Patent Office has found all asserted claims of the '280 and '241 patents invalid (*i.e.*, claims 8, 18, and 22-24 of the '280 patent and claims 2, 8, 9, 11, 12, 15, and 17 of the '241 patent). Accordingly, BSC's infringement claims for the '241 and '280 patents (counts I and IV of BSC's complaint, D.I. 13) should be dismissed as moot on that basis alone.

### B.   BSC Is Judicially Estopped from Asserting Claims It Dropped Three Years Ago

BSC's attempt to avoid dismissal of the '280 patent, by reasserting claims it deliberately dropped three years ago, should be rejected.

As explained above, BSC sought consolidation by insisting to the Court that fact discovery and expert reports were complete in the Nevro I case, and therefore a consolidated case could accommodate the addition of BSC's trade

secret claim and five Nevro patent infringement claims.  *See supra*, Section IV.C; *e.g.*, D.I. 290 at 3-4.

Now, after achieving its goal of consolidation, BSC has reversed course.  BSC now wants to restart litigation of the '280 patent by asserting claims of the '280 patent it dropped on August 1, 2017 in the initial stages of fact discovery.  BSC wants to redo infringement and invalidity contentions, re-open fact discovery, re-write expert reports, re-submit claim construction briefs, and burden the Court with a redo of associated claim construction, dispositive motions, *Daubert*, and other proceedings.  BSC should not be permitted to make certain representations to the Court in seeking consolidation, only then to immediately disavow those representations after the Court rules in its favor.  Consolidation was ordered to efficiently resolve the remaining 11 patent infringement claims and one trade secret claim in this case—not to allow the parties to redo completed proceedings.

Judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment" or using "intentional self-contradiction ... as a means of obtaining unfair advantage."  *New Hampshire*, 532 U.S. at 749-51 (internal citations omitted).  The doctrine applies where a party "affirmatively misrepresent[s] its procedural position and play[s] fast and loose with the courts."  *Haines*, 553 F. App'x at 251.  That is exactly the case here.

9

BSC should be estopped from redoing litigation for the '280 patent that was, in BSC's words, "already completed."

### C. BSC Cannot Establish Good Cause to Reassert Claims It Deliberately Dropped Three Years Ago

BSC should not be permitted to reassert claims it dropped long ago for three reasons:  (1) BSC's three-year delay in asserting the claims is the opposite of the diligence required under the law; (2) redoing fact discovery and expert reports on claims dropped from the litigation three years ago would severely prejudice Nevro; and (3) the reintroduction of the '280 patent would only exacerbate, rather than help resolve, the parties' overall dispute.

Amending infringement contentions "requires a showing of good cause," and "[u]nlike the liberal policy for amending pleadings, the philosophy behind amending infringement and invalidity contentions is decidedly conservative, as it is designed to 'require parties to crystallize their theories of the case early in the litigation[.]'"  *British Telecomm.*, 2020 WL 3047989, at *2 (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)).[5]

---

[5]   BSC has not specified how, procedurally, it will seek to reassert its dropped claims.   But reasserting them would at a minimum require amending BSC's infringement contentions.

"In determining whether a party has demonstrated good cause to amend its contentions, the key factor that courts have considered is whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *Id.* "If the moving party can establish diligence, other considerations pertinent to the good cause inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment." *Id.*

### 1. BSC Has Not Been Diligent

BSC should not be permitted to add claims 21 and 26, because BSC's three-year delay in asserting those claims is the opposite of diligence.

BSC had ample opportunity to assert claims 21 and 26 in this case, but did not. *See supra*, Section IV.B. For example, BSC could have included those claims in its August 1, 2017 claim election, but chose not to do so. BSC could have sought to assert those claims in any of the four additional rounds of infringement contentions it served, but chose not to do so. In fact, BSC's voluntary decision to withdraw claims 21 and 26 in August 2017, and its failure to reassert the claims over the course of three years of litigation, alone shows that BSC has not been diligent. *See British Telecomm.*, 2020 WL 3047989 at *3-4.

11

BSC's **only** excuse for not timely asserting claims 21 and 26 is that it intentionally dropped them because it believed its other claims were stronger. BSC told the Court in June 2018 that there was a "99.9 percent chance" that the PTAB would find asserted claims 8, 18, and 22-24 valid. Ex. J (6/15/2018 Hrg. Tr.) at 5:11-23; *see also id.* at 6:10-12. BSC believed that, given the insurmountable invalidity and infringement problems in claims 21 and 26, on balance its asserted claims were stronger. *See infra*, Section V.C.3. BSC therefore made the deliberate strategic decision to drop claims 21 and 26 in favor of other claims.

