# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORP. AND
BOSTON SCIENTIFIC
NEUROMODULATION CORP.,

       Plaintiffs and Counter-
       Defendants,

       v.

NEVRO CORP.,

       Defendant and
       Counterclaimant.

C.A. No. 16-1163-CFC-CJB
(CONSOLIDATED)

**PLAINTIFFS' COMBINED OPENING BRIEF IN SUPPORT OF THEIR
CROSS-MOTION TO RE-ASSERT PREVIOUSLY-ASSERTED CLAIMS
21 AND 26 OF THE '280 PATENT AND FOR LEAVE TO AMEND
INFRINGEMENT CONTENTIONS TO ADD NEW PRODUCTS AND
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS**

*Of Counsel:*

Matthew M. Wolf
Edward Han
Marc Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
Matthew.Wolf@arnoldporter.com
Edward.Han@arnoldporter.com
Marc.Cohn@arnoldporter.com
Amy.DeWitt@arnoldporter.com

Dina M. Hayes
Bridgette C. Boyd
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
(312) 583-2300
Dina.Hayes@arnoldporter.com
Bridgette.Boyd@arnoldporter.com

Thomas T. Carmack
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
Tom.Carmack@arnoldporter.com

*(Continued . . . .)*

Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs Boston Scientific Corporation and Boston Scientific Neuromodulation Corp.*

August 12, 2020

Michael P. Kahn
Michael N. Petegorsky
Brooks J. Kenyon
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
mpetegorsky@akingump.com
bkenyon@akingump.com

C. Brandon Rash
Rachel J. Elsby
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
(202) 887-4000
brandon.rash@akingump.com
relsby@akingump.com

Jason Weil
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
(215) 965-1200
jweil@akingump.com

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ......................................................1

II.   SUMMARY OF THE ARGUMENT ..............................................2

III.  STATEMENT OF FACTS; NATURE AND STAGE OF PROCEEDINGS.3

    A.    The Parties Exchange Contentions, And Nevro Files IPR
        Petitions, On Claims 21 And 26.........................................3

    B.    Nevro Successfully Moves To Stay The Litigation .............5

    C.    BSC Moves To Lift The Stay And To Re-Assert Claim 26 ................6

    D.    Nevro Launches Two New Accused Products....................6

IV.   ARGUMENT........................................................................7

    A.    The Court Should Permit BSC To Re-Assert '280 Patent
        Claims 21 And 26...........................................................7

        1.    Good Cause Exists To Re-Assert Claims 21 And 26 ................7

        2.    Judicial Estoppel Does Not Apply...........................17

    B.    The Court Should Permit BSC To Add Senza II And Omnia As
        Accused Products ..........................................................18

        1.    BSC Diligently Pursued Adding Senza II And Omnia.............19

        2.    Adding Senza II And Omnia Is Vitally Important....................19

        3.    Adding Senza II And Omnia Will Not Unfairly Prejudice
            Nevro.....................................................................19

V.    CONCLUSION........................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Abraxis BioScience, LLC v. Actavis, LLC*,
   No. 16-1925, 2017 WL 2079647 (D.N.J. May 15, 2017)............................ 11, 16

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
   No. CV 10-1045 (RMB/JS), 2012 WL 12904381 (D. Del. Feb. 27, 2012) ..........7

*Berger v. Rossignol Ski Co., Inc.*,
   No. C 05-02523, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) .........................10

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   No. 18-366-WCB, 2020 WL 3047989 (D. Del. June 8, 2020)........................7, 12

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   No. CV 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019) .................12

*Certusview Techs., LLC v. S&N Locating Servs., LLC*,
   No. 2:13CV346, 2014 WL 4930803 (E.D. Va. Oct. 1, 2014) .............................13

*Chao v. Roy's Const., Inc.*,
   517 F.3d 180 (3d Cir. 2008)..................................................................................17

*Corel Software, LLC v. Microsoft Corp.*,
   No. 2:15-CV-00528, 2018 WL 5792323 (D. Utah Nov. 5, 2018)................ 10, 15

*Cuffy v. Getty Ref. & Mktg. Co.*,
   648 F. Supp. 802 (D. Del. 1986)..........................................................................15

*Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002)..................................................................................18

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
   No. 2:15-CV-01167, 2018 WL 6440893 (E.D. Tex. Nov. 16, 2018). 9, 10, 14, 15

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
   586 F.3d 247 (3d Cir. 2009)..................................................................................17

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011)................................................................ 8, 12, 13

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016).............................................................................12

*SAS Institute, Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) ...........................................................................................5

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
  No. 15-13488-FDS (D. Mass. Apr. 27, 2018) ....................................................11

