IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | ) ) ) ) | |
| Plaintiffs and Counter-Defendants, | ) ) ) | C.A. No. 16-1163 (CFC) CONSOLIDATED |
| v. | ) ) ) | |
| NEVRO CORP., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**NEVRO CORP.'S COMBINED REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' '280 AND '241 PATENTS, AND ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO AMEND**

OF COUNSEL:

SIDLEY AUSTIN LLP
Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
Ketan V. Patel
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Thomas A. Broughan, III
1501 K. Street, N.W.
Washington, DC 20005
(202) 736-8510

*Attorneys for Defendant and Counterclaimant Nevro Corp.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

SIDLEY AUSTIN LLP
Nathan A. Greenblatt
1001 Page Mill Road
Palo Alto, CA 94304
(650) 565-7000

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF ARGUMENT .....................................................................2

III.  ARGUMENT.................................................................................................3

    A.    BSC's Infringement Claims for the '280 and '241 Patents Should Be Dismissed, Because All Asserted Claims Are Invalid........................3

    B.    BSC Is Judicially Estopped from Asserting Claims It Dropped Three Years Ago .............................................................................................4

    C.    BSC Cannot Establish Good Cause to Reassert Claims It Deliberately Dropped Three Years Ago .............................................................6

        1.    BSC Has No Due Process Right to Reassert Dropped Claims...6

        2.    BSC Has Not Been Diligent ........................................................9

        3.    Nevro Would Be Prejudiced ....................................................14

        4.    The Reintroduction of the '280 Patent Will Only Exacerbate, Rather Than Help Resolve, the Parties' Overall Dispute .........18

    D.    Nevro Does Not Oppose Adding Its Senza II and Omnia Products to This Case, With Limitations.................................................................19

IV.   CONCLUSION............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraxis BioScience, LLC v. Actavis, LLC*,
   No. CV 16-1925 (JMV), 2017 WL 2079647 (D.N.J. May 15, 2017) ...............17

*Acer, Inc. v. Technology Property Ltd.*,
   Nos. 5:08-cv-0087, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010)..................11

*Adaptix, Inc. v. Dell Inc.*,
   Case No. 5:14-cv-01259-PSG, 2015 WL 13747892 (N.D. Cal. Feb.
   24, 2015) .............................................................................................................15

*Advanced Micro Devices, Inc. v. LG Elec., Inc.*,
   No. 14-cv-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017) ................19

*British Telecomm. PLC v. IAC/InterActiveCorp.*,
   C.A. No. 18-366, 2020 WL 3047989 (D. Del. June 8, 2020) .............3, 7, 14, 19

*Capella Photonics v. Cisco Sys.*,
   Case No. 14-cv-03348-EMC, 2019 WL 2359096 (N.D. Cal. June
   4, 2019) ..............................................................................................................12

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*,
   No. 16-cv-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020)..................18

*Conopco, Inc. v. Roll Int'l*,
   231 F.3d 82 (2d Cir. 2000) ..................................................................................7

*Corel Software, LLC v. Microsoft Corp.*,
   Case No. 2:15-CV-00528-JNP-PMW, 2018 WL 5792323 (D. Utah
   Nov. 15, 2018) .............................................................................................12, 17

*Cuffy v. Getty Ref. & Mktg. Co.*,
   648 F. Supp. 802 (D. Del. 1986).........................................................................17

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
   252 F.3d 267 (3d Cir. 2001) ........................................................................16, 17

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
   Case No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893 (E.D. Tex.
   Nov. 16, 2018) ................................................................................................11

*Endo Pharm. Inc. v. Mylan Pharm. Inc.*,
   C.A. No. 11-717 (RMB/KW), 2014 WL 334178 (D. Del. Jan. 28,
   2014) ....................................................................................................2, 6

*Etagz, Inc. v. Quiksilver, Inc.*,
   No. SACV 10-0300 DOC, 2012 WL 2581256 (C.D. Cal. July 3,
   2012) ................................................................................................11, 15

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*,
   553 F. App'x 246 (3d Cir. 2014) ..................................................................4, 5

*Jones v. Flowers*,
   547 U.S. 220 (2006)..........................................................................................7

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ......................................................................8

*In re Katz Interactive Call Processing Patent Litig.*,
   No. 07-CV-2134-RGK, 2009 WL 8635982 (C.D. Cal. Aug. 13,
   2009) ...................................................................................................................9

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)..................................................................................2, 7, 8

*Meekins v. DOC's Graterford*,
   745 F. App'x 443 (3d Cir. 2018) ....................................................................7

