**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP., | |
| Plaintiffs, | C.A. No. 16-1163-CFC-CJB CONSOLIDATED |
| v. | |
| NEVRO CORP., | |
| Defendant. | |

**[DRAFT] FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1    GENERAL INSTRUCTIONS.................................................................4
    1.1    INTRODUCTION.......................................................................4
    1.2    JUROR'S DUTIES .....................................................................5
    1.3    THE PARTIES............................................................................6
    1.4    SUMMARY OF CONTENTIONS AND PATENT ISSUES ...............7
    1.5    EVIDENCE DEFINED................................................................8
    1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE............................10
    1.7    BURDENS OF PROOF..............................................................11
    1.8    CREDIBILITY OF WITNESSES.................................................13
    1.9    EXPERT WITNESSES..............................................................15
    1.10   STIPULATED FACTS...............................................................16
    1.11   USE OF A DEPOSITION ..........................................................17
    1.12   DEMONSTRATIVE EXHIBITS .................................................18
    1.13   USE OF NOTES .......................................................................19

2    ISSUES PRESENTED .......................................................................20

3    PATENT CLAIMS..............................................................................22
    3.1    THE ROLE OF CLAIMS IN A PATENT .....................................22
    3.2    INDEPENDENT AND DEPENDENT CLAIMS .............................24
    3.3    CONSTRUCTION OF CLAIM TERMS........................................26

4    INFRINGEMENT ..............................................................................29
    4.1    INFRINGEMENT GENERALLY ................................................29
    4.2    DIRECT INFRINGEMENT........................................................30
    4.3    INDIRECT INFRINGEMENT BY ACTIVE INDUCEMENT.........32
    4.4    WILLFUL INFRINGEMENT .....................................................35

5    PATENT INVALIDITY ......................................................................38
    5.1    LEVEL OF ORDINARY SKILL .................................................40
    5.2    PRIOR ART..............................................................................41
        5.2.1  Priority Date................................................................43
    5.3    ANTICIPATION........................................................................47
    5.4    OBVIOUSNESS........................................................................49
    5.5    WRITTEN DESCRIPTION REQUIREMENT ...............................55
    5.6    Nevro: INDEFINITENESS........................................................57

6    PATENT DAMAGES .........................................................................59
    6.1    DAMAGES GENERALLY..........................................................59
    6.2    PATENT MARKING ................................................................61
    6.3    REASONABLE ROYALTY .......................................................62

6.3.1 Relevant Factors..........................................................64

6.3.2 Availability of Non-Infringing Substitutes ...............67

6.3.3 Apportionment .............................................................69

7      DELIBERATION ...........................................................70

7.1   UNANIMOUS VERDICT ...............................................72

7.2   DUTY TO DELIBERATE.................................................74

7.3   COURT HAS NO OPINION ...........................................75

# 1   GENERAL INSTRUCTIONS

## 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2   JUROR'S DUTIES

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the claims and defenses presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction No. 3.1 (2020).

## 1.3   THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

This is a civil case concerning allegations of patent infringement.

The plaintiffs in this case are Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation, which I will refer to from now on as "Boston Scientific."

The defendant in this case is Nevro Corporation, which I will refer to from now on as "Nevro."

## 1.4   SUMMARY OF CONTENTIONS AND PATENT ISSUES

Boston Scientific alleges that Nevro infringes four of its United States patents. Together I will refer to all of these patents as the "Asserted Patents." I will refer to the claims from the Asserted Patents that Boston Scientific is asserting against Nevro as the "Asserted Claims."

Boston Scientific alleges that Nevro directly infringes the following claims of the Asserted Patents by either using, offering for sale, or selling its Percutaneous Blue Lead, Surpass Surgical (Paddle) Lead, and Surpass-C Surgical (Paddle) Lead ("the Accused Products") for use with Nevro's Senza®, Senza II™, or Senza® Omnia™ systems:

Claims 11 and 25 of U.S. Patent No. 8,019,439 ("the '439 patent").

Boston Scientific alleges that Nevro indirectly infringes the following claims by actively inducing third party Cirtec Medical LLC formerly known as Stellar Technologies, Inc. (together, "Stellar") to make the Accused Products:

Claims 1 and 18 of U.S. Patent No. 7,891,085 ("the '085 patent");

Claim 3 of U.S. Patent No. 8,646,172 ("the '172 patent"); and

Claim 11 of U.S. Patent No. 8,650,747 ("the '747 patent").

Nevro denies that it infringes any of the Asserted Claims of Boston Scientific's Asserted Patents, and alleges that the Asserted Claims are invalid. I will instruct you later on the ways in which a patent claim may be invalid.

## 1.5   EVIDENCE DEFINED

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated--that is, formally agreed to by the parties; and

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers;

3. My questions, comments, or legal rulings;

4. Any testimony I tell you to disregard; and

5. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you have seen and heard in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

Do not speculate about what a witness might have said or what an exhibit might have shown.  Speculation is not evidence, and you are bound by your oath not to let speculation influence your decision in any way.

You must not conduct any independent research, investigation, or experiments about the case or its subject matter on your own. Make your decision based only on the evidence, as I have defined it here, and nothing else.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

[**Nevro:** The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.]

**AUTHORITY**:

Third Circuit Model Jury Instruction No. 1.5


**Nevro:**

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 1.9.

## 1.6   DIRECT AND CIRCUMSTANTIAL EVIDENCE

In this trial, the parties presented "direct evidence" and "circumstantial evidence."   An example of "direct evidence" is when a witness testifies about something that the witness knows through his or her own senses — something the witness has seen, felt, touched or heard or did.  For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction No. 1.6 (Option 2) (2020).

## 1.7   BURDENS OF PROOF

For each issue in this case, either Boston Scientific or Nevro bears the burden of proof.  The party who bears the burden of proof on an issue bears the burden of persuading you to find in their favor.  In this case, there are two different burdens of proof.

The first burden of proof is called "preponderance of the evidence."  For patent infringement, Boston Scientific has the burden of proving its case by what is called the preponderance of the evidence.  That means Boston Scientific has to prove to you, in light of all the evidence, that what it claims is more likely true than not.  To say it differently: if you were to put the evidence favorable to Boston Scientific and the evidence favorable to Nevro on opposite sides of the scales, Boston Scientific would have to make the scales tip somewhat on its side.  If Boston Scientific fails to meet this burden, the verdict must be for Nevro.  If you find after considering all the evidence that a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

The second burden of proof is called "clear and convincing evidence."  Nevro has the burden of proving by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proven by the evidence are true.  Clear and convincing evidence is a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  But it does not require proof beyond a reasonable doubt.  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this. So you should put it out of your mind.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction Nos. 1.10, 1.11 (2020).

