# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BOSTON SCIENTIFIC CORP. and BOSTON SCIENTIFIC NEUROMODULATION CORP., | ) ) ) | |
| | ) | |
| Plaintiffs and Counter-Defendants, | ) ) | C.A. No. 16-1163-CFC-CJB (Consolidated) |
| | ) | |
| v. | ) | |
| | ) | **FILED UNDER SEAL** |
| NEVRO CORP., | ) | |
| | ) | |
| Defendant and Counterclaimant. | ) ) | |

## PLAINTIFFS' DECEMBER 13, 2021 DISCOVERY DISPUTE LETTER

Dated: December 13, 2021

Of Counsel:

Michael P. Kahn
Brooks J. Kenyon
Caitlin Olwell
Svetlana Pavlovic
AKIN GUMP STRAUSS HAUER & FELD
LLP
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
bkenyon@akingump.com
colwell@akingump.com
spavlovic@akingump.com

C. Brandon Rash
Rachel J. Elsby
Anthony T. Pierce
Erica E. Holland
AKIN GUMP STRAUSS HAUER & FELD
LLP
Robert S. Strauss Tower
2001 K Street, N.W.

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel. (302) 777-0300
Fax (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Washington, DC 20006-1037
(202) 887-4000
brandon.rash@akingump.com
relsby@akingump.com
apierce@akingump.com
eholland@akingump.com

Steven D. Maslowski
Matthew A. Pearson
Jason Weil
AKIN GUMP STRAUSS HAUER & FELD
LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
(215) 965-1200
smaslowski@akingump.com
mpearson@akingump.com
jweil@akingump.com

Dear Judge Burke:

We write on behalf of Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (collectively, "BSC"), to request the Court compel Nevro Corp. ("Nevro") to participate in trade secret discovery.  On September 20, 2021, the Court granted BSC leave to file an amended trade secret count in a Third Amended Complaint ("TAC"), and agreed supplemental discovery should "proceed immediately."  Ex. A, Sept. 20, 2021 Hrg. Tr. at 38:15-20.  Nevro represented it would provide supplemental discovery "on a rolling basis" (Ex. B at 2), but that rolling production never started.  Nevro has not provided any supplemental discovery.  The disputes herein concern the scope of discovery under the TAC and Nevro's obligations.

Nevro is obligated under Rule 26(e) to supplement all discovery within the scope of the TAC.  To help start that process, BSC respectfully requests the Court order: (1) the relevant time period for discovery begins June 2006, (2) Nevro add Konstantinos Alataris, Huyen Duong and James Makous as ESI custodians, (3) Nevro search for and produce responsive documents within the scope of the TAC and not limited by BSC's earlier trade secret disclosure, and (4) Nevro produce documents responsive to BSC's Requests for Production Nos. 2, 13, 58, 346 and 356.

Prior to BSC seeking the Court's assistance, Nevro represented repeatedly that it would participate in discovery.  Ex. B, Ex. C; *see also* Exs. D-F, O.  Nevro recently revealed, however, that it had no intention of doing so. Ex. G at 13. Instead, Nevro strung BSC along for months while Nevro prepared a motion to compel arbitration, which it filed on December 10 (D.I. 831).  This is the predicate for Nevro's letter-request to stay all trade secret discovery, which it will file today.  Notably, Nevro presented these same arguments to Chief Judge Connolly in 2020 and the Court rejected them (June 22, 2020 Oral Order)—this is just another Nevro delay tactic, which has plagued this case from the start, as the Court has documented in multiple Orders.  *See, e.g.,* D.I. 128 (18-cv-644); D.I 326; D.I. 333; D.I. 360; D.I. 372; D.I. 377; D.I. 397; D.I. 417; D.I. 545.