But a deliberate strategic choice not to assert claims is the antithesis of diligence. *See Berger v. Rossignol Ski Co.*, No. 05-cv-02523, 2006 WL 1095914, at *5 (N.D. Cal. Apr. 25, 2006) (denying motion for leave to amend where "delay suggests that the omission of [certain patent infringement] contentions . . . were not 'errors,' but were instead a deliberate strategic course which plaintiffs now wish to change"); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, C.A. No. 04-1436, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012) ("A strategic mistake does not equate to a showing of good cause[.]").

Courts have rejected attempts to reassert claims that survived IPRs for that reason. In *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, Case No. 15-13488-FDS (D. Mass. Apr. 27, 2018), the plaintiff included claim 26 in its initial contentions, then "voluntarily dropped that claim." Ex. I at 1. After fact discovery

and expert reports, the PTAB found many of the claims of the patent invalid but upheld claim 26.  The plaintiff then attempted to reassert claim 26.  The court held *"[t]he fact that the PTAB upheld claim 26 as patentable over the prior art asserted in the IPR is not good cause to reinsert that claim into this lawsuit"* (emphasis added), reasoning that "Plaintiffs were well aware of the pending IPR," and "[t]he purpose of narrowing asserted claims is to allow parties and the Court to focus their efforts and resources on the strongest claims."  *Id.* at 2.  "*Plaintiffs agreed to that and made their choice, and defendants were entitled to rely on it.*"  *Id.* (emphasis added).  The same reasoning applies here.

Likewise, in *Univ. of VA Patent Found. v. Gen. Elec. Co.*, C.A. No. 3:14cv00051, 2019 WL 1993552, at *2 (W.D. Va. May 6, 2019), the court denied Plaintiff's request to assert new claims after the PTAB found all the asserted claims invalid.  The court stated that "[o]ther than noting that the 170 claims set forth in its Initial Claim Disclosure were invalid, [plaintiff] has not identified any new information that it uncovered during the IPR proceedings that supports its request to add new claims."  *Id.* at *6.  The court reasoned that allowing the plaintiff to amend "could extend litigation indefinitely by modifying its claims each time [Defendant] presents an effective defense."  *Id.* at *4.  The court noted that the plaintiff "could have sought to add the new claims during the

ensuing seven months before the court stayed the action" pending resolution of the IPRs. *Id.* at *6. The same is true here.[6]

This case is also similar to *British Telecomm.*, 2020 WL 3047989 at *1-3. There, the defendants withdrew an invalidity reference as part of a case narrowing process. The defendants later sought to reassert the reference. Judge Bryson, sitting by designation, denied leave to amend, stating that "[c]ourts have also uniformly held that a change in legal strategy does not constitute good cause to amend infringement or invalidity contentions," and rejected the notion that "a new strategic assessment" could constitute good cause to amend. *Id.*; *see also Spellbound Dev. Grp., Inc. v. Pacific Handy Cutter*, No. SACV 09-00951 DOC(ANx), 2011 WL 5554312, *4 (C.D. Cal. Nov. 14, 2011) (finding no diligence where "Plaintiff's theory of liability . . . has been available to Plaintiff for the entire duration of this suit").

There is nothing unfair in holding parties to their strategic choices. Allowing parties to change their claim elections after a defendant presents an effective defense would erase the benefits of the case narrowing process and IPRs—simplifying and focusing litigation. Ex. I (*SiOnyx*) at 2; *Univ. of VA*, 2019

---

[6]    The *Univ. of VA* court identifies and persuasively distinguishes two decisions that allowed amendments after IPRs. *See id.* at *5. One case (*Corel*) allowed an amendment early in the litigation—at the contentions stage. The other case (*EMED*) found important that the case would be dismissed absent an amendment. Neither situation is applicable here.

WL 1993552, at *2; *accord Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (benefit of stay pending IPRs is to "simplify the issues in question and trial of the case").

In short, BSC cannot excuse its lack of diligence in asserting claims 21 and 26 of the '280 patent by pointing to its deliberate choice to assert other claims.  BSC's litigation tactics should be rejected on this basis alone.  *See British Telecomm.*, 2020 WL 3047989, at *2 (no amendment permitted absent diligence).

### 2.  Nevro Would Be Prejudiced

Permitting BSC to add claims from the '280 patent now would be highly prejudicial to Nevro, which has spent millions of dollars through fact discovery, depositions, and expert reports, as well as multiple IPR proceedings and appeals, based on BSC's election of asserted claims for the '280 patent three years ago.

Permitting BSC to add claims from the '280 patent now would create at least the following additional work for the parties, the Court, and third parties:

- Amended infringement and invalidity contentions.  BSC has stated that the parties will need to supplement their respective contentions.