*Stragent, LLC v. Freescale Semiconductor, Inc.*,
  No. 6:10CV224 LED-JDL, 2011 WL 13227699 (E.D. Tex. July 14, 2011).......19

*Univ. of Va. Patent Found. v. GE Co.*,
  No. 3:14cv00051, 2019 WL 1993552 (W.D. Va. May 6, 2019).........................12

*VLSI Tech. LLC v. Intel Corp.*,
  No. 1:18-cv-00966-CFC, 2020 WL 4437401 (D. Del. Aug. 3. 2020) ....... 7, 8, 13

*Word to Info Inc. v. Google Inc.*,
  No. 15-CV-03486-WHO, 2016 WL 3648605 (N.D. Cal. July 8, 2016) .............16

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. 17-CV-03848-RS, 2019 WL 3413287 (N.D. Cal. July 29, 2019)......... 19, 20

*ZiLOG, Inc. v. Quicklogic Corp.*,
  No. C03-03275, 2006 WL 563057 (N.D. Cal. Mar. 6, 2006)....................... 10, 13

Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (collectively, "BSC") respectfully submit this opening-answering brief.  BSC seeks:  (i) leave to re-assert claims 21 and 26 of the '280 Patent, and (ii) leave to add Nevro Corp.'s ("Nevro") new Senza II and Omnia devices.[1]

## I.     PRELIMINARY STATEMENT

Over three years ago, Nevro filed three petitions for *inter partes* review attacking the claims of BSC's foundational '280 Patent.  Nevro then successfully moved for a stay of the related litigation.  After IPRs and appeals, Nevro failed to prove that claims 21 and 26 of the '280 Patent, among others, were unpatentable. Nevro now tries to erase that result, asking the Court to rule on procedural grounds what Nevro could not prove on substantive grounds.  But given the history of this case—and the precedent of this and other courts—Nevro is wrong.  The parties already exchanged infringement and invalidity contentions for claims 21 and 26 over three years ago, and BSC confirmed its intention to proceed with validated claims of the '280 Patent in February 2019.  A jury trial is more than 14 months away.  Thus, Nevro cannot credibly claim surprise or unfair prejudice.  Indeed, Nevro's argument about how little work remains in this case contradicts ***its own***

---

[1]  During a meet and confer on July 17, 2020, which BSC requested, BSC asked whether Nevro would consent to BSC reasserting claims 21 and 26 and amending its contentions to include the two new Nevro products.  Nevro delayed BSC by requesting more information and then, without prior notice, filed this motion.

representations in connection with its motion to stay in June 2018 (regarding the "substantial amount of work" remaining before trial) and the parties' joint status report in October 2018 (regarding the need for additional claim construction). Nevro also accuses BSC of telling the Court that nothing more would be required on BSC's patent claims once the stay was lifted, but Nevro is wrong:  in moving to consolidate, BSC acknowledged the need to "complet[e] limited supplemental discovery on the '280 Patent."

In turn, Nevro cannot credibly argue that BSC should not be allowed to amend its contentions to add the next two iterations of Nevro's accused product, Senza II and Omnia.  These products were released shortly before and during the stay and they incorporate many of the infringing features of Nevro's originally accused Senza product.  BSC's proposed amended contentions cover the same or similar features and were not ripe until the stay was lifted.  Accordingly, the Court should permit BSC's amendment.[2]

## II.    SUMMARY OF THE ARGUMENT

1.    <u>Good cause exists to re-assert claims 21 and 26 of the '280 Patent</u>. BSC identified claim 26 in February 2019 and identified both claims in its preliminary selection of claims, served just two weeks after the Court lifted the

---

[2]  BSC no longer asserts the '241 Patent and does not oppose Nevro's motion as to the claims of that patent.

stay.  BSC previously asserted both claims ***and provided infringement contentions on them*** in 2017 before the stay, and Nevro provided responsive invalidity contentions; there is no surprise or prejudice to Nevro.  With 14 months until trial, permitting BSC to re-assert these claims will not materially impact the schedule or prevent Nevro from preparing a full defense.  If leave is denied, BSC will suffer unfair prejudice after spending time and resources preserving the patentability of its claims, which Nevro infringes.  Nevro's judicial estoppel arguments also fail.

       2.    <u>Good cause exists to add Senza II and Omnia as accused products</u>.

These products were launched shortly before and during the stay, respectively. They infringe the 2016 patents in the same or a similar way as Nevro's currently-accused Senza.  Nevro would not be prejudiced; it knows how its own products work and has ample time to mount a defense before the October 2021 trial.