*NetAirus Techs., LLC v. Apple, Inc.*,
   No. LA CV10-03257 JAK EX, 2012 WL 12124908 (C.D. Cal.
   Dec. 5, 2012)....................................................................................................11

*Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*,
   813 F.3d 1368 (Fed. Cir. 2016) ...................................................................8, 9

*O2 Micro Int'l. Ltd. v. Monolithic Power Systems, Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) .................................................................3, 19

*Queen v. TA Operating, LLC*,
   734 F.3d 1081 (10th Cir. 2013) ......................................................................6

*In re Real Estate Title & Settlement Servs. Antitrust Litig.*,
  869 F.2d 760 (3d Cir. 1989) ..............................................................................7, 8

*RetailMeNot, Inc. v. Honey Sci. Corp.*,
  C.A. No. 18-937-CFC-MPT, 2019 WL 2537565 (D. Del. June 20,
  2019) ..................................................................................................................16

*Richtek Tech. Corp. v. uPi Semiconductor*,
  No. C 09-05659 WHA, 2016 WL 1718135 (N.D. Cal. Apr. 29,
  2016) ..................................................................................................................19

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
  Case No. 15-13488-FDS (D. Mass. Apr. 27, 2018) ...............................11, 12, 13

*Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*,
  No. SACV 09-009512011, WL 5554312 (C.D. Cal. Nov. 14, 2011) ...............11

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
  278 F.R.D. 505 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed.
  Cir. 2012) ...........................................................................................................13

*Univ. of VA Patent Found. v. Gen. Elec. Co.*,
  C.A. No. 3:14cv00051, 2019 WL 1993552 (W.D. Va. May 6,
  2019) ...................................................................................................11, 12, 13

*Wi-LAN USA, Inc. v. Apple Inc.*,
  830 F.3d 1374 (Fed. Cir. 2016) .........................................................................9

*ZiLOG, Inc. v. Quicklogic Corp.*,
  No. C03-03725 JW, 2006 WL 563057 (N.D. Cal. Mar. 6, 2006)................11, 12

**Statute**

35 U.S.C. § 315(b) ................................................................................................15

iv

## I.   INTRODUCTION

BSC does not deny that at the time of the June 22, 2020 hearing, BSC planned to reopen fact and expert discovery for the '280 patent—yet it told the Court just the opposite in seeking consolidation.  BSC's only response is to point to what are at best a smattering of ambiguous statements buried in outdated briefs, which do nothing to correct its clear representations to the Court that the "the parties have already completed fact discovery and expert reports" for the '280 patent.  BSC should be held to its word in these circumstances.

BSC also cannot establish good cause to reassert claims of the '280 patent that it intentionally dropped from the case three years ago.  While BSC decries that result as "fundamentally unfair," there is nothing the least bit unfair in holding a party to its voluntary, strategic choices.  BSC itself suggested the claim narrowing process in this case, and could have suggested awaiting the results of the IPR before electing its asserted claims.  But BSC rejected that idea.  It must live with the consequences.

Permitting BSC to amend now would also severely prejudice Nevro. Not only would Nevro need to redo a substantial amount of work that had been done over a year of litigation, but the only reason claims 21 and 26 survived the IPRs is because Nevro relied on BSC's narrowed asserted claims and *did not challenge those*

*claims* in its successful Third IPR Petition. BSC does not dispute, and in fact confirms, these facts.

Finally, as Nevro explained in its opening brief, the addition of claims 21 and 26 would not help resolve the parties' overall dispute because the claims are clearly invalid and/or not infringed. In response, BSC did not even articulate at the most basic level how it could possibly prevail. There is no point in wasting the parties' and the Court's time in litigating claims that BSC chose to withdraw from this case.

## II.    SUMMARY OF ARGUMENT

1.    <u>Judicial Estoppel.</u> BSC should be held to its clear representations in support of its motion to consolidate. BSC cannot erase its representations by relying on what are at best intentionally ambiguous statements and silence. *See Endo Pharm. Inc. v. Mylan Pharm. Inc.*, C.A. No. 11-717 (RMB/KW), 2014 WL 334178, at *9 (D. Del. Jan. 28, 2014).

2.    <u>Due Process.</u> BSC suggested the claim narrowing process in this case. BSC chose not to wait until after the IPR results to elect its asserted claims. There is no unfairness in holding BSC to its strategic choices, much less a due process violation. *See Mathews v. Eldridge*, 424 U.S. 319, 349 (1976).