## 1.8   CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of each witness's credibility.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:  (1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to; (2) the quality of the witness's understanding and memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; (6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and (7) any other factors that bear on believability.  [**Nevro:**  The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was

13

different from the testimony the witness gave at the trial.  You have the right to distrust such a witness's testimony in other particulars and you may reject some or all of the testimony of that witness or give it such weight and credit as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses and witnesses whose prior sworn testimony has been played by video or read to you.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction No. 1.7 (2020).

**<u>Nevro:</u>**

Third Circuit Model Jury Instruction Nos. 1.7, 3.2 (2020).

## 1.9  EXPERT WITNESSES

You have heard testimony containing opinions from expert witnesses.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  As with any other witness, it is up to you to decide whether to rely on it.

### **AUTHORITY**

Third Circuit Model Jury Instruction No. 2.11 (2020); *f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 1.12.

**1.10 STIPULATED FACTS**

The parties have agreed that certain stipulated facts are true.  To the extent stipulated facts have been read to you during this trial, you must treat these facts as having been proven for the purposes of this case.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction No. 2.4 (2020).

**1.11 USE OF A DEPOSITION**

During trial, certain testimony was presented to you through excerpts of a deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  Deposition testimony is entitled to the same consideration and is to be judged in the same way as if the witness had appeared personally in court to testify.

**<u>AUTHORITY</u>**

Third Circuit Model Jury Instruction No. 2.5 (2020).

**1.12 DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.   The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.   These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**<u>AUTHORITY</u>**

O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 5:8 (2020-2021).

## 1.13 USE OF NOTES

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## **AUTHORITY**

O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 5:8 (2020-2021).

## 2   ISSUES PRESENTED

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1)     Whether Boston Scientific has proven by a preponderance of the evidence that Nevro [**BSC**: directly infringed] / [**Nevro**: is liable for direct infringement of] one or more of the Asserted Claims of the '439 Patent;

2)     Whether Boston Scientific has proven by a preponderance of the evidence that Nevro [**BSC**: induced] / [**Nevro**: is liable for actively inducing] infringement of one or more of the Asserted Claims of the '085, '172, or '747 Patents;

3)     Whether Nevro has proven by clear and convincing evidence that any of the Asserted Claims are invalid for anticipation, obviousness, [**Nevro**: indefiniteness], or lack of written description;

4)     For any Asserted Claim that you find is both infringed and [**BSC**: not invalid] / [**Nevro**: valid], what sum of money damages [**BSC**: should be awarded to Boston Scientific] / [**Nevro**: if any, Boston Scientific has proven by a preponderance of the evidence that it is entitled to as compensation for that infringement]; and

5)       If you find that any Asserted Claim is both infringed and [**BSC: not invalid**] / [**Nevro: valid**], whether Boston Scientific has proven by a preponderance of the evidence that Nevro's infringement of that Asserted Claim was willful.

**Authority**

**Boston Scientific:**

Indefiniteness is not an appropriate question for the jury in this case.  *See* Proposed Jury Instruction No. 5.6.

**Nevro:**

Damages, like any other part of the case, has a burden of proof and a party responsible for that burden.  The jury cannot choose to award damages without evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 926 F.2d 1161, 1164 (Fed. Cir. 1991); *Promega Corp. v. Life Techs. Corp*., 875 F.3d 651, 660 (Fed. Cir. 2017).  Patent damages requires a connection or nexus to the infringement. 35 U.S. Code § 284; *Apple Inc. v. Samsung Electronics Co., Ltd*., 735 F.3d 1352, 1361-64 (Fed. Cir. 2013). Boston Scientific's instruction for #4 misleads the jury into believing they can award any damages they want, regardless of the evidence or connection to the infringement.

Indefiniteness is a proper question for the jury to consider as it relies on underlying facts. See Proposed Jury Instruction No. 5.6.  "[I]ndefiniteness 'is amenable to resolution by the jury where the issues are factual in nature." *BJ Servs. Co. v. Haliburton Energy Servs., Inc*., 338 F.3d 1368, 1372 (Fed. Cir. 2003).

# 3   PATENT CLAIMS

At the beginning of the trial, I gave you some general information about patents and the patent system, and also a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.

## 3.1   THE ROLE OF CLAIMS IN A PATENT

Before you decide whether Nevro has infringed any of the Asserted Claims or whether any of the Asserted Claims is invalid, you will need to understand the role of patent "claims."  The patent claims are numbered sentences at the end of the patent.

[**BSC**: The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description of the invention and provide a context for the claims.]

[**Nevro**:  The claims are intended to define, in words, the boundaries of the inventor's rights.  Only the claims of the patent can be infringed.  Neither the text preceding the claims, nor the drawings or figures in a patent can be infringed.  Only the claims define the extent of the patent's coverage; therefore, what a patent covers depends, in turn, on what its claims cover.  Each of the claims must be considered individually.]

22

## **AUTHORITY**

**Boston Scientific:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 2.1 (2020); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 3.1.

**Nevro:**

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 255 at 3.1.

## 3.2   INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of claims:  independent claims and dependent claims.

An "independent" claim sets forth all of the requirements that must be met in order for an accused product to infringe that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  A "dependent" claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claims incorporates all of the requirements in the claim to which it refers and then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim from which it depends.  An accused product infringes a dependent claim if the accused product meets all of the requirements of both the dependent claim and any other claims from which the dependent claim depends.  In other words, if you find that an independent claim is not infringed, then the dependent claims that depend on that independent claim cannot be infringed either.

Likewise, each claim must be separately assessed for invalidity.  For an independent claim, all of its requirements must be considered  in deciding its invalidity.  For a dependent claim, all of its requirements plus the requirements of

any other claim from which it depends must be considered when assessing that dependent claim's invalidity.

## **AUTHORITY**

Federal Circuit Bar Association Model Patent Jury Instruction No. 2.1a (2020).