### 1.  Nevro Should Be Compelled To Provide Discovery Starting in June 2006

The original time period for trade secret discovery started when Mr. Thacker began consulting for Nevro, December 2008.  D.I. 377 at 6.  The TAC alleges that Nevro, through its founder and CEO, Dr. Alataris, identified and recruited former BSC employees and acquired BSC trade secrets.  D.I. 787 at ¶ 185.[1]  Nevro was incorporated in March 2006 and Dr. Alataris started in June 2006.  D.I. 787 at ¶184; Exs. I-J, K. Alataris Dep. Tr. at 36:9-19 (Nov. 14, 2017).  The TAC further alleges that by at least November 2006, Nevro had identified current and former BSC employees as recruiting targets.  D.I. 787 at ¶¶ 189, 241-242; *see e.g.* Ex. N at 652.  Discovery into Dr. Alataris's conduct as of that date, on Nevro's behalf, is appropriate.  BSC requests that Nevro supplement all trade secret discovery including interrogatories, requests for admission, requests for production and ESI searches to account for June 2006 as the start date relevant to the claim.

---

[1] Nevro admitted to Dr. Alataris' involvement in the dissemination of BSC's documents throughout Nevro. *See* D.I. 800 at ¶¶ 227, 228, 230. David Marco testified he discussed his retention and use of BSC documents with Dr. Alataris. Ex. H, Marco Dep. Tr. at 66:16-67:21 (Feb. 18, 2021); *see also* D.I. 513 at 1-2, Exs. 3-7.

**2. Nevro Should Be Compelled to Add Three New ESI Custodians**

Based on the prior trade secret count, Nevro agreed in 2020 to run only one trade secret search string, for a limited time period, against a subset of five custodians: James Thacker, Wesley Park, David Marco, Jon Parker, and Andre Walker. *See* D.I. 412 at 1. Nevro has thus far not searched the electronic custodial files of Dr. Alataris or other individuals expressly recited in the TAC, including former BSC employees Ms. Huyen Duong and Mr. James Makous. D.I. 787 at ¶¶ 188-190, 197, 226-230, 233, 238. In view of the allegations in the TAC, good cause exists to add new ESI custodians. For example, it was Nevro's late 2020 document production—provided by Nevro after limiting its ESI search to the five earlier custodians—that first revealed new sources and earlier misappropriation by Nevro. D.I. 573 at 9-10. It was this information that this Court described as "very relevant to a claim that Defendant has misappropriated Plaintiffs' trade secrets." D.I. 545. BSC requests Nevro add these new ESI custodians, apply the agreed to search terms from June 2006-May 2015 and produce all responsive documents.

**3. The Scope of Supplemental Discovery Should Be Guided by the TAC, and Not Limited by BSC's Pre-Amendment Trade Secret Disclosure**

BSC's amended trade secret claim recites expressly the wider set of participants in Nevro's scheme of misappropriation that were revealed during discovery. The full extent of Nevro's misconduct remains unknown as Nevro continues to argue that its discovery obligations should be limited to those acts of misappropriation that are set out in BSC's trade secret disclosure provided *prior to* the amended trade secret claim. Nevro's approach would carve out critical information from Nevro's discovery obligations. For example, Ms. Duong forwarded an Advanced Bionics presentation to Nevro employees, but this document is not in BSC's trade secret disclosure. D.I. 787 at ¶ 233. Under Nevro's approach, it would be permitted to withhold discovery concerning the information that Nevro received from Ms. Duong. But it is Nevro, not BSC, that is in sole possession of what BSC information Nevro acquired and used.

Nevro should not be permitted to withhold relevant evidence within the scope of the TAC simply because it has yet to inform BSC of all of the details of that misconduct. BSC requests the Court order discovery within the full scope of the TAC, not limited to BSC's pre-amendment trade secret disclosure, to properly allow BSC to "flesh out" Nevro's pattern of misconduct. *See Boston Sci. Corp. v. Nevro Corp.*, CV 16-1163-CFC-CJB, 2020 WL 5095447, at *2 (D. Del. Aug. 21, 2020) (internal quotation marks and citation omitted) ("Discovery is relevant if used to flesh out a pattern of facts already known to a party relating to an issue necessarily in the case.").