- Supplemental interrogatory responses.  BSC would need to provide supplemental interrogatory responses that address the alleged conception date of claims 21 and 26, why the prior art does not render the claims invalid, secondary indicia of non-obviousness, non-infringing alternatives, and BSC's basis for damages.  Nevro and

Nevro's experts would then need to take this information into account in conducting depositions and preparing contentions and reports, as described below.

- Supplemental depositions of the four '280 patent inventors. Nevro examined the inventors about the priority dates, inventive contributions, novelty, and value of the patent on a claim-by-claim basis. Nevro did not examine the inventors about claims 21 or 26, because BSC dropped those claims on August 1, 2017.

- Supplemental expert reports for the parties' infringement, invalidity, and damages experts. The experts evaluated infringement and invalidity on a claim-by-claim basis, as required. The damages experts relied on the technical experts' assessments of the claims, including evaluation of feasible alternatives described on a claim-by-claim basis, for their opinions.

- Supplemental third-party subpoenas to identify prior art to claims 21 and 26. Nevro previously served subpoenas on third parties, Medtronic and St. Jude, seeking prior art. After extensive meet and confers with these third parties, Nevro narrowed its requests after meeting and conferring with the third parties, to focus on BSC's asserted claims.

- Supplemental claim construction briefing, a claim construction hearing, and a claim construction ruling for the '280 patent. The parties submitted two rounds of claim construction briefs in October/November 2017 that addressed disputed terms in the asserted claims of the '280 patent. The parties would need to brief additional disputed terms for claims 21 and 26, particularly in light of assertions made by BSC during the IPRs. The Court would then need to resolve the parties' disputes for at least two previously-briefed terms for the '280 patent that are present in claims 21 and/or 26, as well as new disputed terms.

- Dispositive motions, *Daubert* briefing, and trial. The parties would need to prepare dispositive and other motions and proceed to trial on the '280 patent—in addition to 11 other patents in this case.

This additional work, expansion of the case, and further costs would give BSC an unfair advantage in this litigation, at the cost of severe prejudice to Nevro.

In similar circumstances, where claim construction briefing and/or expert reports were completed, courts denied amendments to contentions. In *RetailMeNot, Inc. v. Honey Sci. Corp.*, C.A. No. 18-937-CFC-MPT, 2019 WL 2537565, at *3 (D. Del. June 6, 2019), *recommendation adopted* 2019 WL 6615321, the Court found undue prejudice where the addition of claims from newly-issued patents, after opening claim construction briefs had been filed, would "necessarily result in proposals, disputes, and required court resolution of additional claim construction briefing, would lead to inevitable additional subsidiary disputes and/or motion practice rippling through the remainder of the discovery and dispositive motion process."

The stage of litigation here, as to the '241 and '280 patents, is even more advanced than *RetailMeNot* and many other cases that denied leave to amend. *See, e.g.*, *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, Civ. No. 15-13488-FDS (D. Mass. Apr. 27, 2018) (Ex. I) at 1-2 (denying attempt to assert new claims due to adverse IPR result after expert reports had been served but prior to depositions); *Univ. of VA Patent Found. v. Gen. Elec. Co.*, C.A. No. 3:14cv00051,

2019 WL 1993552, at *5 (W.D. Va. May 6, 2019) (denying addition of new claims due to adverse IPR result prior to a Markman hearing).

Moreover, permitting BSC to amend now would deny Nevro a full and fair opportunity to challenge the newly asserted claims in IPR proceedings. It is now impossible, due to the one-year IPR time bar, for Nevro to present evidence from this litigation (such as deposition testimony) related to claims 21 and 26 to the PTAB—as Nevro did in successfully challenging other claims. *See Adaptix, Inc. v. Dell Inc.*, Case No. 5:14-cv-01259-PSG, 2015 WL 13747892, at *4 (N.D. Cal. Feb. 24, 2015) (finding that "by delaying amendment, Adaptix has stripped Defendants of the opportunity to seek *inter partes* review from the PTAB as to prior art consistent with Adaptix's proposed claims accusing LTE Reporting Mode 3," and stating "absent unusual circumstances not presented here, a plaintiff should not be able to sit on its heels until a defendant's opportunity to file an IPR petition has run out and only then seek to amend its infringement contentions").

Thus, permitting BSC to amend now would severely prejudice Nevro.

### 3. The Reintroduction of the '280 Patent Will Only Exacerbate, Rather Than Help Resolve, the Parties' Overall Dispute

BSC deliberately dropped claims 21 and 26 of the '280 patent three years ago for good reason. Specifically, BSC cannot prove infringement of

claim 26, and claim 21 is invalid for the same reasons as the asserted claims are invalid.