## III.    STATEMENT OF FACTS; NATURE AND STAGE OF PROCEEDINGS

### A.    The Parties Exchange Contentions, And Nevro Files IPR Petitions, On Claims 21 And 26

The '280 Patent claims "multichannel" spinal cord stimulation ("SCS") systems—i.e., SCS systems with separate sets of electrodes having independently programmable parameters.  Claim 21 covers rechargeable multichannel SCS systems in which the external charger is itself rechargeable, so patients need not be tethered to their charging stations.  Claim 26 recites a method of programming

multichannel SCS systems in which two sets of parameters are programmed during a trial phase, with a specified waiting period between programmings.

On June 12, 2017, BSC served its Initial Claim Charts, alleging infringement of claims 21 and 26 (as well as claims 1, 8, 18-19, 22-24, and 27) of the '280 Patent. (Ex. 1 at 1-73; Ex. 2 at 3-87.)[3] On July 17, 2017, Nevro provided its invalidity contentions as to the then-asserted claims, including claims 21 and 26. (*See* Ex. 3 at 3-4, 14, 16, 28.)

After meeting and conferring in early-July 2017 about narrowing claims and defenses, per the scheduling order (D.I. 27 at 7), the parties agreed that BSC would be limited to 40 claims by August 2017 (D.I. 306, Ex. C at 6-7) and to 20 claims following the *Markman* ruling (*see* D.I. 229 at 2).

On July 21, 2017, Nevro filed IPR petitions as to '280 Patent claims 1, 4, 7-9, 11, 18-19, 21 ("First Petition") and claims 22-24, 26-30 ("Second Petition"). Then, on August 1, 2017, as required by the Court, BSC limited its case to 40 claims, removing '280 Patent claims 1, 19, 21, and 26 (along with claims of other patents). (D.I. 306, Ex. C at 6.) On August 11, 2017, Nevro filed another IPR petition ("Third Petition") against the remaining asserted claims of the '280 Patent—*i.e.*, claims 8, 18, 22-24, and 27.

---

[3] The Exhibits herein are attached to the accompanying Declaration of Marc A. Cohn.

### B.      Nevro Successfully Moves To Stay The Litigation

On November 3, 2017, Nevro moved to stay the case in view of the IPR petitions.  (D.I. 110.)  BSC opposed, primarily on grounds that there had been no institution decisions yet.  (*See* D.I. 118 at 10-11, 15-18.)  On November 28, 2017, the Court conducted a *Markman* hearing and, the next day, it denied Nevro's motion to stay without prejudice.  (D.I. 127.)

On February 5, 2018, the PTAB declined IPR on every claim in the First Petition and every claim but claim 27 in the Second and Third Petitions, which it consolidated.  Thus, ***none of the then-asserted '280 Patent claims except claim 27 was subject to IPR***—paving the way for those claims to be tried in litigation.

On April 6, 2018, BSC served its opening expert reports on infringement and damages.  (*See* D.I. 186 at 2.)  Less than three weeks later, however, the Supreme Court issued its decision in *SAS Institute, Inc. v. Iancu*, holding that the PTAB must institute IPR on all or none of the challenged claims in a petition.  138 S. Ct. 1348, 1353-55 (2018).  Two days later, the PTAB amended its institution decisions regarding the Second and Third Petitions to institute IPR on ***all*** of the challenged claims, including claim 26.  Claim 21 was not instituted because the First Petition had been denied in its entirety.

The following table summarizes the history of the '280 Patent IPRs:

| | '280 Patent Claims (8, 18, 22-24 asserted) | Instituted (pre-*SAS*) | Instituted (post-*SAS*) |
|---|---|---|---|
| **First Petition** | 1, 4, 7-9, 11, 18-19, and 21 | None | None |
| **Second Petition** | 22-24 and 26-30 | 27 | 8, 18, 22-24, 26-30 |
| **Third Petition** | 8, 18, 22-24, and 27 | | |

On June 12, 2018, Nevro renewed its motion to stay (D.I. 238) and, on the following business day, it was granted over BSC's objection (*see* D.I. 244 at 1).

### C.   BSC Moves To Lift The Stay And To Re-Assert Claim 26

On February 1, 2019, the PTAB issued its Final Written Decision, finding claims 26 and 28-30 valid.  (D.I. 258, Ex. A at 152.)  BSC immediately moved to lift the stay in its entirety, including as to the '280 Patent claims on appeal. (D.I. 260.)  It argued also that the Court should permit BSC to re-assert '280 Patent claim 26, which Nevro failed to show was unpatentable.  (*Id.* at 15-16.)  The Federal Circuit affirmed the PTAB on May 29, 2020.  (D.I. 296, Ex. B.)  In June 2020, this Court granted BSC's motion to lift the stay.  (*See* June 22, 2020 Oral Order (granting D.I. 259); June 22, 2020 Hr'g Tr. at 23:7-10.)  The Court did not rule on BSC's motion to re-assert claim 26.