3.    <u>No Good Cause to Reassert Dropped Claims.</u> BSC was not diligent. BSC intentionally dropped claims 21 and 26 of the '280 patent and chose

to litigate other claims for 12 months in this Court. Nevro would be severely prejudiced by the addition of those claims now because Nevro did not challenge those claims in its successful Third IPR Petition directed to all asserted claims, based on BSC's identification of asserted claims. Moreover, BSC does not dispute that their reintroduction would require substantial, expensive additional work. *See British Telecomm. PLC v. IAC/InterActiveCorp.*, C.A. No. 18-366, 2020 WL 3047989, at *2 (D. Del. June 8, 2020).

4.     Addition of New Products. A party may amend its infringement contentions to add new products only upon a showing of good cause. *See O2 Micro Int'l. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). In an effort to resolve this dispute, Nevro does not oppose BSC's requested amendment to add new products to its infringement contentions.

## III.   ARGUMENT

### A.   BSC's Infringement Claims for the '280 and '241 Patents Should Be Dismissed, Because All Asserted Claims Are Invalid

BSC does not dispute that all asserted claims of the '280 and '241 patents have been invalidated and that BSC's infringement claim for the '241 patent should be dismissed. *See* D.I. 321 at 2 n.2. BSC also does not dispute that, unless the Court permits BSC to amend its infringement contentions, BSC's infringement claim for the '280 patent should be dismissed too. *See id.* at 2-3.

**B.  BSC Is Judicially Estopped from Asserting Claims It Dropped Three Years Ago**

BSC argues that it is not judicially estopped from asserting claims 21 and 26 of the '280 patent because "BSC has made no inconsistent statements to the Court." D.I. 321 at 17.  BSC is incorrect.

In support of its motion for consolidation, BSC repeatedly represented to the Court that "the parties have already completed fact discovery and expert reports on the [Nevro I] IPR-Free and ['280 and '241 patents]—they can take discovery on the trade secret claim in the meantime."  D.I. 290 at 3-4; *see also* D.I. 260 at 7-8, 18-19; D.I. 280 at 4.  BSC also does not deny that at the time of the June 22, 2020 hearing, it knowingly planned to reopen fact and expert discovery for the '280 patent—yet stayed silent until after the Court granted its consolidation motion.  *See* D.I. 305 at 7.  *Compare* D.I. 321 at 17-18.  The Court relied on BSC's representations in granting BSC's motion, *see* June 22, 2020 Hrg. Tr. at 23:12-17, and BSC should be held to them.  *See Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 251 (3d Cir. 2014).

BSC seeks to absolve itself of responsibility by pointing to a smattering of what are at best intentionally ambiguous statements in its voluminous case management briefing.  But none of those statements clearly indicate that, in seeking consolidation, BSC planned to reassert previously dropped claims or reopen "already completed" discovery.  For example, BSC's request to reassert claim 26 in

4

February 2019 was, in BSC's own words, made "*well before* any of the consolidation briefing and prior to the completion of the IPR appeals."  D.I. 321 at 17 (emphasis added).  BSC never raised the request in seeking consolidation.  Instead, BSC proposed that "patent claims it asserted in the 2016 Action that have never been subject to Patent Office review and its trade secret claim should proceed" to trial in the consolidated case.  D.I. 280 at 3.  BSC, at most, vaguely suggested in a footnote that it "may seek leave" to include the '280 patent at trial.  D.I. 280 at 8 n.4.  But that vague suggestion does not indicate that BSC would seek to assert claims it previously dropped that had not been subject to discovery.

Perhaps most telling are BSC's actions after the Federal Circuit issued its May 18 and May 29, 2020 decisions affirming the invalidity of the asserted claims of the '241 and '280 patents.  BSC submitted a three-page supplemental filing describing the impact of the appeal decisions on its motion to consolidate.  D.I. 297.  In its filing, BSC said nothing about asserting the '280 patent and nothing about asserting previously dropped claims.  *Id.*  And when the Court asked at the consolidation hearing if there were any further live issues, after stating that there were only "six remaining" BSC patents in the case, BSC said "no."  *See* June 22, 2020 Hrg. Tr. at 24:11-13, 34:2-5.

BSC cannot erase its representations to the Court by relying on what are at best intentionally ambiguous statements and silence.  *See Haines*, 553 F.

App'x at 251; *Endo Pharm. Inc.*, 2014 WL 334178, at *9 (applying judicial estoppel where party's "current assertion that it has somehow maintained a consistent position all along troubles the Court"); *cf. Queen v. TA Operating, LLC*, 734 F.3d 1081, 1093 (10th Cir. 2013).