## 3.3   CONSTRUCTION OF CLAIM TERMS

It is my job as judge to define the meaning of any claim language that must be interpreted.  You must accept the meanings that I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meaning of the following words and groups of words from the Asserted Patents:

| Term | Construction |
|------|-------------|
| "lead body"<br><br>('085 Patent Claims 1, 18; '439 Patent Claims 11, 25; '172 Patent Claim 3; '747 Patent Claim 11) | "an insulated, multi-lumen tube" |
| "conductor lumen"<br><br>('085 Patent Claims 1, 18; '439 Patent Claims 11, 25; '172 Patent Claim 3; '747 Patent Claim 11) | "a hollow bore within the lead body for one or more conductor wires" |
| "inserting monofilament into at least one portion of at least one of the conductor lumens of the lead body that is not occupied by the conductor wires"<br><br>('085 Patent Claims 1, 18) | "inserting monofilament into at least one portion of at least one of the conductor lumens of the lead body that does not contain any piece of conductor wire" |
| "epoxy that is within at least some portion of the plurality of conductor lumens in proximity to the proximal end of the stimulation lead"<br><br>('439 Patent Claims 11, 25) | "epoxy that at least partially fills at least a portion of each of the conductor lumens not occupied by the conductor wires in proximity to the proximal end of the stimulation lead" |
| "insulation section"<br><br>('172 Patent Claim 3) | "portion of the lead insulating material along the length of the lead body" |

| Term | Construction |
|---|---|
| "connecting at least one of the plurality of conductor wires to each of the conductive contacts" <br><br>('085 Patent Claims 1, 18) | "connecting the plurality of conductor wires to the conductive contacts so that each conductive contact is connected to a conductor wire" |
| "conductively coupling at least one of the plurality of conductor wires to each of the conductive contacts" <br><br>('172 Patent Claim 3) | "conductively coupling the plurality of conductor wires to the conductive contacts so that each conductive contact is connected to a conductor wire" |
| "plurality of conductor wires disposed in the conductor lumens, wherein at least one of the conductor wires is electrically connected to each conductive contact" <br><br>('747 Patent Claim 11) | "plurality of conductor wires disposed in the conductor lumens, wherein at least each conductive contact is electrically connected to one of said conductor wires" |
| "reflowing at least one of the spacers or monofilament into at least one portion of at least one of the conductor lumens not occupied by the conductive wires by heating the spacers and monofilament to a temperature to cause thermal flow or melting of at least one of the spacers or monofilament" <br><br>('085 Patent Claims 1, 18) | "causing at least one of the spacers or monofilament to reflow and fill at least a portion of the unoccupied portion in at least one of the conductor lumens not occupied by the conductor wires by heating both the spacers and monofilament to a temperature that allows at least one of the spacers or monofilament to thermally reflow or melt" |

[**Nevro**: Although I have only defined some of the claim terms, it is important to understand that a patent claim is infringed only if an accused product includes each and every element in that patent claim.]

For any other claim term that I have not provided a definition, you should use its ordinary meaning within the context of the patent in which the claim term is used and in the field of the patent.

## **AUTHORITY**

### **Boston Scientific:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 2.1 (2020).

### **Nevro:**

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 255 at 3.3.

# 4   INFRINGEMENT

## 4.1   INFRINGEMENT GENERALLY

I will now instruct you how to decide whether Boston Scientific has proven by a preponderance of the evidence that Nevro has infringed the Asserted Claims of the Asserted Patents by making, using, selling, offering to sell, or importing the Accused Products into the United States.

Infringement must be assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

Boston Scientific must prove by a preponderance of the evidence that all of the requirements for infringement are met.  In this case, there are two possible ways that a claim may be infringed.  The two types of infringement are called: (1) direct infringement and (2) active inducement.  Active inducement is referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.

I will now explain each of these types of infringement in more detail.

## **AUTHORITY**

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.1 (2020).

## 4.2   DIRECT INFRINGEMENT

In this case, Boston Scientific alleges that Nevro directly infringes claims 11 and 25 of the '439 patent.

For direct infringement, Boston Scientific must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Nevro used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of claims 11 and 25 of the '439 patent and did so without the permission of Boston Scientific during the time the '439 Patent was in force.

You must compare the Accused Products with each of claims 11 and 25 of the '439 patent, using where appropriate my instructions as to the meaning of the patent claim terms.  If you find the Accused Products meets each and every limitation in a patent claim, then that product infringes that claim.  The same component of an Accused Product may satisfy more than one limitation of the claim.  If you find the Accused Products do not literally contain one or more limitations in a patent claim, it does not infringe that claim.

You must determine infringement with respect to each patent claim individually

## **<u>AUTHORITY</u>**

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.1a (2020); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 4.2.1.

## 4.3   INDIRECT INFRINGEMENT BY ACTIVE INDUCEMENT

I will now instruct you on the rules you must follow for indirect infringement by active inducement.  Boston Scientific alleges that Nevro has actively induced Stellar to infringe claims 1 and 18 of the '085 patent; claim 3 of the '172 patent; and claim 11 of the '747 patent.

[**Nevro**: As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.]

To find that Nevro is liable for actively inducing Stellar to infringe any of the Asserted Claims of the Asserted Patents, Boston Scientific must prove by a preponderance of the evidence the following:

(1) that the acts that are actually carried out by Stellar directly infringe that Asserted Claim [**Nevro**: while the patent was in force];

(2) that Nevro [**BSC**: took action that was intended to cause and led to the infringing acts by Stellar] / [**Nevro**: affirmatively aided, instructed, or otherwise acted intentionally to cause Stellar to directly infringe an Asserted Claim with knowledge of that patent];

(3) and that Nevro was aware of the relevant Asserted Patent and knew [**BSC**: or affirmatively ignored] that the acts, if taken by Stellar, would constitute infringement of that patent [**BSC**: or (b) believed there was a high probability that

the acts by Stellar would infringe one or more of the Asserted Claims and Nevro took deliberate steps to avoid learning of that infringement].

If you find that Nevro was aware of the Asserted Patents, but did not believe that the acts it encouraged infringed the relevant patent, then Nevro cannot be liable for inducement.