**4. Nevro Should be Compelled to Supplement Its Production in Response to Request Nos. 2, 13, 58, 346 and 356**

BSC Request Nos. 2, 13, 58, 346 and 356 seek documents regarding Nevro's recruitment of BSC employees, acquisition of confidential BSC documents and Nevro's ensuing use of BSC information. That discovery is within the scope of the TAC. D.I. 787 at ¶¶ 182-249.

**a. Nevro's Recruitment of BSC Employees: Requests Nos. 2 and 346**

BSC Request No. 2 seeks documents concerning "any effort by Nevro to recruit employees of BSC or any Former BSC Employee to work on SCS." Ex. K, Ex. P. This Court, however,

2

already ruled this request is relevant.  D.I. 326 at 10-11. Nevro objects to any searches for documents Nevro received from former BSC employees unless they were alleged specifically in the complaint to have taken or distributed BSC documents.  For example, if Nevro has information indicating that Nevro sourced BSC confidential information from former BSC employee Kerry Bradley (D.I. 787 at ¶ 197), Nevro would be entitled to withhold that information because BSC did not call out Mr. Bradley in the TAC for disseminating specific BSC information. Nevro's objection would undermine the purpose of discovery, which is to "flesh out" the full scope of Nevro's misconduct.  Similarly, Request No. 346 seeks "documents discussing hiring employees from BSC."  Ex. L, Ex. R.  Nevro objects to this request because it is a duplicate of a request served in the first Delaware action.  To the extent Nevro has additional responsive documents relevant to the allegations in the TAC, Nevro's objection should be overruled.  Nevro should be compelled to produce documents for all former BSC employees recited in the TAC who were recruited by Nevro to work on it SCS products.

### b.  BSC's Non-Public Information: Requests Nos. 13, 356 and 58

Request No. 13 seeks, for past or present employees of Nevro who are former BSC employees, "all non- public documents and things obtained by such employee from or at BSC while he or she was employed by BSC and ***in the possession of such employee at any time during his or her employment at Nevro*** . . . relating to work that was performed by or at BSC before or during the time he or she was employed by BSC, including but not limited to work concerning SCS systems."  Ex. K, Ex. P.  Nevro again objects to searching for non-public BSC information beyond what has already been produced and identified in BSC's pre-amendment trade secret disclosure.  For the reasons stated above, Nevro's search should include all non-public BSC documents in its custody and control.  It is only with that information that BSC can understand the full extent of Nevro's misappropriation scheme recited in the TAC.  Relatedly, Request No. 356 seeks "All documentation relating to the use of BSC confidential documents during the development of the Senza system."  Ex. L, Ex. R.  Nevro repeats the objection that it is a duplicate from the first Delaware action.  But, again, if Nevro has additional responsive documents within the scope of the TAC, Nevro's objection should be overruled.  Taken together, these requests seek evidence of Nevro's possession and use of BSC confidential information during the development of its SCS product, which is central to the allegations in the TAC.

Request No. 58 seeks "all communications that refer or relate to BSC or Advanced Bionics Corporation, including but not limited to any references to 'AB,' 'BSC,' 'BSX,' and 'Boston.'" Ex. M, Ex. Q.  These are the same terms that Nevro previously agreed to use for its ESI search that it limited to five custodians.  D.I. 412. Nonetheless, Nevro objects that this request is overbroad. To be clear, not all documents that recite those words would be relevant to the TAC. The responsive documents that BSC seeks and expects Nevro to produce are any such documents that reveal information about Nevro's scheme to misappropriate BSC information, or include non-public AB or BSC information.  As a compromise, if Nevro agrees to produce all such documents, BSC would withdraw the remainder of this Request.

Nevro is required to supplement all discovery under Rule 26(e), based on the scope of BSC's trade secret claim in the TAC.  BSC respectfully requests that the Court once again order Nevro to meet its discovery obligations in this case.

3

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)

4