To avoid the PTAB finding claim 26 invalid, BSC argued that the prior art does not disclose "*waiting a specified period of time* and re-programming the stimulation parameters" because the patients could immediately re-program stimulation parameters. *See Boston Scientific Neuromodulation Corp. v. Nevro Corp.*, Nos. 2019-1582, 2019-1635, 2020 WL 2787715, at *8-9 (Fed. Cir. May 29, 2020) (emphasis added). Nevro's trial stimulator, like in the prior art, allows patients to immediately re-program stimulation parameters. *See, e.g.*, Ex. K NEVRO_DE0015635 at NEVRO_DE0015657-58 (stimulation strength can be adjusted by pressing + and – buttons); Ex. L NEVRO_DE0019137 at NEVRO_DE0019141 (patient communicator can "change the stimulus amplitude"). Accordingly, based on BSC's and the Federal Circuit's construction of the "waiting" limitation, Nevro's accused system cannot infringe claim 26.

Moreover, the only alleged novel aspect of claim 21, as compared to invalidated claim 22, is "a means for using household AC power to charge up the re[c]hargeable battery in the battery charger." *Compare* '280 patent, 55:40-59 *with id.*, 55:62-56:13. But the PTAB has already determined that there is nothing novel or nonobvious about using household AC power to charge a rechargeable battery,

and BSC cannot seriously contend otherwise. *See Nevro Corp. v. Boston Scientific Neuromodulation Corp.*, IPR2017-01812, Paper 79 (Final Written Decision) at 43.[7]

Thus, BSC not only seeks to burden the parties and Court with unnecessary costs due to BSC's changed litigation strategy, but BSC has no realistic chance of prevailing on those claims.  BSC has six other patents in this case (among 50 patents and applications the parties are disputing worldwide) and should not be permitted to resurrect two meritless, abandoned claims merely because it has concluded that it made a strategic mistake three years ago.  BSC cannot show that asserting claims 21 and 26 is important enough to justify redoing years of "already completed" litigation.  *See* D.I. 290 at 3-4; *British Telecomm.*, 2020 WL 3047989, at *2, 5 (considering the "importance of the new information" including "the relative strength of [a prior art reference]" in assessing leave to amend); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, Civ. No. 15-13488-FDS (D. Mass. Apr. 27, 2018) (stating that "[t]he purpose of narrowing the asserted claims is to allow the parties and the Court to focus their efforts and resources on the strongest claims and those claims that will be sufficient to resolve the heart of the parties' dispute").

---

[7]     Because the PTAB did not institute review of claim 21, Nevro is not estopped from challenging the claim's validity.

## VI.   CONCLUSION

For these reasons, Nevro's motion to dismiss the '280 and '241 patents should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Todd M. Simpson
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
Sharon Lee
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7107

July 29, 2020

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with the Court's type-volume limitations, as it was prepared with Microsoft Word, using Times New Roman, 14 point font, and contains 4,783 words as counted by Microsoft Word, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Rodger D. Smith II

Rodger D. Smith II (#3778)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 29, 2020, upon the following in the manner indicated:

Karen L. Pascale, Esquire                                   *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT &TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Edward Han, Esquire                                         *VIA ELECTRONIC MAIL*
Matthew M. Wolf, Esquire
Marc A. Cohn, Esquire
William Z. Louden, Esquire
Chris Moulder, Esquire
Amy DeWitt, Esquire
Tara L. Williamson, Esquire
William Young, Esquire
Bridgette C. Boyd, Esquire
Michael E. Kientzle, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC  20001-3743
*Attorneys for Plaintiffs*

Edmond Ahadome, Esquire                    *VIA ELECTRONIC MAIL*
David A. Caine, Esquire
Michael D.K. Nguyen, Esquire
Carson D. Anderson, Esquire
Thomas T. Carmack, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-2112
*Attorneys for Plaintiffs*

Oscar Ramallo, Esquire                     *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
Forty-Fourth Floor
Los Angeles, CA  90017-5844
*Attorneys for Plaintiffs*

Philip Smithback, Esquire                  *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
*Attorneys for Plaintiffs*

Dina M. Hayes, Esquire                     *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL  60602
*Attorneys for Plaintiffs*

Michael P. Kahn, Esquire                   *VIA ELECTRONIC MAIL*
Michael N. Petegorsky, Esquire
Brooks J. Kenyon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY  10036-6745
*Attorneys for Plaintiffs*

2

C. Brandon Rash, Esquire                              *VIA ELECTRONIC MAIL*
Rachel J. Elsby, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
*Attorneys for Plaintiffs*

Jason Weil, Esquire                                   *VIA ELECTRONIC MAIL*
Matthew A. Pearson, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

                                   */s/ Rodger D. Smith II*
                                   _____
                                   Rodger D. Smith II (#3778)