### D.   Nevro Launches Two New Accused Products

When this case started in 2016, Nevro had launched the Senza.  Nevro launched the Senza II, shortly before the stay.  (Ex. 7 at 1; Ex. 4 at 250:3-12.)  In November 2019, during the stay, Nevro launched the Omnia.  (Ex. 8 at 1.)

## IV.   ARGUMENT

### A.   The Court Should Permit BSC To Re-Assert '280 Patent Claims 21 And 26

#### 1.   Good Cause Exists To Re-Assert Claims 21 And 26

This Court permits re-assertion of previously asserted claims upon a showing of good cause.  (*See* No. 18-644, D.I. 51 at 7); *VLSI Tech. LLC v. Intel Corp.*, No. 1:18-cv-00966-CFC, 2020 WL 4437401, at *1-2 (D. Del. Aug. 3. 2020).  "The key factor courts look at to determine whether good cause exists … is the diligence of the moving party." *Bayer Cropscience AG v. Dow AgroSciences LLC*, No. CV 10-1045 (RMB/JS), 2012 WL 12904381, at *2 (D. Del. Feb. 27, 2012).  Other relevant factors include the importance of the re-asserted claims and whether re-assertion will unfairly prejudice the non-moving party.  *Id.* at *3; *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020).

This Court recently held that a plaintiff "may seek to add at a later date asserted claims … upon a showing of good cause that includes a demonstration that the addition of the proposed new claims … is necessary to vindicate [plaintiff's] due process rights." *VLSI*, 2020 WL 4437401, at *1-2.  The Court denied leave to add 35 claims—in addition to the 18 allowed by court order—because the plaintiff failed to identify any change in circumstances justifying the assertion of those claims or to show that due process required that it be allowed to

assert a total of 53 claims after claim construction.  *Id.* at *2.  Here, by contrast,

BSC seeks to add only two previously-asserted claims, both of which are well-

known to Nevro, in view of changed circumstances arising from the IPRs.

The Court in *VLSI* considered *In re Katz Interactive Call Processing Patent

Litig.*, 639 F.3d 1303 (Fed. Cir. 2011), which held that due process concerns are

present where "the unselected claims raised issues of infringement or invalidity

that were not duplicative of the issues raised by the selected claims."  *Id.* at 1311-

13.  Here, the previously selected claims were found unpatentable by the PTAB,

while the unselected claims were not, despite being challenged by Nevro.

Although courts have discretion to facilitate practical administration of complex

cases by requiring claim selections, *Katz* demonstrates that, in the present

circumstances, such administrative concerns should yield to the patentee's due

process rights.  *Id.*  In fact, administrative concerns here, if any, are minimal

because BSC is well under the Court's 40-claim limit and does not seek any

changes to the schedule.

Nevro's motion, if granted, would deprive BSC of due process.  It is

fundamentally unfair for a defendant to put all asserted claims into IPRs, force a

plaintiff to reduce the number of asserted claims before the outcome of the IPRs is

known, stay the case pending the IPRs over plaintiff's objection, and bind the

plaintiff to the claims it selected before the IPRs were decided.  A stay entered to clarify which claims are valid should not benefit only the defendant.

### a.  BSC Diligently Pursued Re-Asserting Claims 21 And 26

BSC diligently asserted claims 21 and 26 against Nevro when it first brought suit.  Its decision not to select these claims when it was later forced to limit its case reflects no lack of diligence.  BSC reasonably believed that its selected claims were valid because *the PTAB had declined IPR on all of them*.  Even after the Supreme Court's *SAS* decision and the PTAB's *sua sponte* institution of all the challenged claims, BSC still had no reason to expect that the PTAB would reverse itself and invalidate the asserted claims.  As soon as this unexpected change in circumstance occurred when the IPRs were decided—before the IPR appeals even began—BSC sought to re-assert claim 26, which was found patentable.  In a letter to Nevro on July 9, 2020—barely two weeks after the stay was lifted—BSC reiterated its intention to re-assert claims 21 and 26.  (D.I. 306, Ex. H at 2.)

Courts routinely find good cause to amend after an intervening IPR decision. For example, in *EMED Technologies Corp. v. Repro-Med Systems, Inc.*, No. 2:15-CV-01167, 2018 WL 6440893 (E.D. Tex. Nov. 16, 2018), the defendant filed an IPR against all claims of the asserted patent.  *Id.* at *1.  Thereafter, the plaintiff asserted only claim 1.  *Id.*  After the PTAB held claim 1 unpatentable and was affirmed, the defendant, like Nevro, moved to dismiss.  *Id.*  The court granted the

plaintiff's subsequent motion to assert claim 9 for the first time in the case, because "the need to assert claim 9 only became apparent after the denial of its rehearing petition." *Id.* at *2. Here, similarly, the need to re-assert claims 21 and 26 became apparent only after the PTAB's decision in February 2019.