### C.   BSC Cannot Establish Good Cause to Reassert Claims It Deliberately Dropped Three Years Ago

#### 1.   BSC Has No Due Process Right to Reassert Dropped Claims

BSC contends that a case narrowing process that "forced" it to elect asserted claims before knowing the results of an IPR is so "fundamentally unfair" that it violates the Constitution.  D.I. 321 at 7-8.  BSC's contention has no merit. There is no unfairness in holding a party to its voluntary, strategic litigation choices, much less a constitutional violation.

The most glaring problem with BSC's argument is that BSC itself suggested the claim narrowing process in this case, and made a tactical choice not to await the results of the IPRs before electing its asserted claims.  BSC incorrectly states that it was "force[d]" to limit its asserted claims.  D.I. 321 at 8-9.  That is not what happened.  BSC itself proposed limiting its asserted claims, recognizing that litigating its initial 180 asserted claims was not feasible.  *See* D.I. 305 at 5; Ex. C at 6-7.  BSC also chose the timing of its claim elections.  *See id.*

Then, BSC rejected an opportunity to await the IPR results before being locked into its claim election.  Namely, BSC opposed Nevro's motion to stay the

case just after Nevro filed the IPRs.  *See* D.I. 111 (Nevro motion to stay); D.I. 118 (BSC opposition); D.I. 127 (order denying stay).  If BSC had consented to the stay before the parties litigated BSC's elected claims for over a year, it might have preserved its ability to change its claim election after knowing the results of the IPRs. But BSC did not.  Instead, BSC intentionally pushed forward with full fact and expert discovery for its elected claims, knowing full well that it might suffer an adverse result in the IPRs.  There is nothing the least bit unfair in holding a party to its strategic choices.  *See British Telecomm.*, 2020 WL 3047989, at *2.

"[D]ue process does not protect litigants from any particular outcome; instead it protects litigants from arbitrary denials of rights."  *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 768 (3d Cir. 1989) (citation omitted); *Meekins v. DOC's Graterford*, 745 F. App'x 443, 444 (3d Cir. 2018); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000).  For that reason, "the constitutionality of a particular procedure . . . is assessed *ex ante*"—*i.e.*, before the outcome is known—"rather than *post hoc*."  *Jones v. Flowers*, 547 U.S. 220, 231 (2006).  To pass constitutional muster, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case."  *Mathews*, 424 U.S. at 349 (internal citation omitted).  Here, BSC "must demonstrate that the district court's claim selection procedure risked

erroneously depriving it of its rights and that the risk outweighed the added costs associated with a substitute procedure." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011) (citing *Mathews*, 424 U.S. at 335).

BSC makes no such showing.  The claim narrowing procedure in this case gave BSC "a meaningful opportunity to present its" infringement claim for the '280 patent.  *Mathews*, 424 U.S. at 349.  BSC raised no complaints about the procedure until after it started losing.  That hardly establishes a due process violation. At most, it reflects inevitable discontent by one party with the outcome, rather than a fundamentally unfair process.  *E.g.*, *Real Estate*, 869 F.2d at 768.

BSC also gives short shrift to the high "added costs associated with [its proposed] substitute procedure."  *Katz*, 639 F.3d at 1311.  BSC proposes litigating the plaintiff's elected claims for years, then starting over with new claims if the plaintiff loses.  This procedure would lead to the very wasteful, expensive litigation that IPRs and the case narrowing process are designed to reduce.  BSC's procedure is therefore not even sensible—much less constitutionally required.

As expected, courts have rejected due process challenges to case narrowing procedures in circumstances analogous to those present here.  In *Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1374 (Fed. Cir. 2016), for example, the plaintiff "elected on its own, without instruction from

the court, to 'move forward' on six patents with 'no more than 24 representative claims.'"  The plaintiff lost at trial, and then sought a second trial on its unelected patents.  *Id.* at 1376.  The district court denied the request.  The Federal Circuit affirmed, finding no due process violation.  The court found that the plaintiff should have made a contemporaneous objection to case narrowing "as the district court winnowed the case," rather than after losing, to preserve any due process objection. *Id.*  "Because it did not do so," the court concluded, "and instead made the tactical litigation decision to move forward only on a subset of patents without contemporaneous objection, Nuance is not entitled to another trial on the remaining patents."  *Id.* at 1374.  The same logic applies here.[1]

Ultimately, BSC's due process argument is baseless.  Holding BSC to its tactical decisions is not the least bit unfair, and does not violate the Constitution.

### 2.    BSC Has Not Been Diligent

BSC should not be permitted to add claims 21 and 26 because BSC had ample opportunity to assert those claims in this case, but did not.