## AUTHORITY

### Boston Scientific:

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.2 (2020); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 762-66 (2011); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330-32 (Fed. Cir. 2016); *Nike, Inc. v. Puma N. Am. Inc.*, No. 18-10876-LTS, 2018 WL 4922353, at *4-5 (D. Mass. Oct. 10, 2018); *Soverain IP, LLC v. Microsoft Corp.*, No. 2:17-CV-00204-RWS-RSP, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018); *Bd. of Regents, Univ. Tex. Sys. v. Ethicon, Inc.*, No. 1:17-CV-01084-LY, 2020 WL 3582793, at *3-4 (W.D. Tex. Apr. 17, 2020).

### Nevro:

Nevro objects to the inclusion of any instructions regarding "affirmative[] ignor[ance]" and "deliberate steps to avoid learning of that infringement" (i.e., willful blindness) because Boston Scientific did not preserve that issue for trial. In the event the Court determines that the jury should be instructed on willful blindness, Nevro proposes the following after the agreed portion of (3):

In the alternative, Boston Scientific must show by a preponderance of the evidence (i) that Nevro subjectively believed that there was a high risk of infringement of Boston Scientific's Asserted Patents and (ii) that Nevro took deliberate actions to avoid discovering that infringement. It is not enough to show that Nevro was aware of the Asserted Patents or that Stellar directly infringed the Asserted Claims. It is also not enough to show that Nevro was reckless or negligent. In other words, it is not enough to show that Nevro knew or should have known of a substantial and unjustifiable risk of infringement. Instead, Boston Scientific must

show that Nevro took deliberate action to avoid confirming a high probability of wrongdoing and can almost be said to have actually known the critical facts.

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.2 (2020); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (induced infringement requires that the defendant knew of the patent and that the acts constitute infringement); *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1304-05 (Fed. Cir. 2006); *Global-Tech Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 766, 769-70 (2011); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012); *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (knowledge of possible infringement by others is not inducement); *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292 (Fed. Cir. 2008) (specific intent requires affirmative intent to cause direct infringement through culpable conduct); 35 U.S.C. § 271(a) (direct infringement only during the term of a patent); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (inducement liability only if there is direct infringement); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004) (same); *Orexo AB v. Actavis Elizabeth LLC*, C.A. No. 17-205-CFC (D. Del.), Final Jury Instructions (3/28/2019), D.I. 270 at 3.6.

## 4.4  WILLFUL INFRINGEMENT

In this case, Boston Scientific argues that Nevro willfully infringed the Asserted Patents.  If you find that [**BSC**: Nevro has infringed an Asserted Claim that is not invalid] / [**Nevro**: Boston Scientific has proven by a preponderance of the evidence that Nevro has infringed an Asserted Claim that is valid], then you must go on and address the additional issue of whether or not the infringement of that Asserted Claim was willful.

To show willful infringement, Boston Scientific must prove by a preponderance of the evidence that Nevro knew of the patent and that the infringement by Nevro was deliberate or intentional.

You may not determine that the infringement was willful just because Nevro was aware of a patent and infringed it without more.  Instead, you must also find that Nevro deliberately or intentionally infringed that patent.

[**Nevro**: There can be no willful infringement before a patent is issued.  Thus, only behavior occurring after a patent's issuance is relevant to the willfulness inquiry.]

[**BSC**: To determine whether Nevro acted willfully] / [**Nevro**: In determining whether Boston Scientific has proven by a preponderance of the evidence that Nevro's infringement was willful], consider all of the facts and assess Nevro's

knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited to:

1)      Whether or not Nevro acted consistently with the standards of behavior for its industry;

2)      Whether or not Nevro intentionally copied a product of Boston Scientific that is covered by the Asserted Patents;

3)      Whether or not Nevro reasonably believed it did not infringe or that the Asserted Patent was invalid; and

4)      Whether or not Nevro made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Nevro attempted to design around the Asserted Patents.

[**Nevro**: The fact that Nevro continued to market the Accused Products they sold even before Boston Scientific obtained certain of the Asserted Patents, and did not shift to another product (even if Nevro could have done so without much delay or expense), does not show that Nevro subjectively intended to infringe the Asserted Patents.]

## AUTHORITY

**Boston Scientific:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.10 (2020); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1930-32 (2016); *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed.

Cir. 1992) ("[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness."); *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633204, \*3-4 (D. Del. Nov. 21, 2017) (denying accused infringer's motion *in limine* seeking to preclude the patentee from introducing evidence of alleged copying of the patentee's product before the patent issued); *C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370-72 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244-45 (Fed. Cir. 2017); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339-42 (Fed. Cir. 2016).

**Nevro:**

*Bioverativ Inc. v. CSL Behring, LLC*, C.A. No. 17-914, 2020 WL 1332921, at \*2, 3 (D. Del. Mar. 23, 2020) (finding that pre-patent surveillance of competitor's product development does not amount to willfulness); *State Indus., Inc. v. A.O. Smith Corp.*, 715 F.2d 1226, 1234-38 (Fed. Cir. 1985); *Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 421-22 (D. Del. 2003); *bioMerieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2020 WL 759546 at \*11-13 (D. Del. Feb. 7, 2020) (finding the fact that "Defendants continued to market the[ir] products they sold even before Plaintiffs obtained the patents-in-suit, and did not shift to another product (even if they could have done so without much delay or expense), does not show that they subjectively intended to infringe Plaintiffs' patents"); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-34 (2016); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, C.A. No. 19-1687-CFC-CJB, 2021 WL 1134687, at \*1-5 (D. Del. Mar. 24, 2021); *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 421 (D. Del. 2018); *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, C.A. No. 19-1031-RGA-SRF, 2021 WL 4077778, at \*13-14 (D. Del. Aug. 20, 2021), *report and recommendation adopted in relevant part*, C.A. No. 19-1031-RGA, 2021 WL 4207442 (D. Del. Sept. 16, 2021); *Bos. Sci. Corp. v. Nevro Corp.*, C.A. No. 16-1163-CFC, 2021 WL 4262668, at \*6 (D. Del. Sept. 20, 2021).

## 5   PATENT INVALIDITY

[**BSC**: I will now instruct you on the rules you must follow in decided whether or not Nevro has proven that any of the Asserted Claims are invalid.  Patents are entitled to a presumption of validity.  To prove that an Asserted Claim is invalid, Nevro must persuade you by clear and convincing evidence to overcome the presumption of validity.  That is, you must be left with a clear conviction that the claim is invalid. Nevro contends that the Asserted Claims of the Asserted Patents are invalid.  This is a higher standard than the "preponderance of the evidence" standard that is used for infringement.] / [**Nevro**: Nevro contends that the Asserted Claims of the Asserted Patents are invalid.  Nevro has the burden of proving by clear and convincing evidence that each Asserted Claim is invalid.  Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction that the allegations sought to be proven by the evidence are true.]