In *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-00528, 2018 WL 5792323 (D. Utah Nov. 5, 2018), the court granted plaintiff's request for leave to add two new claims after the PTAB held all of the asserted claims unpatentable: "the rulings issued by the PTO panel are best categorized as a litigation development," providing good cause to amend. *Id.* at *2; *see ZiLOG, Inc. v. Quicklogic Corp.*, No. C03-03275, 2006 WL 563057, at *1-2 (N.D. Cal. Mar. 6, 2006) (permitting the addition of a previously unasserted claim where PTO held unpatentable the lone asserted claim and "[plaintiff] promptly sought leave to amend"); *Berger v. Rossignol Ski Co., Inc.*, No. C 05-02523, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006) (citing *ZiLOG* favorably; plaintiff "sought to amend based not on its own error but on the result of the PTO reexamination").

Nevro's argument that BSC's "three-year delay … is the opposite of diligence" (D.I. 305 at 11) ignores the two-year stay, during which BSC could not have sought to add claims (although it nonetheless tried). *See EMED*, 2018 WL 6440893, at *2 (finding good cause where "Defendant contends that Plaintiff litigated this lawsuit for three years, but this case was stayed for a majority of that

time").  Because Nevro sought the stay over BSC's objection, any delay in seeking to re-assert claims 21 and 26 is of Nevro's own making.  (D.I. 238.)

Nevro's argument that BSC "intentionally dropped" claims 21 and 26 as part of a "deliberate strategic choice" (D.I. 305 at 12) is misleading.  BSC's "choice" was due to Court-mandated narrowing; BSC did not make the type of "unforced error" discussed in Nevro's authorities.  The cases cited above by BSC demonstrate that it was not required to foresee *SAS*'s fundamental shift in the law or an unfavorable IPR decision after the PTAB had already found no reasonable likelihood of unpatentability.  Diligence is not "a draconian requirement of perfection and clairvoyance." *Abraxis BioScience, LLC v. Actavis, LLC*, No. 16-1925, 2017 WL 2079647, at *3 (D.N.J. May 15, 2017).

Nevro's cases regarding IPRs are clearly distinguishable.  In *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, No. 15-13488-FDS (D. Mass. Apr. 27, 2018), ECF No. 459, there was no stay pending IPR, as there was here, and the court denied leave to amend due to the short time remaining before trial.  In fact, the court suggested that a stay would have allowed enough time for amended contentions: "***Plaintiffs were well aware of the pending IPR; to the extent they thought it would compromise their ability to litigate this case according to the schedule set by the Court, they were free to request a … stay***." (D.I. 306, Ex. I at 2 (emphasis added).)  Here, because Nevro sought and obtained a stay, the schedule readily

accommodates BSC's proposed amendments.  (*See infra* Section IV.A.1.c.)

Indeed, the purpose of the stay is to manage the court's docket and to avoid

wasting resources; it is not a vehicle for depriving plaintiffs of their due process

rights.  *See Katz*, 639 F.3d at 1311-13; *Murata Mach. USA v. Daifuku Co.*, 830

F.3d 1357, 1361 (Fed. Cir. 2016); *British Telecomms. PLC v. IAC/InterActiveCorp*,

No. CV 18-366-WCB, 2019 WL 4740156, at *7 (D. Del. Sept. 27, 2019).

In *University of Virginia Patent Foundation v. GE Co.*, No. 3:14cv00051,

2019 WL 1993552 (W.D. Va. May 6, 2019), the court held that an intervening IPR

decision did not always provide good cause "to add claims ***not previously***

***asserted***."  *Id.* at *2, *5 (emphasis added); *see id.* at *6.  BSC, however, previously

asserted claims 21 and 26 prior to the IPR decisions.

In *British Telecomms.*, 2020 WL 3047989, the defendant sought to re-assert

an invalidity reference based on the advice of new counsel.  This reflected a

"change in legal strategy"—not changed circumstances.  *Id.* at *2.  BSC has not

changed its legal strategy; it has merely responded to the intervening IPR decision.

*British Telecomms.* also applied a strict standard "even more exacting" than the

"good cause" standard due to the unusual facts of that case.  *Id.*  No such facts are

present here.