---

[1]    *See also In re Katz Interactive Call Processing Patent Litig.*, No. 07-CV-2134-RGK FFMX, 2009 WL 8635982, at *16 (C.D. Cal. Aug. 13, 2009) (rejecting due process arguments where plaintiff failed to show, at the outset, that it required higher claim limits); *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1385 (Fed. Cir. 2016) (district court has authority to set a schedule "that requires parties to take positions on various dates and holds the parties to these positions").

BSC does not contest the fact that it had ample opportunity to assert claims 21 and 26 in this case, but did not.  D.I. 321 at 9.  BSC does not deny that it intentionally dropped claims 21 and 26 because it believed its other claims were stronger.  BSC admits that it litigated its elected claims through fact discovery and expert reports, before attempting to reassert its dropped claims.  And BSC does not dispute that a deliberate strategic choice not to assert claims is the antithesis of diligence.  In light of those facts, BSC cannot meet its burden of proving diligence.

BSC argues that it "reasonably believed that its selected claims were valid" and that it was surprised by the PTAB's final ruling invalidating the claims. *Id.*  Even assuming that statement is true, it does not explain why BSC failed to assert claims 21 and 26 earlier; BSC believed claims 21 and 26 were valid too, yet chose not to assert them.  BSC's diligence story is especially weak for claim 21.  Unlike BSC's elected claims, the PTAB never instituted review of claim 21.  BSC knew that its elected claims were at risk of invalidation, while claim 21 was not, yet still decided to drop claim 21.  And BSC never suggested it might seek to reassert claim 21 until July 9, 2020—three years after dropping it.  *See* Ex. H at 2.  Thus, BSC can at best show that it made a strategic mistake.  That is not diligence.  *See* D.I. 305 at 12.

BSC also incorrectly argues that "[c]ourts routinely find good cause to amend after an intervening IPR decision."  D.I. 321 at 9.  Courts routinely deny

amendments after IPR decisions. *See, e.g.*, *Univ. of VA Patent Found. v. Gen. Elec. Co.*, C.A. No. 3:14cv00051, 2019 WL 1993552, at *2 (W.D. Va. May 6, 2019); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, Case No. 15-13488-FDS (D. Mass. Apr. 27, 2018) (Ex. I); *NetAirus Techs., LLC v. Apple, Inc.*, No. LA CV10-03257 JAK EX, 2012 WL 12124908, at *5 (C.D. Cal. Dec. 5, 2012) (rejecting motion to reassert claims that survived reexamination, finding "no good cause to resurrect claims that [plaintiff] either had not asserted or withdrawn earlier in the case"); *Etagz, Inc. v. Quiksilver, Inc.*, No. SACV 10-0300 DOC, 2012 WL 2581256, at *2 (C.D. Cal. July 3, 2012) (rejecting attempt to assert claims that survived reexamination, finding "no substantial justification for waiting until the present time to add claims that have always been present in" the patent).[2]

In fact, BSC has not identified any case that allowed an amendment, due to an IPR result, after the parties had conducted extensive discovery on the plaintiff's elected claims. In *EMED*, for example, "***minimal discovery ha[d] taken place***." *EMED Techns Corp. v. Repro-Med Sys., Inc.*, Case No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893, at *1 (E.D. Tex. Nov. 16, 2018) (emphasis added).

---

[2]     *See also Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter*, No. SACV 09-00951 DOC(ANx), 2011 WL 5554312, at *5 (C.D. Cal. Nov. 14, 2011) (finding no diligence where "Plaintiff's theory of liability . . . has been available to Plaintiff for the entire duration of this suit"); *Acer, Inc. v. Technology Property Ltd.*, Nos. 5:08-cv-0087 JF/HRL, 2010 WL 3618687, at *4 (N.D. Cal. Sept. 10, 2010) (similar).

In *ZiLOG*, the court stayed the case only ***eight days*** after the plaintiff served its initial infringement contentions.  *ZiLOG, Inc. v. Quicklogic Corp.*, No. C03-03725 JW, 2006 WL 563057, at *1 (N.D. Cal. Mar. 6, 2006).  Here, in contrast, the Court stayed the case ***12 months*** after initial contentions, and "the parties have already completed fact discovery and expert reports."  D.I. 244; Ex. A; D.I. 290 at 3-4.