Invalidity must be assessed on a claim-by-claim basis.  In other words, you can find that one claim is invalid, but that other claims are valid. Terms of the patent claims must be interpreted in the same way for both infringement and invalidity.

## **AUTHORITY**

### **Boston Scientific:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.1 (2020); AIPLA Model Patent Jury Instruction Nos. 1.2, 2 (2019); Third Circuit Model Jury Instruction No. 1.11 (2020); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A.

No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 5.

**Nevro:**

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 255 at 5; Third Circuit Model Jury Instruction No. 1.11 (2020).

## 5.1   LEVEL OF ORDINARY SKILL

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.  The person of ordinary skill is a hypothetical person who is presumed to know all pertinent prior art.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems in this field.

For the Asserted Patents, a person of ordinary skill in the art would have had (1) at least a bachelor's degree in a relevant life sciences field, mechanical engineering, electrical engineering, biomedical engineering, or equivalent coursework, and (2) at least one year of experience researching or developing implantable medical devices [**Nevro**: or methods of their manufacture] / [**BSC**: A person of ordinary skill in the art would also have had general knowledge of implantable medical devices and various related technologies.]

**AUTHORITY**

Agreement by the parties; *f'real Foods, LLC v. Hamilton Beach Brands, Inc.* , C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 5.1.

40

## 5.2   PRIOR ART

In order for someone to be entitled to a patent, the [**Nevro**: alleged] invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications, published articles, patents, or published patent applications.

[**Nevro**: To be prior art, the item or reference must have been made, known, used, published, or patented, or, in the case of a patent application, applied for, before the priority date of the Asserted Claim against which it is evaluated.

Even if a prior art reference was considered by the Patent Office, anticipation arguments and obviousness arguments can still be raised here in the district court. For example, if the Patent Office did not have all material facts before it prior to issuing the patents, its judgment may lose significant force, and Nevro's burden of proving invalidity by clear and convincing evidence may be easier to sustain. New evidence that the Patent Office had no opportunity to evaluate before granting the patents can carry more weight than evidence previously considered by the Patent Office.]

## AUTHORITY

Federal Circuit Bar Association Model Patent Jury Instruction No. 3.3a-1 (2020); *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.*, C.A. No. 11-515-LPS (D. Del.), Final Jury Instructions (3/7/2017), D.I. 777 at Section 5.3.

**<u>Nevro:</u>**

*Interdigital Commc'ns Inc. v. Nokia Corp.*, C.A. No. 13-10-RGA, 2014 WL 8104167, at *1 n.1 (D. Del. Sept. 19, 2014); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 110-112 (2011); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1381 (Fed. Cir. 2005); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007).

### 5.2.1  Priority Date

A patent's "priority date" is the date that is used in assessing whether the patent satisfies the written description, enablement and definiteness requirements. The priority date of a patent claim also affects what documents are available as prior art and is determined on a claim-by-claim basis.  The priority date of an Asserted Claim is an issue for you the jury to determine.

In this case, the parties dispute whether certain references qualify as prior art. In some of those instances, you may first need to determine the priority date of the Asserted Claims.

For certain Asserted Claims, Boston Scientific contends the Asserted Claims are entitled to a claim of priority to an earlier filed parent or provisional patent application, as indicated on the face of the Asserted Patents.  A later-filed patent claim is only entitled to filing date of a priority application if the specification of the priority application satisfies the written description and enablement requirements for that later-filed claim. I will describe the written description requirement to you below.

For certain Asserted Claims, Boston Scientific contends that it is entitled to priority date that is earlier than the filing date of an earlier filed parent or provisional application.  An earlier alleged invention date requires evidence of both earlier conception and diligence in reducing the inventive concept to practice.  Conception

is the mental part of an inventive act, i.e., the formation in the mind of the alleged inventor of a definite and permanent idea of the complete and operative invention. Conception of a claim is complete when the idea is so clearly defined in the alleged inventor's mind that, if the idea were communicated to a person have ordinary skill in the art, he or she would be able to reduce the claimed subject matter to practice without undue research.

[**BSC**: To show an invention date earlier that the application for the patent, Boston Scientific does not have to prove that it had a prototype built, or actually explained the invention to another. But, there must be some evidence beyond the inventor(s)' own testimony that confirms the date on which the inventor(s) had the complete idea.]

[**Nevro**: Conception must include every limitation of a given claim. Conception of an invention cannot be proved through an alleged inventor's testimony alone. Boston Scientific must provide some evidence beyond the alleged inventor(s)' own testimony that corroborates the date on which the alleged inventor(s) had the complete idea, such as by drawings, disclosure to another person, or other forms of evidence presented at trial. Oral testimony by an alleged inventor asserting priority is regarded with skepticism due to the self-serving nature of such testimony, and as a result, such inventor testimony must be supported by some type of corroborating evidence.]

44

A claim is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose.

[**Nevro**: To demonstrate that the alleged inventor was diligent in reducing the alleged invention to practice, Boston Scientific must show reasonable continuous diligence from the date of conception to the date of the subsequent reduction to practice. Like conception, Boston Scientific must provide evidence beyond the alleged inventor(s)' own testimony that corroborates the date on which the alleged inventor(s) reduced the alleged invention to practice.]

Diligence means working continuously, though not necessarily every day.

[**Nevro**: However, even a short period of unexplained inactivity can be sufficient to defeat diligence.]

Nevro must prove by clear and convincing evidence that any reference qualifies as prior art.

## AUTHORITY

### Boston Scientific:

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3a-2 (2020); *Yorkey v. Diab*, 601 F.3d 1279, 1286-87 (Fed. Cir. 2010); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed .Cir. 1994); *Perfect Surgical Techs., Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1009-1012 (Fed. Cir. 2016).

### Nevro:

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3a-2 (2020); *Price v. Symsek*, 988 F.2d 1187, 1194-96 (Fed. Cir. 1993); *In re Steed*, 802 F.3d 1311, 1316–17 (Fed. Cir. 2015); *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2002); *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1007 (Fed.