### b. Re-Asserting Claims 21 And 26 Of The '280 Patent Is Vitally Important To BSC

BSC's amendment is vitally important to protect its due process rights. *See, e.g.*, *VLSI*, 2020 WL 4437401, at \*2. Nevro challenged claims 21 and 26 in IPR proceedings, presumably with its best prior art, yet failed to invalidate either. What remains are ***two valid and infringed claims*** from one of BSC's foundational patents. BSC omitted those claims from its selection for the 2018 trial only when compelled to limit its case. To now preclude BSC from amending its selection for the October 2021 trial would nullify its property rights 14 months before trial, thereby depriving it of due process. *See, e.g.*, *Certusview Techs., LLC v. S&N Locating Servs., LLC*, No. 2:13CV346, 2014 WL 4930803, at \*5 (E.D. Va. Oct. 1, 2014) ("the Court remains mindful of the need to adequately protect [patentee's] due process rights because requiring [patentee] to limit the number of claims it might assert could prevent [patentee] from asserting viable, non-duplicative claims") (citing *Katz*, 639 F.3d at 1311-13); *see ZiLOG*, 2006 WL 563057, at \*2 (permitting plaintiff to add claim that survived *ex parte* reexamination; defendant's arguments were "insufficient to justify depriving Plaintiff of its constitutionally protected right to an adjudication on the merits").

Despite Nevro's arguments otherwise, the PTAB determined that claims 21 and 26 are not "duplicative" of the previously selected claims, as discussed in *Katz*, 639 F.3d at 1311-12. While the selected claims were found unpatentable, Nevro

was unable to carry its burden for claim 26, and the PTAB declined to even institute claim 21, finding that Nevro did not show a reasonable likelihood of proving unpatentability.

The foundational nature of the technology claimed in the '280 Patent and the damages sought for Nevro's infringement further highlight the importance of claims 21 and 26.  (*See* Ex. 5 at 48.)[4]  If the Court denies BSC's request to re-assert the '280 Patent, then BSC will be unable to recover damages for past infringement of the '280 Patent.  *See EMED*, 2018 WL 6440893, at *2 ("[W]ithout the amendment, Plaintiff's case would be dismissed, and Plaintiff would lose any potential damages from alleged past infringement").[5]

### c.   Re-Asserting Claims 21 And 26 Will Not Unfairly Prejudice Nevro

Nevro will suffer no unfair prejudice, because it has ample opportunity to defend against BSC's claims.  BSC asserts only 29 claims—well under the 40-

---

[4]  Nevro has wrongly contended that BSC's damages expert concluded that BSC cannot recover damages for the '193 and '933 Patents "absent infringement of the '280 patent."  (D.I. 298 at 2.)  BSC is entitled to, and would seek, "no … less than a reasonable royalty" for Nevro's infringement of the '193 and '933 Patents.  *See* 35 U.S.C. § 284.

[5]  The Court should disregard Nevro's bald assertion that claims 21 and 26 are unimportant because "BSC has no realistic chance of prevailing on those claims." (D.I. 305 at 20.)  Nevro's one-page argument on the merits, which essentially seeks summary judgment of noninfringement and invalidity, should be decided by a jury.

claim limit—and all but the '280 Patent claims have been subject to fulsome fact and expert discovery.  BSC, therefore, seeks to narrow, not expand, the case.

Claims 21 and 26 can present no surprises to Nevro; BSC included these claims in two rounds of infringement contentions in 2017, and BSC advised Nevro in February 2019 that the '280 Patent should be included in the case once the stay was lifted.  (*See supra* Sections III.A, III.C.)  Nevro has taken some fact discovery regarding claims 21 and 26, and it completed fact discovery regarding other, similar claims of the '280 Patent.  *See EMED*, 2018 WL 6440893, at *2 ("[T]he work done before the stay, whether in discovery or in claim construction preparation, will not be in vain" because of similarities with substituted claim limitations).  Nevro has also already provided invalidity contentions regarding claims 21 and 26.  Therefore, Nevro's defense needs only supplementation, which can easily be accomplished within the 14 months left before trial in October 2021. *See Corel*, 2018 WL 5792323, at *3 (no unfair prejudice where defendant's "ability to defend against the proposed new claims will not be hampered" because it can conduct discovery and amend invalidity contentions).

Nevro argues that adding claims 21 and 26 "would create … additional work for the parties" (D.I. 305 at 15) but this does not constitute "unfair prejudice." *Cuffy v. Getty Ref. & Mktg. Co.*, 648 F. Supp. 802, 806 (D. Del. 1986) ("Prejudice does not mean inconvenience to a party."); *Corel*, 2018 WL 5792323, at *3

("[T]he inconvenience and expense required by additional discovery and briefing of the new issues does not generally rise to the level of *undue* prejudice.") (emphasis in original); *Abraxis*, 2017 WL 2079647, at *4 ("[T]he fact that some additional work may be required does not constitute undue prejudice.").