BSC's reliance on *Corel Software, LLC v. Microsoft Corp.*, Case No. 2:15-CV-00528-JNP-PMW, 2018 WL 5792323 (D. Utah Nov. 15, 2018), is misplaced for the same reason.  In *Corel*, the court stayed the case early in the litigation—shortly after the defendant filed its IPR petition and four months before an IPR was instituted.  *See* 2018 WL 5792323 at *1.  Then, the plaintiff quickly cancelled all the claims at issue in the IPR "to prevent further delay of this litigation." *Id.*  The facts here are nothing like *Corel*.  BSC opposed a stay shortly after Nevro filed its IPR petitions, refused to cancel the elected claims, and forced the parties to litigate them for several years in this Court, the PTAB, and the Federal Circuit. Courts have also declined to follow *Corel* because it fails to address diligence, and contains flawed reasoning.  *See Capella Photonics v. Cisco Sys.*, Case No. 14-cv-03348-EMC, 2019 WL 2359096, at *4 (N.D. Cal. June 4, 2019); *Univ. of VA*, 2019 WL 1993552, at *5.

In short, BSC's cases do not support its argument.  The facts here are more similar to *SiOnyx*, *Univ. of VA*, and other cases cited above.  Indeed, the facts

here are almost identical to *SiOnyx*, which rejected an attempt to reassert a dropped claim after fact discovery and expert reports were completed.  *See* Ex. I.[3]

Finally, BSC contends that dropping claims 21 and 26 was not its "choice" and that "any delay in seeking to re-assert claims 21 and 26 is of Nevro's own making."  D.I. 321 at 11-12.  BSC's attempt at blame-shifting fails.  As explained above, BSC itself suggested the claim narrowing process in this case.  *See supra*, Section III.C.1.  And blaming Nevro for the stay cannot show that BSC was diligent in the twelve months before the stay.  *See, e.g.*, *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) (rejecting attempt to blame defendant for stay, because "this argument . . . does nothing to explain why [plaintiff] did not assert claim 4" earlier).

In sum, none of BSC's excuses show it was diligent.

---

[3]    BSC's attempt to distinguish *SiOnyx* fails.  *See* D.I. 321 at 11.  BSC's distinction—that Plaintiffs did not request a stay—is inapposite.  A stay in *SiOnyx* would only have been effective in "allow[ing] the parties and the Court to focus their efforts and resources" if the stay were implemented *before discovery* took place on the elected claims.  *See* D.I. 321 at 11; Ex. I at 2.  Here, BSC successfully opposed such a stay and substantial discovery was taken.  *Supra*, Section III.C.1.  BSC's attempt to distinguish *Univ. of VA* also fails.  There, plaintiff's failed to assert claims for seven months, during which time the elected claims, as here, "shaped the conduct of discovery."  2019 WL 1993552, at *4, 6.

### 3.    Nevro Would Be Prejudiced

BSC has the burden of proving that asserting claims it dropped three years ago would not prejudice Nevro.  *See British Telecomm.*, 2020 WL 3047989, at *2.  BSC has not carried its burden for two reasons.

First, claims 21 and 26 survived Nevro's IPRs *only* because BSC withdrew them before Nevro completed its IPR petition filings.  BSC's own brief confirms this fact.  On July 21, 2017, Nevro filed a First IPR Petition challenging claims including claim 21, which was denied, and a Second IPR Petition challenging claims including claim 26, which was instituted.  *See* D.I. 321 at 4.  On August 1, 2017, BSC withdrew claims 21 and 26.  *Id.*  Then, on August 11, 2017, Nevro filed a Third IPR Petition "against the remaining asserted claims of the '280 Patent—i.e., claims 8, 18, 22-24, and 27" based on different prior art compared to its First and Second IPR Petitions.  *Id.*  The Third IPR Petition was instituted.  Importantly, Nevro *did not* challenge claims 21 or 26 in the Third IPR Petition because BSC had withdrawn those claims, as the petition states:

> Since the filing of [the first] two petitions, [BSC] has narrowed the set of '280 patent claims that it is asserting against Petitioner in parallel district court litigation (see §IX.B.2) to claims 8, 18, 22-24, and 27. Thus, this Petition challenges just those six claims on unpatentability grounds based on primary references (i.e., Schulman and Loeb) *that are different from those in the previously-filed petitions* and that were not previously considered by the Office.

14

*See* Ex. M (Third IPR Petition) at 2-3 (emphasis added).  The PTAB found persuasive all of Nevro's arguments in the Third IPR Petition, and the Federal Circuit affirmed.  *See* Ex. N (IPR Final Written Decision) at 152; D.I. 296, Ex. B at 2.