Cir. 2016); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014); *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075-76 (Fed. Cir. 2019); *In re Mulder*, 716 F.2d 1542, 1542-46 (Fed. Cir. 1983).

## 5.3   ANTICIPATION

Nevro contends that claim 3 of the '172 Patent; claim 11 of the '747 patent; and claims 11 and 25 of the '439 patent are invalid because the claimed invention(s) are anticipated by prior art Stolz.  Anticipation must be determined on a claim-by-claim basis.  Nevro must prove anticipation by clear and convincing evidence. [**Nevro**: If a claim is anticipated, it is invalid.]

[**Nevro**: A patent must be new, meaning someone else cannot have already known or used the invention before a patent application is filed.  This is known as anticipation.] A claim is anticipated if each element of a claim is present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  [**Nevro**: In determining whether every one of the elements of each of the asserted claims is found in a particular piece of prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of that particular prior art.]

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

**AUTHORITY**

**Boston Scientific:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3b-1 (2020).

**Nevro:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3b-1 (2020);
*Baxalta Inc. v. Bayer HealthCare LLC*, C.A. No. 17-1316-RGA-SRF (D. Del.), Final
Jury Instructions (8/28/2020), D.I. 548 at 5.3.3.

## 5.4   OBVIOUSNESS

Nevro contends that the Asserted Claims of the Asserted Patents would have been obvious based on the following combinations of prior art: (Nevro to list[1]).  If a patent claim is obvious, it is invalid.  Nevro must prove by clear and convincing evidence that the claimed inventions of the Asserted Patents would have been obvious to a person having ordinary skill in the art at the time the patent was filed.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the priority date of the patent.  This is called obviousness.  Unlike anticipation, which is based on a single prior art reference, obviousness may be proven by considering more than one item of prior art.

The issue is not whether the claimed subject matter would have been obvious to you as a layperson, to me as the judge, or for that matter to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time of the priority date of the Asserted Claim.

In determining whether an Asserted Claim would have been obvious, you must consider: (1) the scope and content of the prior art, (2) the level of ordinary

---

[1] Nevro will provide a list of prior art references and information as presented at trial.

skill in the field of the invention that someone would have had at the time the patent was filed, (3) any differences between the prior art and the claimed invention, and, (4) if present, so-called objective evidence or secondary considerations, which I will describe shortly.  Do not use hindsight; consider only what was known at that time.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries may be combinations of what is already known.

To determine the scope and content of the prior art, you must determine whether the prior art that Nevro presented is reasonably pertinent to the particular problems that the inventors of that Asserted Patent faced.

I have already instructed you the level of ordinary skill in the art that corresponds to the Asserted Patents.  You are to apply the definition of level of ordinary skill for a patent in your determination of whether the Asserted Claims in that patent would have been obvious. The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

The next factor that you must consider is the differences, if any, between the prior art and the Asserted Claims.  In considering whether a claimed invention is obvious, you should consider whether, at the time of the alleged invention, a reason existed that would have prompted a person having ordinary skill in the art in the

relevant field to combine the known elements of the prior art in the way the Asserted Claims do.  The motivation to combine or modify the prior art need not be the same motivation that the inventor had.  You must undertake this analysis separately for each Asserted Claim.

In arriving at your decision on the issue of whether the Asserted Claims of the Asserted Patents would have been obvious to a person of ordinary skill in the art, you may take into account such factors as: (1) whether the claim was merely the predictable result of using prior art elements according to their known functions; (2) whether the claim provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining the elements claimed; (4) whether the prior art teaches away from combining elements in the claim; (5) whether it would have been obvious to try the claimed combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find the claimed invention obvious, a person of ordinary skill should have a reasonable expectation of success that the claimed invention would work.

In determining whether the Asserted Claims are obvious, you should also take into account any objective evidence (sometimes called "secondary considerations") [**Nevro**: as of the priority date of the claim] that may show whether or not the claimed invention is obvious, such as:

1)      Whether products covered by the claim(s) were commercially successful as a result of an inventive aspect of the claim (rather than unclaimed features or other reasons such as the result of design needs, market-pressure, advertising or similar activities);

2)      Whether others copied the claimed invention due to an inventive aspect of the claim rather than due to unclaimed features or other reasons;

3)      Whether others in the field praised an inventive aspect of the claim; and

4)      [**BSC:** Whether the prior art taught away from or discouraged a person of ordinary skill in the art from pursuing what is claimed.]

These factors should be considered along with all the other evidence in the case in determining whether an Asserted Claim would have been obvious.  To rely on any commercial embodiment of the claimed invention, Boston Scientific must have proven that the product meets each and every limitation of the Asserted Claim, similar to the requirement for proving infringement of the Asserted Claim.

There must be a connection, called a nexus, between the objective evidence of nonobviousness and a novel aspect of the claim to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, commercial success evidence should only be given weight as objective evidence of nonobviousness if Boston Scientific can show that the commercial success is attributable to an inventive aspect of the claim.  [**Nevro:** Objective evidence is

irrelevant if it is due to unclaimed or non-novel feature or a feature known in the prior art.]

[**Nevro**: For Boston Scientific to raise any presumption of nexus, Boston Scientific must show that the products on which they rely embody the Asserted Claims and are co-extensive with them. A product is not co-extensive with a claim when it includes significant unclaimed features.  Nevro may rebut the presumption of nexus by showing that any success or praise is due to features of the products that were unclaimed or known in the prior art.  Even if you conclude that some of the secondary considerations have been established, such factors should not overcome a strong case of obviousness and should be considered along with all the other evidence in the case.]

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

## AUTHORITY

### Boston Scientific:

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3c (2020); *f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 5.4.

### Nevro:

Nevro objects to the inclusion of item number 4 regarding teaching away in the jury instructions because BSC has not alleged that any such objective indicia is relevant

to its Asserted Claims. *See* Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3c n.2 (2020) ("It is the Committee's view that only the objective indicia for which there is evidentiary support should be included").

*In re Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (alleged evidence of secondary considerations must result from something that is "both claimed and *novel*") (emphasis original); Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3c (2020); *f'real Foods, LLC et al. v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions Sept. 30, 2019, D.I. 307-1 at Section 5.4; *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1374-78 (Fed. Cir. 2019); *Ormco Corp. v. Align Tech.*, Inc., 463 F.3d 1299, 1311-13 (Fed. Cir. 2006); *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1360-61 (Fed. Cir. 2017).