Nevro's argument also contradicts its previous representation to the Court that, before the stay in this case, a "substantial amount of work" remained:

> Although trial in this case is currently scheduled for October 22, 2018, a number of important issues remain undecided and a substantial amount of work remains for both the parties and the Court including claim construction, … fact discovery and supplemental expert reports related to the '280 patent, expert depositions, summary judgment, pre-trial briefing and trial.

(D.I. 239 at 1; *see also* D.I. 255 at 5-6.)  Having already argued to its benefit that this work had to be done, Nevro cannot now argue that it is unfairly prejudicial.

Finally, Nevro argues that permitting the proposed amendment "would deny [it] a full and fair opportunity to challenge the newly asserted claims in IPR proceedings."  (D.I. 305 at 18.)  This argument makes no sense procedurally or legally:  ***Nevro already challenged claims 21 and 26 in IPR proceedings <u>and lost</u>***. (*See* D.I. 184, Ex. A at 14; D.I. 258, Ex. A at 152); *see Word to Info Inc. v. Google Inc.*, No. 15-CV-03486-WHO, 2016 WL 3648605, at *5 (N.D. Cal. July 8, 2016) (granting amendment where "it is not clear why [defendant] could not have made an informed decision about petitioning for IPR based on [plaintiff's] original infringement contentions").

## 2.      Judicial Estoppel Does Not Apply

Nevro argues incorrectly that the equitable doctrine of judicial estoppel prevents BSC from re-asserting claims 21 and 26.  (D.I. 305 at 8-10.)  The Third Circuit applies a three-part test:  (i) the party must have adopted irreconcilably inconsistent positions, (ii) bad faith must be the basis for the change in position, and (iii) there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient.  *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quoting *Chao v. Roy's Const., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008)).  Here, the threshold requirement of irreconcilably inconsistent positions is absent, and Nevro does not even attempt to establish the remaining elements of judicial estoppel.

Instead, Nevro uses this argument as a vehicle to wage unfounded character attacks.  Contrary to Nevro's arguments, nothing about BSC's recitation of the procedural history of this case (made in support of consolidation) contradicts BSC's request to re-assert claims 21 and 26 of the '280 Patent.  BSC first sought re-assertion in February 2019—well before any of the consolidation briefing and prior to the completion of the IPR appeals.  (D.I. 260 at 15-16.)  BSC also explained in its consolidation briefing that supplemental claim construction and fact and expert discovery may be needed.  (D.I. 280 at 3, 8 n.4; D.I. 290 at 2-6, 9; D.I. 297 at 2-4 ("[S]upplementation of fact discovery and claim construction

briefing could be completed well in time for the January 2021 *Markman*

hearing. … Supplemental expert discovery regarding the 2016 patents, if needed,

could be conducted in conjunction with the current schedule for expert reports in

the 2018 Action following *Markman*.").)  Moreover, the whole point of the stay

that Nevro requested was to let the IPRs run their course and then to evaluate

whether further proceedings should occur.

Because BSC has made no inconsistent statements to the Court, judicial

estoppel cannot apply as a matter of law.  *See Dam Things from Denmark, a/k/a*

*Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 (3d Cir. 2002).[6]

## B.  The Court Should Permit BSC To Add Senza II And Omnia As Accused Products

The Court should also grant BSC leave to add Senza II and Omnia as

accused products.  Both embody the same infringing features as the earlier-accused

Senza, and Nevro relies on both as products practicing the claims of the Nevro

counterclaim patents.  (*See* Ex. 6 at 6-7.)

---

[6]  Nevro acknowledges that BSC had long ago asked for leave to re-assert claim 26, but argues that this should be ignored because BSC "did not make this request in seeking consolidation."  (D.I. 305 at 7 n.4.)  BSC's 2019 motion to lift the stay and add claim 26 was still pending and had certainly never been withdrawn at the time it filed its 2020 motion to consolidate.

### 1.    BSC Diligently Pursued Adding Senza II And Omnia

Nevro launched Senza II shortly before the stay and launched Omnia during

the stay.  As soon as the stay was lifted, BSC asked Nevro whether it would

consent to adding these products to the case.  (Ex. 9 at 1); *see, e.g.*, *XpertUniverse,*

*Inc. v. Cisco Sys., Inc.*, No. 17-CV-03848-RS, 2019 WL 3413287, at *3 (N.D. Cal.

July 29, 2019) (granting-in-part leave to amend infringement contentions to add

new products first released during the stay or shortly before that period).