Thus, Nevro successfully challenged *all* of BSC's *asserted claims* using the prior art in the Third IPR Petition—but did not challenge claims 21 or 26 in that Third Petition because BSC had withdrawn them.  Therefore, while claim 26 was considered by the PTAB, it was not considered in light of the prior art cited by Nevro in the Third Petition.  Likewise, the PTAB never even considered the institution of claim 21 based on the prior art cited in the Third Petition.  Nevro cannot now file an IPR petition challenging claims 21 or 26 using the successful prior art from the Third Petition and/or additional prior art.  *See* 35 U.S.C. § 315(b).  Consequently, permitting BSC to now assert claims 21 and 26 would severely prejudice Nevro.  *See Adaptix, Inc. v. Dell Inc.*, Case No. 5:14-cv-01259-PSG, 2015 WL 13747892, at *4 (N.D. Cal. Feb. 24, 2015) ("absent unusual circumstances not presented here, a plaintiff should not be able to sit on its heels until a defendant's opportunity to file an IPR petition has run out and only then seek to amend its infringement contentions"); *Etagz, Inc.*, 2012 WL 2581256, at *2 (finding prejudice where "Defendant may also have attempted to place the newly asserted claims into

reexamination had it known that Plaintiff was alleging their infringement"). This prejudice alone warrants denying BSC's requested amendment.[4]

Second, and equally important, BSC does not dispute that permitting it to reassert dropped claims would create expensive additional work for the parties and the Court, as detailed in Nevro's Opening Brief. D.I. 305 at 15-16. Nevro already bore the significant cost of millions of dollars conducting extensive discovery on BSC's originally asserted claims, while challenging those claims at the PTAB and Federal Circuit—a cost that could have been avoided had BSC agreed to a stay when Nevro first requested one. It would be unfair to force Nevro to spend even more money due to BSC's own failed litigation decisions.

BSC incorrectly argues that this "additional work does not constitute unfair prejudice." D.I. 321 at 15. This Court and the Third Circuit have both recognized, however, that substantial work and costs qualify as prejudice. *See RetailMeNot, Inc. v. Honey Sci. Corp.*, C.A. No. 18-937-CFC-MPT, 2019 WL 2537565, at *3 (D. Del. June 20, 2019), *recommendation adopted* 2019 WL 6615321 (D. Del. Dec. 5, 2019); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (stating in context of an amendment to a complaint, that "[t]he

---

[4]    BSC also does not dispute that its withdrawal of claims 21 and 26 deprived Nevro of the opportunity to present evidence from this litigation (such as deposition testimony) related to claims 21 and 26 to the PTAB. *See* D.I. 305 at 18.

issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted.  Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.") (internal citation omitted).[5]

Moreover, BSC itself recently argued to this Court that the "significant legal fees" it incurred in conducting discovery qualified as "clear prejudice."  *See* D.I. 118 at 12.  The Court agreed, finding that engaging in discovery—even minimal, early-stage discovery such as negotiating a protective order and serving interrogatories—constituted prejudice.  *See* June 22, 2020 Hrg. Tr. at 30:16-21, 33:5-21.  This standard should apply equally to both parties.[6]

---

[5]    The cases cited by BSC are distinguishable.  In *Cuffy v. Getty Ref. & Mktg. Co.*, 648 F. Supp. 802, 806 (D. Del. 1986), the court applied a "general presumption in favor of allowing amendment" to a complaint under Rule 15(a).  That presumption is absent here—BSC must show good cause.  The *Corel* court relied on *Cuffy* for the prejudice standard.  In *Abraxis BioScience, LLC v. Actavis, LLC*, No. CV 16-1925 (JMV), 2017 WL 2079647, at *4 (D.N.J. May 15, 2017), the court recognized that "expend[ing] significant additional resources" *does* qualify as prejudice, but found no prejudice because "discovery is still in the early stages."

[6]    BSC also argues that Nevro is somehow contradicting its previous representation, in seeking a stay, that a "substantial amount of work" remained.  D.I. 321 at 16.  This argument makes no sense.  The "substantial amount of work" that remained was for BSC's asserted claims, and included claim construction, dispositive motions, and trial.  BSC's asserted claims have now been invalidated—rendering that additional work unnecessary.  That was the point of the stay.

For these reasons, Nevro would be severely prejudiced by the addition of claims that BSC voluntarily dropped from this case three years ago.

**4.    The Reintroduction of the '280 Patent Will Only Exacerbate, Rather Than Help Resolve, the Parties' Overall Dispute**

As Nevro explained in its Opening Brief, reintroduction of claims 21 and 26 will not help resolve the parties' overall dispute, because BSC has no realistic chance of prevailing on those claims.  *See* D.I. 305 at 18-20.  The issues are simple.  For claim 21, other than using household power to charge a battery, every limitation and their combination have been found invalid by the PTAB and by the Federal Circuit.  And there is nothing novel about using household power to charge a battery.[7]  For claim 26, Nevro's trial stimulator, like the prior art, allows patients to immediately re-program stimulation parameters.  The Federal Circuit adopted a construction that excluded the prior art, and therefore Nevro's accused system, from the scope of claim 26.