## 5.5    WRITTEN DESCRIPTION REQUIREMENT

Nevro contends that claims 1 and 18 of the '085 patent are invalid because the specifications of these patents do not contain an adequate written description of what is claimed.  Lack of written description is decided on a claim-by-claim basis, not as to an entire patent or group of claims.  Nevro must prove lack of written description by clear and convincing evidence.

A patent must contain a written description of the product or method claimed in the patent.  To satisfy the written-description requirement, the patent specification must describe each and every limitation of the full scope of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.  If the patent specification lacks adequate written description for an Asserted Claim, that claim is invalid.  The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the full scope of the invention claimed in the patent as of the effective filing date of the claimed invention.  [**BSC:** It is unnecessary to spell out every detail of the invention in the specification to satisfy the written description requirement] / [**Nevro:** It is not sufficient that the specification discloses only enough to make the claimed invention obvious to a person having ordinary skill].  The requirement may be satisfied by any

combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as (1) the nature and scope of the patent claims, (2) the existing knowledge in the particular field, (3) the scope and content of the prior art, and (4) the complexity, predictability, and maturity of the science or technology. The written description must be enough to convince a person of ordinary skill in the art that the inventor possessed the full scope of the claim based on the information in the specification and the knowledge in the field at the time of the priority date of the Asserted Claim.

## **AUTHORITY**

### **Boston Scientific:**

AIPLA Model Patent Jury Instruction No. 9 (2019); Federal Circuit Bar Association Model Patent Jury Instruction No. 4.2a (2020); *Pozen Inc. v. Par Pharmaceutical, Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012) (finding written description adequate "because the specification describes the invention in such a way that it is understandable to a person of ordinary skill in the art").

### **Nevro:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 4.2a (2020).

## 5.6   [Nevro: INDEFINITENESS

Nevro alleges that claims 1 and 18 of the '085 Patent and claims 11 and 25 of the '439 Patent are invalid for failing to meet the definiteness requirement.  The issue of indefiniteness is decided on a claim-by-claim basis.   Nevro must prove indefiniteness by clear and convincing evidence.  If a patent claim is indefinite, it is invalid.

A patent must be precise enough to afford clear notice of what is claimed, thereby informing the public what is outside the claim and still open to them.  This is known as the definiteness requirement.  A claim is indefinite if the patent fails to inform those skilled in the art about the metes and bounds of the claim with reasonable certainty.   Indefiniteness is to be evaluated from the perspective of someone skilled in the art at the time of the priority date of the Asserted Claim.

A claim is indefinite if its language might mean several different things and no informed and confident choice is available among the contending definitions.  For example, a claim is indefinite if the patent and/or prosecution history fails to disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select.

**AUTHORITY**

**Boston Scientific:**

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003); *Evonik Degussa GmbH v. Materia, Inc.*, 274 F. Supp. 3d 241 (D. Del. 2017) (ruling on indefiniteness after the jury trial); *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS, 2015 WL 7761056, at *5 (D. Del. Dec. 2, 2015) (denying defendants' request to present evidence and argument related to indefiniteness at the jury trial because no factual dispute existed), v*acated in part on other grounds*, No. 11-515-LPS, 2016 WL 11318292 (D. Del. July 19, 2016); *Talecris Biotherapeutics, Inc. v. Baxter Intern. Inc.*, 510 F. Supp. 2d 356, 363 (D. Del. 2007) ("There is no factual issue for the jury to decide that would warrant a trial on the issue of indefiniteness").

**Nevro:**

"[I]ndefiniteness 'is amenable to resolution by the jury where the issues are factual in nature." *BJ Servs. Co. v. Haliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015) (holding that a "question about the state of the knowledge of a skilled artisan is a question of fact"). When the "question of definiteness … require[s] the resolution of critical factual issues," it is "properly [put] before the jury." *Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 867 (Fed. Cir. 2019); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 14 F. Supp. 3d 588, 591 (D. Del. 2014) (denying summary judgement such that "the issue of indefiniteness will be presented to the jury at trial").

*Baxalta Inc. v. Bayer HealthCare LLC*, C.A. No. 17-1316-RGA-SRF (D. Del.), Final Jury Instructions (8/28/2020), D.I. 548 at 5.8; *BJ Servs. Co. v. Haliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015); *Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 867 (Fed. Cir. 2019); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 14 F. Supp. 3d 588, 591 (D. Del. 2014).]

# 6   PATENT DAMAGES

## 6.1   DAMAGES GENERALLY

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.

If [**Nevro**: and only if] you find that Nevro infringed any valid Asserted Claim, you must then consider what amount of damages [**Nevro**: if any,] to award to Boston Scientific.  [**Nevro:**  If you found that Nevro has not infringed a valid Asserted Claim, then Boston Scientific is not entitled to any damages for that claim.]

Any damages you award must be adequate to compensate Boston Scientific for the infringement you determine to have occurred.  Damages are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Boston Scientific in approximately the same financial position that it would have been in if the parties had reached agreement for Nevro to license the Asserted Patents just prior to when the infringement began.

Boston Scientific has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Boston Scientific establishes that it more likely than not has suffered. While Boston Scientific is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not

award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Boston Scientific seeks a reasonable royalty. A reasonable royalty is defined as the amount of money that Boston Scientific and Nevro would have agreed upon in a hypothetical negotiation between Boston Scientific and Nevro as a fee for use of the invention at the time just prior to when infringement began.

## **AUTHORITY**

Federal Circuit Bar Association Model Patent Jury Instruction No. 5.1 (2020).

## **Nevro:**

Federal Circuit Bar Association Model Patent Jury Instruction No. 5.1 (2020); 35 U.S. Code § 284.

## 6.2   PATENT MARKING

The amount of damages Boston Scientific can recover for the '439 Patent is limited to those acts of infringement that occurred after Boston Scientific gave Nevro notice of infringement of the '439 Patent.  Notice of infringement may be actual or constructive.

To show actual notice, Boston Scientific has the burden of establishing, by a preponderance of the evidence, the date on which Nevro received notice of infringement of the '439 Patent from Boston Scientific.

To show constructive notice, Boston Scientific has the burden of establishing, by a preponderance of the evidence, substantial compliance with the patent marking requirement.  The patent marking requirement requires that patentees give notice to the public that a product is patented by fixing the word 'patent' and the patent number on the product.