### 2.    Adding Senza II And Omnia Is Vitally Important

Senza II and Omnia have accounted for most of Nevro's infringing sales in

the last two years.  Adding these products to the case is therefore important; BSC's

property rights would be substantially impaired if it were not permitted to recover

past damages for that infringement.  *See Stragent, LLC v. Freescale*

*Semiconductor, Inc.*, No. 6:10CV224 LED-JDL, 2011 WL 13227699, at *2 (E.D.

Tex. July 14, 2011) (granting leave to amend where plaintiff otherwise "will be

unable to accuse [new products] in this litigation").

### 3.    Adding Senza II And Omnia Will Not Unfairly
###        Prejudice Nevro

Nevro will not be unfairly prejudiced by the amendment.  As stated above,

Nevro already confirmed that it intends to rely on all three products to support its

counterclaims.  The originally-accused Senza, as well as Senza II and Omnia,

which are the subject of BSC's requested amendment, will therefore already be the subject of fact discovery, expert discovery and trial.

Moreover, Nevro knows how its own products work and has testified that the primary difference between Senza and Senza II is size.  (Ex. 4 at 249:9-250:12.)  Omnia is essentially the same device as Senza II, with certain programming features added and an updated charger and remote control, which raise few, if any, new issues relevant to the asserted patents.  Therefore, the parties' positions, which have already been identified in contentions, will be the same or similar across all three products.  *See XpertUniverse*, 2019 WL 3413287, at *5 (new products "alleged to infringe … for essentially the same reasons as the [accused] products").  Accordingly, Nevro has ample time and all of the requisite knowledge to defend against claims directed to these products.

## V.   CONCLUSION

For the foregoing reasons, the Court should:

(i)       permit BSC to re-assert '280 Patent claims 21 and 26;

(ii)      permit BSC to add Senza II and Omnia; and

(iii)     deny Nevro's motion to dismiss.

DATED:  August 12, 2020

Matthew M. Wolf
Edward Han
Marc Cohn
Amy DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
Matthew.Wolf@arnoldporter.com
Edward.Han@arnoldporter.com
Marc.Cohn@arnoldporter.com
Amy.DeWitt@arnoldporter.com

Dina M. Hayes
Bridgette C. Boyd
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
(312) 583-2300
Dina.Hayes@arnoldporter.com
Bridgette.Boyd@arnoldporter.com

Thomas T. Carmack
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4500
Tom.Carmack@arnoldporter.com

*(Continued . . . .)*

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs*

Michael P. Kahn
Michael N. Petegorsky
Brooks J. Kenyon
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
mpetegorsky@akingump.com
bkenyon@akingump.com

C. Brandon Rash
Rachel J. Elsby
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
(202) 887-4000
brandon.rash@akingump.com
relsby@akingump.com

Jason Weil
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
(215) 965-1200
jweil@akingump.com

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 12, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record by electronic mail:

---

***Attorneys for Defendant Nevro Corp.:***

| | |
|---|---|
| Rodger D. Smith II | *rsmith@mnat.com* |
| Michael J. Flynn | *mflynn@mnat.com* |
| Lucinda C. Cucuzzella | *ccucuzzella@mnat.com* |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

SIDLEY AUSTIN LLP          [SidleyNevroIITeam@sidley.com](mailto:SidleyNevroIITeam@sidley.com)

| | |
|---|---|
| Bradford J. Badke | *jbadke@sidley.com* |
| Ching-Lee Fukuda | *clfukuda@sidley.com* |
| Ketan V. Patel | *ketan.patel@sidley.com* |
| Sharon Lee | *sharon.lee@sidley.com* |

787 Seventh Avenue
New York, NY 10019

Thomas A. Broughan III          *tbroughan@sidley.com*
1501 K Street, N.W.
Washington, DC  20005

Nathan A. Greenblatt          *ngreenblatt@sidley.com*
1001 Page Mill Road Building 1
Palo Alto, CA  94304

*(Continued . . . .)*

---

MORRISON & FOERSTER LLP

Michael A. Jacobs                    *MJacobs@mofo.com*
425 Market Street
San Francisco, California 94105-2482

Kenneth A. Kuwayti                   *KKuwayti@mofo.com*
755 Page Mill Road
Palo Alto, CA 94304-1018

Bita Rahebi                          *BRahebi@mofo.com*
707 Wilshire Boulevard
Los Angeles, CA 90017-3543

August 12, 2020                      YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                     */s/ Karen L. Pascale*
                                     Karen L. Pascale (No. 2903)
                                     *[kpascale@ycst.com]*
                                     Pilar G. Kraman (#5199)
                                     *[pkraman@ycst.com]*
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone:  (302) 571-6600

                                     *Attorneys for Plaintiffs,*
                                     *Boston Scientific Corporation*
                                     *and Boston Scientific Neuromodulation Corp.*