In response, BSC makes no attempt to defend its claims.  *See* D.I. 325 at 14 n.5.  That should end the matter.  There is no point in wasting the parties' and the Court's time and effort litigating claims, when BSC cannot even articulate at the

---

[7]    For those reasons, BSC is collaterally estopped from arguing that claim 21 is valid, as a recent decision makes clear.  *See Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-cv-00186-SI, 2020 WL 4431787, at *5 (N.D. Cal. July 31, 2020) (finding claim invalid based on PTAB cancellation of related claim, where the "added limitation does not materially alter the question of invalidity").

most basic level how it could possibly prevail.  It is BSC's burden to do so, and it has failed.  *See British Telecomm.*, 2020 WL 3047989, at *2, 5 (considering "the relative strength of [a prior art reference]" in assessing leave to amend).

### D.   Nevro Does Not Oppose Adding Its Senza II and Omnia Products to This Case

A party may amend its infringement contentions to add new products only upon a showing of good cause.  *See O2 Micro Int'l Ltd.*, 467 F.3d at 1363.  In assessing good cause, courts consider whether "the case is already too large and unwieldy," whether the addition of new products will require "substantial additional discovery," and whether the new products will impact claim construction or disrupt narrowing the case for trial.  *Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339 at *5 (N.D. Cal. June 26, 2017); *Richtek Tech. Corp. v. uPi Semiconductor*, No. C 09-05659 WHA, 2016 WL 1718135, at *3 (N.D. Cal. Apr. 29, 2016).

Here, this case is already large and unwieldy—with eleven patents and a trade secret claim scheduled for trial.  Now "is the time for the case to narrow, not expand." *Richtek*, 2016 WL 1718135 at *3.  The addition of two new Nevro products will also require additional discovery and may impact claim construction.

That said, BSC is generally correct that there are few relevant differences between the Senza, Senza II, and Omnia with respect to the asserted claims of BSC's patents, and Nevro intends to rely on the fact that these products

19

embody its counterclaim patents.  Therefore, Nevro does not oppose BSC amending its infringement contentions to add Senza II and Omnia.  However, that should not be viewed as a concession to BSC changing its election of asserted claims. Discovery on the new products should be streamlined to focus on the relevant differences and the impact the new products have on the calculation of damages.

## IV.    CONCLUSION

For these reasons, Nevro's motion to dismiss the '280 and '241 patents should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sona De
Sharon Lee
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA  94304
(650) 565-7107

August 26, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with the Court's type-volume limitations, as it was prepared with Microsoft Word, using Times New Roman, 14 point font, and contains 4,967 words as counted by Microsoft Word, excluding the case caption, signature block, table of contents and table of authorities.

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 26, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Karen L. Pascale, Esquire<br>Pilar G. Kraman, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Edward Han, Esquire<br>Matthew M. Wolf, Esquire<br>Marc A. Cohn, Esquire<br>William Z. Louden, Esquire<br>Chris Moulder, Esquire<br>Amy DeWitt, Esquire<br>Tara L. Williamson, Esquire<br>William Young, Esquire<br>Bridgette C. Boyd, Esquire<br>Michael E. Kientzle, Esquire<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue, N.W.<br>Washington, DC  20001-3743<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

Edmond Ahadome, Esquire                    *VIA ELECTRONIC MAIL*
David A. Caine, Esquire
Michael D.K. Nguyen, Esquire
Carson D. Anderson, Esquire
Thomas T. Carmack, Esquire
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-2112
*Attorneys for Plaintiffs*

Oscar Ramallo, Esquire                     *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
Forty-Fourth Floor
Los Angeles, CA  90017-5844
*Attorneys for Plaintiffs*

Philip Smithback, Esquire                  *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
*Attorneys for Plaintiffs*

Dina M. Hayes, Esquire                     *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL  60602
*Attorneys for Plaintiffs*

Michael P. Kahn, Esquire                   *VIA ELECTRONIC MAIL*
Michael N. Petegorsky, Esquire
Brooks J. Kenyon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY  10036-6745
*Attorneys for Plaintiffs*

2

C. Brandon Rash, Esquire                          *VIA ELECTRONIC MAIL*
Rachel J. Elsby, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
*Attorneys for Plaintiffs*


Jason Weil, Esquire                               *VIA ELECTRONIC MAIL*
Matthew A. Pearson, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103
*Attorneys for Plaintiffs*


                                   */s/ Rodger D. Smith II*

                                   _____
                                   Rodger D. Smith II (#3778)