**AUTHORITY**

35 U.S. Code § 287(a); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, C.A. No. 04-876-GMS (D. Del.), Final Jury Instructions (May 10, 2007), D.I. 343 at 6.3.

## 6.3   REASONABLE ROYALTY

A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the alleged infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of Boston Scientific, on the one side, and Nevro, on the other side, would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

For purposes of determining damages only, you must assume that both parties believed the Asserted Claim(s) of the Asserted Patent(s) was valid and would be infringed and that both parties were willing to enter into a license agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the alleged infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first alleged infringement.   [**Nevro**: The parties' expectations that would have existed on the first date of any infringement would govern the hypothetical negotiation.]

## **AUTHORITY**

Federal Circuit Bar Association Model Patent Jury Instruction No. 5.6 (2020); ND Cal 5.7.

### **Nevro:**

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1209-10 (Fed. Cir. 2010); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009).

### 6.3.1  Relevant Factors

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the alleged infringement began.  You may use the following factors to make this determination.  [**Nevro**: Not all of the factors are necessarily applicable.]

1)    The royalties received by Boston Scientific for any licensing of the Asserted Patents, proving or tending to prove an established royalty;

2)    The rates paid by Nevro for any use of other patents comparable to the Asserted Patents;

3)    The nature and scope of the license, such as whether the license is exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4)    Any established policy by Boston Scientific to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5)    The commercial relationship between Boston Scientific on the one hand and Nevro on the other, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

6)    The effect of selling the patented specialty in promoting sales of other Nevro products; the existing value of the invention to Boston Scientific as a

generator of sales of its non-patented items; and the extent of such derivative or convoyed sales;

7)   The duration of the patent and the term of the license;

8)   The established profitability of the product made under the patent, its commercial success, and its current popularity;

9)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10)   The nature of the patented invention; the character of any commercial embodiment of it as owned and produced by Boston Scientific, and the benefits to those who have used the invention;

11)   The extent to which Nevro has made use of the invention, and any evidence probative of the value of that use;

12)   The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, or business risks, or significant features or improvements added by the infringer;

13)   The portion of the profit or the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

14)   The opinion testimony of qualified experts; and

15)     The amount that a licensor (such as Boston Scientific) and a licensee (such as Nevro) would have agreed upon (at the time any alleged infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Nevro would have been willing to pay and Boston Scientific would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty.

## AUTHORITY

Federal Circuit Bar Association Model Patent Jury Instruction No. 5.8 (2020); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1126 (S.D.N.Y. 1970).

## Nevro:

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012); *Whitserve, LLC v. Comp. Packages, Inc*., 694 F.3d 10, 31 (Fed. Cir. 2012).

### 6.3.2  Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider whether there were acceptable non-infringing substitutes to any of the Asserted Claims in the damages analysis.  A non-infringing substitute is a product that does not include one or more features required by the Asserted Claims.

[**BSC**: To be an acceptable non-infringing substitute, the alleged alternative product must have been "acceptable," meaning that it had the advantages of the patented invention that were important to the buyers of the infringing products.  The acceptable substitute also must be "available," to Nevro, which requires that it not infringe the patent.  In addition, to be considered "available," Nevro must show by a preponderance of the evidence that, during the damages period, a competitor or Nevro had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute at the time of the first alleged infringement.]

[**Nevro**: A non-infringing substitute is available if Nevro had or could easily gain all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell the substitute instead of its product at the time of the sale of the alleged first infringement.  An alternative product may be considered available as a potential substitute even if the product was not actually on sale during the alleged infringement period.  The substitute must also be acceptable

to the specific purchasers of the alleged infringing products.  Acceptability does not require acceptability to the public in general.]

## AUTHORITY

### Boston Scientific

AIPLA Model Patent Jury Instruction No. 10.2.1.4 (2019); *SPEX Techs. v. Apricorn, Inc.*, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) ("The accused infringer bears the burden of proving the existence of non-infringing alternatives."); *Smart Skins, LLC v. Microsoft Corp.*, 2016 WL 4148091 at * 2 (W.D. Wash. July 1, 2016); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 6.4; *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003)

### Nevro:

*Bayer HealthCare LLC v. Baxalta Inc.*, C.A. No. 16-1122-RGA (D. Del.), Final Jury Instructions (1/31/2019), D.I. 381 at 6.4; Federal Circuit Bar Association Model Patent Jury Instruction No. 5.2 (2020).

### 6.3.3  Apportionment

The reasonable royalty award must be based on the value attributable to the patented invention, as distinct from unpatented features the Accused Product or other factors such as marketing or advertising, or Boston Scientific's size or market position.  [**Nevro**: When the Accused Product has both patented and unpatented features, measuring this value requires a determination of the value added by the Asserted Claims.]  A royalty compensating Boston Scientific must reflect the value attributable to the infringing features of the product [**Nevro**: and no more].  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the Accused Products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

## AUTHORITY

Federal Circuit Bar Association Model Patent Jury Instruction No. 5.12 (2020).

## Nevro:

35 U.S. Code § 284; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014)

## 7   DELIBERATION

I have completed my instructions on the law.  I will end by explaining how you will conduct your deliberations in the jury room and about your possible verdicts.

When you retire to the jury room to deliberate, you may take with you these instructions, your notes and the exhibits that the Court has admitted into evidence.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case.  You may not use any electronic device or media, such as a cell phone, smart phone, laptop, computer, or other electronic device or media; the internet, any text or instant messaging service, any chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

70

If you have any questions or messages, you must write them on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

## AUTHORITY

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 7.1, 7.4.

## 7.1   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

As jurors, you have a duty to consult with each other and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment.  Each of you must decide the case for yourself, but do so only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully.  In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence if convinced they are erroneous.  But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date, and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.  Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

## **AUTHORITY**

Third Circuit Model Jury Instruction No. 3.1 (2020); *f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 7.2.

**7.2   DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

**<u>AUTHORITY</u>**

*f'real Foods, LLC et al v. Hamilton Beach Brands, Inc. et al.*, C.A. No. 16-cv-00041-CFC (D. Del.), Final Jury Instructions September 30, 2019, D.I. 307-1 at 7.3.

**7.3   COURT HAS NO OPINION**

Let me finish by repeating something I have said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.

You may now retire and continue your deliberations.  You may take all the time that you feel is necessary.